**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| LUBLIN CORPORATION, t/a CENTURY 21<br>ADVANTAGE GOLD<br>7104 Castor Avenue<br>Philadelphia, PA 19149 | : | No. 07-206C<br>(Judge Allegra) |
| Plaintiff | : | |
| vs. | : | |
| UNITED STATES OF AMERICA | : | |
| Defendant | | |

**PLAINTIFF'S ANSWER TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RCFC 12(b)(1) AND 12(b)(6) WITH MEMORANDUM OF LAW**

## I. REPLY TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM

Plaintiff by and through its counsel, Gilbert and Thomson Law Offices hereby responds to defendant's Motion to Dismiss and respectfully requests that defendant's motion be denied and dismissed because this court has subject matter jurisdiction of this claim for the reasons set forth below. Plaintiff's Complaint does set forth a cause of action upon which relief may be granted.

## II. FACTUAL BACKGROUND

The United States Department of Housing and Urban Development (hereinafter "HUD") entered into a Management and Marketing (M&M) contract with Hooks Van Holm, Inc. (hereinafter "HVH") to have HVH serve as the prime contractor to HUD, and provide various services to HUD, including but not limited to, managing, marketing and

overseeing the sales and closing activity for HUD owned single homes (1-4 units) properties in the Commonwealth of Pennsylvania. In accordance with its contract with HUD, HVH also provided other specific services to HUD including but not limited to selling HUD owned homes in the Commonwealth of Pennsylvania. In order to perform the obligations under its contract with HUD, HVH entered into a Subcontractor Agreement with Lublin Corporation, trading as Century 21 Advantage Gold, (hereinafter "Lublin") to provide listing broker services to HVH. As the listing broker, Lublin was required to provide listing services and sublisting services to successfully place single family properties owned by HUD, being managed and marketed by HVH, on a local Multiple Listing Service (MLS), to be sold and to answer or pass on inquiries regarding properties and perform such duties for bidding as are customary. In accordance with Section F (1) of the contract, HVH ordered services from and subcontracted with Lublin from the date of the award which was September 18, 2004 through October 1, 2005.

For the services provided in the contract, Lublin was to receive a fixed fee at the closing of each property. The fixed fee that Lublin was to receive was $321.00 per property. Lublin was to receive its fee at the closing.

On March 30, 2005 representatives from Lublin Corporation were asked by HUD to participate in a Confidential Quality Management Review (QMR) program in HUD's Philadelphia office. Representatives of Lublin were quite reluctant to participate in the QMR sponsored by HUD, especially when the representatives gleaned that HUD's purpose was to obtain information about the practices and procedures of HVH in implementing HUD's property disposition program. When pressed by HUD employees

at this meeting to respond with regard to various issues relating to HVH's performance, representatives of Lublin stated that they did not wish to discuss these matters with HUD employees since there could be repercussions or reprisals by HVH should Lublin provide information that did not reflect favorably on HVH. HUD employees specifically assured Lublin representatives that all information provided to HUD in the QMR process would be kept strictly confidential, that nothing said by Lublin Representatives would be discussed or mentioned by HUD representatives to HVH representatives and that HUD would make certain that there were no repercussions or reprisals by HVH against Lublin should HVH become aware that Lublin provided HUD with some information that did not reflect favorably on HVH. After receiving these assurances from HUD employees, representatives of Lublin did participate in the QMR and did provide HUD employees with a candid, honest and forthright assessment of HVH's performance related to HUD's property disposition procedures in Pennsylvania. Approximately two hours later, Lublin received an e-mail and thereafter a letter by certified mail that served notice upon Lublin that the Subcontractor Agreement between Lublin and HVH was being unilaterally terminated by HVH.

## III. <u>ARGUMENT</u>

**This Court Has Subject Matter Jurisdiction Over This Claim**.

28 U.S.C. § 1491, confers on this Court jurisdiction over claims "founded either upon the Constitution or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C § 1491

(a)(1). Plaintiff bears the burden of establishing the Court's subject matter jurisdiction over the claim. McNutt v. General Motors Acceptance Corporation of Indiana, 298 U.S. 178 (1936); Ware v. the United States, 57 Fed. Cl. 782 (2003). In determining whether it has jurisdiction over a when a Motion is filed under RCFC 12(b)(1) and 12(b)(6), a Federal Court must accept as true the facts alleged in the Complaint and draw all reasonable inferences in favor of the plaintiffs. Henke v. United States, 60 F. 3rd 795 (Fed. Cir. 1995). Jurisdiction over a claim against the United States requires a waiver of sovereign immunity and the existence of a cause of action that falls within the scope of that waiver. United States v. White Mountain Apache Tribe, 537 U.S. 465 (2003). The Tucker Act constitutes such a waiver. United States v. Mitchell, 463 U.S. 206 (1983). The issue is not whether plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support claims. Swierkiewicz v. Sorema, 534 U.S. 506 (2002). A Motion to Dismiss under RCFC 12(b)(6) should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41 (1957).

The government challenges the Court's jurisdiction, arguing that plaintiff's claim falls outside the jurisdictional grants of the Tucker Act, 28 USC (1491). The Tucker Act itself does not provide the substantive law to be provided; rather contract law supplies that framework. Confederated Tribes of Warm Springs Reservation of Oregon v. United States 248 F. 3rd. 165 (Fed. Cir. 201). A contract with the government arises only if three requirements are satisfied: (1) mutual intent to contract, including an offer and an acceptance; (2) consideration; and (3) a government representative who had actual

authority to bond the government. LaVan v. United States 382 F. 3rd. 1340 (Fed. Cir. 2004).

The detailed allegations set forth in plaintiff's Complaint clearly satisfy the legal requisite for a contract implied in fact. Contracts implied in fact are founded upon a meeting of the minds and inferred from the conduct of the parties. Algonac Mfg. Co. v. United States 424 F. 2nd 1241 (Ct. Cl. 1970). Mutual intent to contract is readily apparent from the conduct of the respective parties in this case and the allegations set forth in the Complaint. Plaintiff's representatives were reluctant to share any information with HUD representatives until they received an absolute assurance from HUD representatives that all information provided to HUD representatives would be kept in the strictest of confidence, and that HUD representatives would in fact take all necessary steps to prevent HVH representatives from taking any untoward action against Lublin, specifically, that there would be no repercussions or reprisals against Lublin based on any information it provided to HUD representatives. In reliance upon this promise Lublin provides HUD with the information it sought. Plaintiff's Complaint sets forth these facts in detail and these allegations form the bases for a cause of action for breach of implied contract.

The gravamen is whether the cause of action filed by plaintiff "sounds in tort" or "sounds in contract." In Goel v. United States Department of Justice, 2003 WL 22471945 (S.D.N.Y. 2003), the Court applied New York law to determine whether the allegation made by the plaintiff sounded in tort or in contract since the discussion between the plaintiff and government officials occurred in New York. In this case, the

meeting between the parties occurred within the Commonwealth of Pennsylvania. As such, Pennsylvania law should be applied to determine whether the cause of action pled by the plaintiff "sounds in tort" or "sounds in contract". The seminal case in Pennsylvania is Etoll, Inc. v. Elias/Savion Advertising, Inc., 811 A. 2nd 10 (Pa. Super. 2002). In that case, a software developer brought an action against an advertising company and its employees asserting claims for fraud, breach of fiduciary duty and professional negligence. As predicted by a number of United States District Courts, the Pennsylvania Superior Court adopted the "gist of action" doctrine. The "gist of action" doctrine's purpose is to maintain the distinction between the theories of breach of contract and tort. It essentially precludes a plaintiff from recasting an ordinary breach of contract claim into a tort claim. When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examined the claim and determined whether the "gist" or "gravamen" of it sounds in contract or in tort. A tort claim is maintainable only if the contract is "collateral" to the conduct that is primarily tortious. Sunquest Information Systems v. Dean Witter Reynolds, 40 F. 2nd 644 (WD Pa. 1999). After an exhaustive survey of state and federal case law on the subject, the Pennsylvania court held that the important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus. In other words, the gist of the action is contractual where the parties' obligations are defined by the terms of the contracts and

not by the larger social policies embodied in the law of torts. Bohler-Uddeholm Am., Inc. v. Lellwood Group, Inc. 247 F. 3rd 79 (3rd Cir. 2001).

The "gist of action" doctrine has been frequently used to determine whether a breach of fiduciary duty claim "sounded in tort or in contract." See Bohler-Uddeholm America, Inc., supra. Plaintiff submits that the claims that it is pursuing in this case arise from a "mutual consensus" as opposed to a "matter of social policy." Plaintiff's claims in this matter arise from the agreement it made with government representatives.

Federal Courts interpreting Pennsylvania law have held that the "gist of the action" doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract; (3) where liability stemmed from the contract; or (4) where the tort claims essentially duplicates a breach of contract claim or the success of which is wholly dependent upon the terms of the contract. Polymer Dynamics, Inc. v. Bay Corp. 2000 WL 1146622 (Ed. Pa. 2000).

There is no doubt based on the allegations set forth in the plaintiff's Complaint, that plaintiff's claims arise from the conversations that it had with government employees. Further, plaintiff's breach of contract claim arises from the promises the government made. That is, if the plaintiff's provide government employees with the information government employees requested, that government employees would not reveal this information to HVH representatives and will take actions to protect plaintiffs from many repercussions or reprisals should information be disclosed. Any liability that

the government may have to the plaintiff arises out of this agreement. Any tort claim would essentially duplicate the breach of contract claim. Finally, plaintiff's success in this action is totally dependent upon what this Court construes as the terms of the contract.

This case is distinguishable from Goel, in that, there was clearly a mutual intent to contract in this case, there was an unambiguous offer by the government and plaintiffs' clear acceptance of that offer. This can be established by the conduct of the parties and the fact testimony of witnesses. There was consideration given for the promise, in that information was provided. Most importantly, the government representatives who were conducting the QMR had the actual authority to conduct the meeting and bind the government.

In contradiction to the government's assertions in its Brief, plaintiff has not only posited that there was a breach of confidentially, but has in great detail in paragraphs 1 though 20 of its Complaint, set forth the legal requisite of an implied in fact contract with the government. As such, it has satisfied its burden under the law. All the requisite elements for an implied contract are pled in plaintiff's Complaint. All inferences set forth thereon must be construed in plaintiff's favor. Plaintiff should be permitted to succeed with this action.

Finally, plaintiff is seeking damages that flow from a breach of contract not damages that would flow from a tort case. The "economic loss doctrine" test as announced in Duquesne Light Company v. Westinghouse Elec. Corp. 66 F. 3rd 604 (3rd Cir. 1995), states that a plaintiff should be limited to a contract claim when "loss of the

benefit to of a bargain is plaintiff's sole loss." This is what plaintiff seeks in this case, the damages that flow from the government's failure to keep its bargain with plaintiff.

In contradiction to the allegations set forth in the government's Brief, the Complaint filed by the plaintiff does not contain mere legal conclusions, but specific facts which set forth an implied in fact contract. Plaintiff can prove the existence of a contract through factual testimony, and plaintiff has pled more than sufficient facts to show that an implied contract existed. The government representatives who conducted the government-sponsored meeting were authorized to both hold the meeting and make an agreement with plaintiff in order to obtain information from plaintiff.

**CONCLUSION**

Judge Baer's comments in Goel v United States Department of Justice, 2003 WL 22471945 (S.D.N.Y), seem quite appropriate here. Assuming that plaintiff's allegations are true, the actions of HUD agents in this case are "at least disheartening and at worst reprehensible." Plaintiff, in its Complaint has set forth in great detail, facts supporting the existence of an implied in fact contract with the government. All legal requisites for the existence of a contract have been pled. This Court has subject-matter jurisdiction under the Tucker Act. For all the reasons set forth above, plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss this Complaint and require the Defendant to file an Answer to plaintiff's Complaint.

Respectfully submitted,

/s/William F. Thomson, Jr, Esquire
WILLIAM F. THOMSON, JR., ESQUIRE

**CERTIFICATE OF FILING**

I hereby certify that, on this 21st day of May 2007, I caused to be filed electronically the foregoing MOTION TO DISMISS with the United States Court of Federal Claims. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ William F. Thomson, Jr., Esquire
WILLIAM F. THOMSON, JR., ESQUIRE