**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| LUBLIN CORPORATION, t/a CENTURY 21 ADVANTAGE GOLD | : | No. 07-206C (Judge Allegra) |
| Plaintiff | : | |
| vs. | : | |
| UNITED STATES OF AMERICA | : | |
| Defendant | : | |

**PLAINTIFF'S REPLY TO DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM**

Plaintiff is compelled to respond to Defendant's Reply Brief since the Government's brief clearly misses the mark. The Government's first point of contention is that the obligations and rights of the United States under its contracts are governed exclusively by federal law. For this point of law, the Government cites Your Honor's decision in the case of Sam Gray Enterprises, Inc. v. The United States, 43 Fed. Cl. 596 (1999). In that case, Your Honor notes that in some contexts the United States does business on business terms and is subject to local law. United States v. National Exchange Bank, 270 U.S. 527 (1926). However, the Supreme Court in Boyle v. United Technologies Corp., 487 U.S. 500 (1988) held that the obligations to, and rights of, the United States under its contracts are governed exclusively by federal law. Your Honor further noted in that decision that this rule is premised on the need to protect the "uniquely federal interest" underlying statutory and regulatory framework for federal

procurements in which the desirability of a uniform rule is plain. Obviously, the instant case does not involve the interpretation of any underlying statutory or regulatory framework which leads one to the logical conclusion that the more developed state common law of contracts may be applicable rather than the federal common law of contracts. Regardless, this is much bluster and fury about nothing. The Government does not argue that the application of federal common law would cause any different result than if this case was analyzed under state common law. This is particularly so, since creation of any contractual relationship between the Government and any third party is generally governed by common-law legal rules. Priebe & Sons v. United States, 332 U.S. 407 (1947). Accordingly, this argument has no substance and should be accorded no weight when deciding defendant's Motion.

The Government's argument that the plaintiff also filed a claim under the Federal Tort Claims Act (FTCA) is similarly unpersuasive. Fed. R. Civ. P. 8(e)(2) specifically allows plaintiff to plead inconsistent theories of relief in the same Complaint. The fact that the plaintiff has done this in two separate Complaints is really of no moment. The rule clearly allows parties to present as many separate and alternative claims as they have, regardless of their consistency. Dugan v. Bell Telephone Company of Pennsylvania, 876 F. Supp. 713 (W.D. Pa. 1994).

The Government goes to great lengths to miscast plaintiff's action as an "implied in law contract claim." In Hercules, Inc. v. United States, 516 U.S. 417 (1996), the Supreme Court of the United States has distinguished between a contract implied-in-fact and a contract implied in law by stating "an agreement implied-in-fact is founded

upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from the conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding. ... By contrast, an agreement implied in law is a fiction of law where a promise is imputed to perform a legal duty as to repay money obtained under fraud or duress." In this case, we have an implied-in-fact contract. In the procedural posture of this case, the issue before the court is whether a contract arose between the parties. All requirements for a valid contract with the United States have been met. There was a mutual intent to contract with an offer (wherein HUD requested that plaintiff candidly participate in the QMR process and HUD promised that all information would be kept strictly confidential and there would be no repercussions or reprisals by the prime contractor, an acceptance (the plaintiff provided the Government with the information it requested), and consideration (the Government received the information that it desired from plaintiff) and authority on the part of the Government representative who entered into the agreement to bind the United States. See Sam Gray Enterprises, Inc., supra. The consideration provided to the Government clearly rendered a benefit to the Government since the Government received the information it sought. Son Broadcasting, Inc. v. United States, 52 Fed. Cl. 815 (2002). No doubt, an agreement was inferred by the conduct of the parties, and an implied-in-fact contract was created. Baltimore O.R. Company v. U.S., 261 U.S. 592 (1923).

In Cooley v. United States, 1997 W.L. 325846 (E.D. Pa. 1997), Richard Cooley, an employee of the Social Security Administration, filed a complaint against the United States alleging that the Government failed to properly compensate him for the use of

his official employee suggestion to improve the administration of employee benefit payments. In that case, the Court held that as soon as the Government adopted Mr. Cooley's suggestion, an implied-in-fact contract arose since the Government was required to act in accordance with its own established procedures. As such, the Court had jurisdiction under the Tucker Act. In Hatzlachh Supply Co., Inc. v. United States, 444 U.S. 460 (1980), the Supreme Court granted *certiorari* to consider whether the United States may be held liable for a breach of implied contract of bailment when goods are lost while held by the United States Customs Service (USCS) following their seizure for customs violations. The Court of Claims conceded that the plaintiff could make a strong case for the existence of an implied-in-fact contract but noted that a statute relieved the Government of all tort liability for any claim arising with respect of detention of goods. The court held that the absence of Government tort liability has not been thought to bar contractual remedies on implied-in-fact contracts and the case was remanded to the Court of Claims to determine whether an implied-in-fact contract did exist. All of the elements for an implied-in-fact contract have been pled and the Complaint should be permitted to proceed on the assumption that all the allegations in the Complaint are true.

The Government's reliance on Craig-Buff Ltd. Partnership v. United States, 69 Fed. Cl. 382 (2006) is clearly inapposite and misplaced since in that case the Government did not receive any consideration for its alleged promise. As such, the court correctly held that a contract had not been created. In this matter, the Government not only induced the plaintiffs into providing it with information it sought

but did receive the information that it requested and as such received the requisite consideration in order to establish an implied-in-fact contract. In H.N. Wood Products, Inc. v. United States, 59 Fed. Cl. 479 (2003), the Forest Service awarded Ridgetop timber sale contract to plaintiff H.N. Wood. The dispute arose after the Forest Service suspended Wood's contract. Similar to this case, Wood sued the Government in a claim for damages for breach of contract and sought contractual damages, i.e., loss of profits due to the contract termination. Wood argued that the Forest Service's suspension of the contract violated the implied duty to cooperate and not to hinder its performance of the contract. The Government countered in an argument that it was not bound by this any implied duty. The court held that contrary to the Government's assertion, the implied duty to cooperate and not hinder the other party's performance is an obligation that exists in every Government contract. Precision Pine and Timber, Inc. v. United States, 50 Fed. Cl. 35 (2001). The implied duty to cooperate and not to hinder performance exists in addition to the promise of positive performance under a contract. Cedar Lumber, Inc. v. The United States, 5 Cl. Ct. 539 (1984). This implied duty is binding upon the parties in the same manner as if it were an express provision in a contract. Precision Pine, supra. The Court held that the Government had an implied obligation to cooperate with regard to the contract and that it was required to exercise reasonable discretion and not to act arbitrarily or capriciously. In the instant case, the implied-in-fact contract carried with it an implied duty on the Government to cooperate with regard to the agreement that it had made and not to act arbitrarily and capriciously as it did in this case, by breaching its obligation and providing the Prime

Contractor with all the confidential information it received in the QMR process. This breach of contractual duty is the gravamen of plaintiff's Complaint.

In its Reply Brief, defendant asserts that plaintiff's complaint does not allege an unambiguous mutual intent to contract and thus fails to state a claim upon which relief can be granted. Federal Rule of Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the plaintiff is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41 (1957). A complaint attacked by a Rule 12(b)(6) Motion to Dismiss does not need to provide detailed factual allegations to meet plaintiff's obligation to provide the grounds "of its entitlement to relief." Papasan v. Allain, 478 U.S. 265 (1986). Factual allegations must be enough to raise a right to relief above the speculative level. Bell Atlantic Corporation v. Twombly, 127 S. Ct. 1955 (2007). Defendant's claim that plaintiff's complaint is wholly conclusory and therefore should not survive the Motion to Dismiss is clearly without merit. Plaintiff has gone above and beyond all the requirements of the federal rules and had pled detailed factual allegations which support plaintiff's claim. Counsel for the defendant points out that plaintiff did not respond to this allegation in its Brief. Quite frankly, plaintiff found it unnecessary to respond to the Government's allegations since plaintiff is of the opinion that the complaint on its face clearly and unambiguously sets forth a cause of action for which plaintiff is entitled to recover under the law. However, plaintiff does find it necessary to respond to the Government's most recent assertions, since in its reply brief the Government raises for the first time that plaintiff does not identify in its

Complaint any individuals who made the agreement with plaintiff or the source of their authority and, as such, these alleged conclusory allegations will not withstand a motion to dismiss.

Actual authority can be either express or implied-in-fact. Son Broadcasting, Inc., supra. Actual authority may be implied when the authority is an integral part of the duties assigned to a Government employee. Son Broadcasting, Inc., supra. With all due respect to counsel, plaintiff, in clear and unambiguous terms, alleged in its complaint that it was invited by HUD representatives to attend a QMR program in HUD's Philadelphia office. This is a program that HUD employees are authorized to implement and a program that requires the participants to provide HUD with confidential information so that HUD may evaluate the effectiveness of its program. Plaintiff has pled in its complaint that HUD individuals were authorized to convene this meeting and within the context of this meeting, these individuals had actual authority to make an agreement with plaintiff to obtain confidential information. Further, the complaints exceeds the requirement of the federal rules since it is much more than a short and plain statement of the claim. Moreover, even a cursory review of defendant's Reply Brief demonstrates that the Complaint must have satisfied the requisites of the federal rules since defendant was able to properly frame all essential issues and eloquently, yet erroneously, assert a defense. This complaint surely is more than conclusory and meets plaintiff's obligations to provide defendant with its grounds for relief. If plaintiff needs to "name names" to satisfy its obligation, plaintiff requests that the Court allow

plaintiff the opportunity to amend its Complaint, but plaintiff believes this is unnecessary under the federal rules.

Finally, plaintiff's complaint does set forth an unambiguous mutual intent to contract. As set forth in plaintiff's original brief, Government employees requested that plaintiffs provide them with certain confidential information. Plaintiffs refused to provide this information pointing out to HUD representatives that there may be reprisals and repercussions from HVH should the plaintiffs provide the information the Government requested. Government employees, working for HUD, who are fully authorized by HUD to implement a QMR, assured plaintiffs that the information provided would remain confidential and that they would make certain that there were no repercussions or reprisals by the prime contractor, HVH. Upon receiving this assurance, plaintiffs provided the information the Government requested. This information clearly benefited the Government. This is the factual basis for an implied-in-fact contract, as pled by plaintiff in the Complaint.

CONCLUSION

For the reasons set forth above, plaintiff respectfully urges the Court to deny Defendant's Motion to Dismiss Plaintiff's Complaint and allow plaintiff to proceed on the well-pleaded Complaint filed.

Respectfully submitted,

/s/William F. Thomson, Jr, Esquire
WILLIAM F. THOMSON, JR., ESQUIRE

## CERTIFICATE OF FILING

I hereby certify that, on this 12th day of June 2007, I caused to be filed electronically the foregoing Plaintiff's Reply to Defendant's Reply Brief in Support of its Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim with the United States Court of Federal Claims. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ William F. Thomson, Jr., Esquire
WILLIAM F. THOMSON, JR., ESQUIRE