**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| LUBLIN CORPORATION, t/a CENTURY 21 ADVANTAGE GOLD<br>7104 Castor Avenue<br>Philadelphia, PA 19149<br><br>Plaintiff<br><br>vs.<br><br>UNITED STATES OF AMERICA<br><br>Defendant | :<br>:<br>:<br>:<br>:<br>:<br>: | No. 07-206C<br>(Judge Allegra) |

## AMENDED COMPLAINT

Plaintiff, Lublin Corporation, t/a Century 21 Advantage Gold (hereinafter "Advantage Gold"), by and through its attorneys, Gilbert and Thomson Law Offices, files this amended Complaint against the United States of America and, in support thereof, avers the following:

## PARTIES

1. Plaintiff, Lublin Corporation, t/a Century 21 Advantage Gold, (hereinafter Advantage Gold) is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a place of business at 7104 Castor Avenue, Philadelphia, Pennsylvania 19149. Plaintiff holds all licenses required by the Commonwealth of Pennsylvania to sell real estate in the Commonwealth of Pennsylvania. Plaintiff has registered the fictitious name "Century 21 Advantage Gold" and trades and does business as "Century 21 Advantage Gold."

2. The United States of America is responsible for the operations and activities of the United States Department of Housing and Urban Development. (hereinafter HUD)

3. HUD is a federal agency established by the U.S. Government, responsible for national policy and programs that address America's housing needs. HUD has an office at the Wanamaker Building, 100 Penn Square East, Philadelphia, PA 19107-3389.

## JURISDICTION

4. This Court has subject matter jurisdiction pursuant to the Tucker Act, 28 USC § 1491 (a) (1), as this claim is against the Untied States founded upon an express or implied contract with the United States, for unliquidated damages in a case not sounding in tort.

## GENERAL ALLEGATIONS

5. HUD entered into a Management and Marketing ("M&M") contract with Hooks Van Holm (hereinafter HVH) to have HVH serve as a prime contractor to HUD, and provide various services to HUD, including but not limited to, managing, marketing and overseeing the sales/closing activity for HUD owned single family (1-4 unit) properties in the Commonwealth of Pennsylvania.

6. In accordance with its contract with HUD, HVH was also required to sell HUD owned homes in the Commonwealth of Pennsylvania.

7. In order to perform the obligations under its contract with HUD, HVH, as the marketing and managing contractor for HUD, entered into various Subcontractor Agreements including an Agreement with Lublin Corporation, t/a Century 21 Advantage

Gold, to provide Listing Broker services to HVH. A copy of the Subcontractor Agreement between HVH and Lublin Corporation, t/a Century 21 Advantage Gold is attached hereto as Exhibit "A."

8. As the Listing Broker, Lublin Corporation, t/a Century 21 Advantage Gold was required to provide listing services and sub-listing services to successfully place single family (1-4 unit) properties owned by HUD, being managed and marketed by HVH, on a local Multiple Listing Service (MLS), to be sold and to answer or pass on inquiries regarding the property and perform such other duties for bidding as are customary.

9. In accordance with Section F(1) of the contract, HVH may order services under the Subcontract, from the date of the award, September 18, 2004 through October 1, 2005 (Base Period). This Base Period may be extended for additional twelve (12) month periods at the sole option of HVH.

10. In accordance with Section F (1) either party may cancel this Agreement, with or without cause, by giving a thirty (30) day written notice, via certified mail, to the other party. At HVH's sole discretion, the Agreement may be terminated with 72 hours notice if the subcontractor is not performing to the terms of the Agreement, or if changes occur in HUD policies.

11. The geographic service area covered by the Contract was the Commonwealth of Pennsylvania.

12. For the services provided in the Contract, Advantage Gold was to receive a fixed fee at the closing of each property. This fee was to be paid upon the closing of the property. The fixed fee that Advantage Gold was to receive was $321 per property.

13. In accordance with the contract, Advantage Gold was to receive its fee at closing and was to be supplied with a copy of the HUD-1 closing form on every property closed during the term of the Contract.

14. At the termination of the Contract, Advantage Gold was not to receive any money or payment for the properties entered into the MLS system which have not been "sold" or "closed" at the time of termination, nor shall they be reimbursed for any expenses incurred performing the aforementioned tasks, with the exception of reimbursements for payments made for Certificates of Occupancy or Use & Occupancy Certificates ordered by Advantage Gold.

15. Sometime prior to March 30, 2005, Ronald Rudolph and William Lublin, representatives of Advantage Gold, were asked by Kathy Rowe of the Philadelphia Home Ownership Center (HOC) to participate in a confidential Quality Management Review (QMR) program at HUD's Philadelphia office.

16. Rudolph and Lublin were told that the purpose of the meeting was to allow HUD to evaluate the performance of HVH, its new M & M, and determine how HVH was handling the Pennsylvania market.

17. Rowe advised that Advantage Gold was chosen to participate in the QMR because Advantage Gold had been HUD's Listing Broker for the prior three (3) years and Advantage Gold was involved in the marketing of HUD homes in Pennsylvania

longer than any other current subcontractor. Rudolph and Lublin agreed to attend the QMR. Although attendance at the meeting was "voluntary," Lublin and Rudolph were aware that subcontractors who did not voluntarily cooperate with HUD in the QMR process did not have their contracts renewed.

18. On March 30, 2005, Lublin and Rudolph appeared at HUD headquarters at the Wanamaker Building in Philadelphia and met with Kathy Rowe who advised that she was the "Event Coordinator."

19. After a short discussion with Kathy Rowe, Lublin and Rudolph were then taken to a room to meet with Daniel Rogers, III, Deputy Director of HUD's Atlanta HOC.

20. It was explained to Lublin and Rudolph that they were meeting with Mr. Rogers because HUD did not want anyone affiliated with the Philadelphia HOC involved in the QMR since the QMR's purpose was to evaluate the M & M's performance in Pennsylvania.

21. Before any discussions ensued, William Lublin told Mr. Rogers that he was quite reluctant to participate in the QMR sponsored by HUD, especially because he understood that the main purpose of the QMR was to obtain information about the practices and procedures of HVH in implementing HUD's Property Disposition Program in Pennsylvania.

22. When pressed by Mr. Rogers to respond to various issues relating to HVH's performance, Lublin and Rudolph refused to respond, stating that they did not wish to discuss with Mr. Rodgers any matters involving HVH's performance, since HVH

employed Advantage Gold, not HUD, and there could be repercussions or reprisals by HVH should Advantage Gold provide information that did not reflect favorably on HVH.

23. Mr. Rogers, Deputy Director of HUD's Atlanta HOC, specifically assured the representatives of Advantage Gold that all information provided to HUD in the QMR process would be kept strictly confidential, and that nothing said by the Advantage Gold representatives to Mr. Rogers would be discussed or mentioned to HVH representatives. Further, Mr. Rogers stated that HUD would make certain that there were no repercussions or reprisals by HVH against Advantage Gold, should HVH become aware that Advantage Gold provided HUD with some information that did not reflect favorably on HVH.

24. After receiving these assurances from Mr. Rogers, the representatives of Advantage Gold did participate in the QMR and did provide Mr. Rogers with a candid, honest and forthright assessment of HVH's performance related to HUD's Property Disposition Procedures.

25. The conversation with Mr. Rogers then turned to the issue of broker compensation. Lublin and Rudolph advised Rogers that Advantage Gold's fee for services rendered was $321 per unit. Rogers was surprised the fee was so reasonable. Lublin then advised Rogers that a few weeks prior, he met with Mr. Hooks of HVH who wanted to renegotiate HVH's contract with Advantage Gold so HVH could meet certain HUD mandates, one of which was that the HVH become more profitable.

26. Rogers was shocked by this revelation and immediately took Lublin and Rudolph to see Engram Lloyd, Director of the Philadelphia HOC.

27. Again, before any conversation occurred with Mr. Lloyd, Lublin asked if the conversation would be kept confidential. Lloyd assured him that everything he said would be kept in the strictest of confidence, and that nothing said to Lloyd would be shared with anyone at HVH and that Lloyd would personally make sure that if any information was accidentally or incidentally revealed to HVH that HUD there would make certain that there would be no reprisals or repercussions by HVH against Advantage Gold.

28. Lublin then provided Lloyd with the information requested and answered all Lloyd's questions in great detail.

29. Lloyd did confirm that two of the items that Lublin discussed with HVH were new mandates issued by HUD but he emphatically stated that the reduction in "listing broker" compensation and increasing "profitability" of the M & Ms were not mandated by HUD. Lloyd angrily said, "I'll get to the bottom of this" and abruptly left the room. He then returned to the room a short time later and was even more agitated and said, "HUD never makes any type of mandates regarding the profits of contractors and I don't know where Robert Hooks got that idea."

30. Approximately two (2) hours after the QMR ended, Advantage Gold received an e-mail, and thereafter a letter by certified mail, that served notice upon Advantage Gold, that the Subcontractor Agreement between Advantage Gold and HVH was being unilaterally terminated by HVH.

**COUNT I**
**Century 21 Advantage Gold V. HUD**
**<u>Breach of Implied In Fact Contract</u>**

31. Plaintiff incorporates by reference paragraphs 1 through 30 as if fully set forth at length herein.

32. Both Mr. Rogers and Mr. Lloyd, authorized HUD representatives, asked Lublin and Rudolph to provide HUD with certain information in a formal QMR.

33. Both Mr. Rogers and Mr. Lloyd, at the QMR meeting, assured and promised Century 21 Advantage Gold representatives "full confidentiality" and agency protection against HVH retaliation for any type of loss or damage as a result of Advantage Gold's participation in the QMR.

34. In reliance on the promises and assurances set forth above, Lublin and Rudolph answered all questions in great detail and provided Rogers and Lloyd with all information requested.

35. Despite these assurances, within hours after the QMR ended, one or more HUD representatives contacted HVH representatives and breached the promises made to Advantage Gold's representatives by disclosing to HVH all of the information HUD learned from Lublin and Rudolph in the QMR.

36. Within hours after the QMR ended, HVH terminated Century 21 Advantage Gold as the Listing Broker under the contract.

37. After Advantage Gold was terminated by HVH, Ron Rudolph and William Lublin contacted Engram Lloyd and Sharon Walker of HUD and advised Lloyd and Walker that Advantage Gold was terminated by HVH because of information they

provided in the QMR and asked Lloyd to intercede with HVH and have Advantage Gold reinstated as Lloyd promised.

38. Lloyd refused to take any action on Advantage Gold's behalf and failed to have Advantage Gold reinstated despite having promised to do so and having the authority to do so.

39. Rudolph then wrote to John McGuckin, Chief of the Real Estate Owned Division of the Philadelphia HOC to ask that HUD take steps to undo the retaliatory action taken by HVH.

40. McGuckin refused to take any action to prevent HVH from retaliating against Advantage Gold and terminating Advantage Gold.

41. The QMR program is part of the Management Control Program established by HUD to comply with federal law.

42. Both Daniel Rogers, III, Deputy Director of the Atlanta HOC, and Engram Lloyd, the Director of the Philadelphia HOC, had the actual authority, express or implied, to conduct a QMR, to enter into agreements related thereto, and to bind the government accordingly.

43. The conduct of the parties as set forth above establishes an implied – in-fact contract between plaintiff and defendant.

44. Advantage Gold had been damaged by HUD's breach of the implied in-fact contract, in that Advantage Gold has lost its contract with HVH to serve as the Listing Broker for HVH in the Commonwealth of Pennsylvania.

45. Advantage Gold has been the Listing Broker for HUD properties in the Commonwealth of Pennsylvania for many years, even preceding HUD's hiring of HVH.

46. Advantage Gold had every expectation that its relationship with HVH would continue indefinitely and was expressly told by HVH representatives that Advantage Gold's performance and service was excellent.

47. The breach of the implied – in-fact contract by HUD has caused a great financial loss and detriment to Advantage Gold, in that it has lost all profits that it would have derived from serving as Listing Broker for HUD properties in the Commonwealth of Pennsylvania.

48. Advantage Gold has quantified this loss as follows: the average annual number of listings closed in a year in Pennsylvania is 2,633. Plaintiff was to earn $321/per listing as per the contract. Plaintiff's total loss per year is <u>$845,193</u>. Moreover, plaintiff sells 14.13% of HUD listings in Pennsylvania itself, or 372 listings per year. The average sales price for HUD homes sold in Pennsylvania is $44,134. As such, plaintiff would have earned a 5% commission on the sale of 372 homes at an average price of $44,134, or <u>$820,892</u> annually.

49. Accordingly, plaintiff is seeking annual damages of $1,666,085, for each year that HVH continues to be the M&M for HUD.

WHEREFORE, Lublin Corporation, t/a Century 21 Advantage Gold, respectfully requests that this Court enter judgment in its favor and against the United States of America, in the amount of $1,666,085 annually for each year HVH is contracted with HUD to serve as the M&M, plus costs of suit, interest and counsel fees.

**COUNT II**
**Century 21 Advantage Gold V. HUD**
**Breach of Express Contract**

50. Plaintiff incorporates by reference paragraphs 1 – 42 of its Complaint, inclusive as if fully set forth at length herein.

51. The conduct of the parties as described above establishes an express contract between plaintiff and defendant.

52. Advantage Gold had been damaged by HUD's breach of express contract, in that Advantage Gold has lost its contract with HVH to serve as the Listing Broker for HVH in the Commonwealth of Pennsylvania.

53. Advantage Gold has been the Listing Broker for HUD properties in the Commonwealth of Pennsylvania for many years, even preceding HUD's hiring of HVH.

54. Advantage Gold had every expectation that its relationship with HVH would continue indefinitely and was expressly told by HVH representatives that Advantage Gold's performance and service was excellent.

55. The breach of the express contract by HUD has caused a great financial loss and detriment to Advantage Gold, in that it has lost all profits that it would have derived from serving as Listing Broker for HUD properties in the Commonwealth of Pennsylvania.

56. Advantage Gold has quantified this loss as follows: the average annual number of listings closed in a year in Pennsylvania is 2,633. Plaintiff was to earn $321/per listing as per the contract. Plaintiff's total loss per year is $845,193. Moreover, plaintiff sells 14.13% of HUD listings in Pennsylvania itself, or 372 listings per

year. The average sales price for HUD homes sold in Pennsylvania is $44,134. As such, plaintiff would have earned a 5% commission on the sale of 372 homes at an average price of $44,134, or $820,892 annually.

57. Accordingly, plaintiff is seeking annual damages of $1,666,085, for each year that HVH continues to be the M&M for HUD.

WHEREFORE, Lublin Corporation, t/a Century 21 Advantage Gold, respectfully requests that this Court enter judgment in its favor and against the United States of America, in the amount of $1,666,085 annually for each year HVH is contracted with HUD to serve as the M&M, plus costs of suit, interest and counsel fees.

**GILBERT AND THOMSON LAW OFFICES**

**BY: s/William F. Thomson, Jr, Esquire**
WILLIAM F. THOMSON JR., ESQUIRE
Attorney for Plaintiff, Lublin Corporation
952 Trenton Road
Fairless Hills, Pennsylvania 19030
(215) 337-9300

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| LUBLIN CORPORATION, t/a CENTURY 21<br>ADVANTAGE GOLD<br>7104 Castor Avenue<br>Philadelphia, PA 19149 | : | No. 07-206C<br>(Judge Allegra) |
| Plaintiff | : | |
| vs. | : | |
| UNITED STATES OF AMERICA | : | |
| Defendant | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of September, 2007, on behalf of plaintiff, **Lublin Corporation, t/a Century 21 Advantage Gold,** I caused to be filed electronically, the foregoing Amended Complaint with the United States Court of Federal Claims. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System.

**GILBERT AND THOMSON LAW OFFICES**

**BY: s/William F. Thomson, Jr, Esquire**

WILLIAM F. THOMSON JR., ESQUIRE
Attorney for Plaintiff, Lublin Corporation
952 Trenton Road
Fairless Hills, Pennsylvania 19030
(215) 337-9300