**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| Lublin Corp., t/a Century 21 Advantage Gold, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07-206C |
| | ) | (Judge Allegra) |
| v. | ) | |
| | ) | |
| The United States, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERATIVE, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274
Fax: (202) 514-8624

September 21, 2007

Counsel for Defendant

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . 2

I. NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . . 2

II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . 3

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . 5

A. This Court Lacks Jurisdiction Over Lublin's Complaint Because Lublin Failed To Submit A CDA Claim To A HUD Contracting Officer Prior To Filing A Complaint With This Court . . . . . . . . . 5

B. Plaintiff's Complaint Fails To State A Claim Upon Which Relief Can Be Granted . . . . . . . . . . . . . . . . . . . . 8

C. The United States Is Entitled To Summary Judgment Because The HUD Officials Named In Plaintiff's Complaint Lacked Authority To Enter Into The Alleged Contract . . . . . . . . . . . . . . . . . . . . 10

1. Summary judgment is appropriate on the issue of Mr. Rogers' and Mr. Lloyd's lack of contractual authority. . 10

2. Lublin must demonstrate that Mr. Rogers or Mr. Lloyd had the authority to enter into the alleged contract. . . . . . . . . 11

3. Neither Mr. Rogers nor Mr. Lloyd had any contracting authority and thus the Government is entitled to summary judgment on Lublin's breach of contract claims. . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . 16

EXHIBIT A . . . . . . . . . . . . . . . . . . . . 18

EXHIBIT B . . . . . . . . . . . . . . . . . . . . 21

EXHIBIT C . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

## CASES

American General Leasing, Inc. v. United States,
587 F.2d 54 (Ct. Cl. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

In re Assumption by Government of Contractor Liability to Third Persons - Reconsideration,
62 Comp. Gen. 361 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Atlas Corp. v. United States,
895 F.2d 745 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

California Sand & Gravel, Inc. v. United States,
22 Cl. Ct. 19 (1990), aff'd, 937 F.2d, 624 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 14

City of El Centro v. United States,
922 F.2d 816 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,13

Cornejo-Ortega v. United States,
61 Fed. Cl. 371 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Deponte Investments, Inc. v. United States,
54 Fed. Cl. 112 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Edwards v. United States,
22 Cl. Ct. 423 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Essen Mall Properties v. United States,
21 Cl. Ct. 430 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Federal Crop Insurance Corp. v. Merrill,
332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 16

Flexfab, L.L.C. v. United States,
424 F.3d 1254 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Flying Horse v. United States,
49 Fed. Cl. 419 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

Goel v. United States,
62 Fed. Cl. 804 (2004) . . . . . 5

Grundy v. United States,
2 Cl. Ct. 596 (1983) . . . . . 12

Harbert/Lummus Agrifuels Projects v. United States,
142 F.3d 1429 (Fed. Cir. 1998) . . . . . 10, 12, 13

Heckler v. Community Health Serv. of Crawford County,
467 U.S. 51 (1984) . . . . . 12

Hercules, Inc. v. United States,
516 U.S. 417 (1996) . . . . . 15

James M. Ellett Constr. Co. v. United States,
93 F.3d 1537 (Fed. Cir. 1996) . . . . . 7

Jarvis v. United States,
45 Fed. Cl. 19 (1999) . . . . . 15

Johnson Management Group CFC, Inc. v. Martinez,
308 F.3d 1245 (Fed. Cir. 2002) . . . . . 10

Khairallah v. United States,
43 Fed. Cl. 57 (1999) . . . . . 13

Litton Sys., Inc., v. United States,
27 Fed. Cl. 306 (1992) . . . . . 7

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . 11

Monarch Assurance P.L.C. v. United States,
244 F.3d 1356 (Fed. Cir. 2001) . . . . . 13

Narva Harris Construction Corp. v. United States
574 F.2d 508 (Ct. Cl. 1978) . . . . . 9

Pijanowski v. United States,
60 Fed. Cl. 628 (2004) . . . . . 14

Prestex, Inc. v. United States,
3 Cl. Ct. 373 (1983) . . . . . 9

Ralph Larson & Son, Inc. v. United States,
17 Cl. Ct. 39 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Reflectone, Inc. v. Dalton,
60 F.3d 1572 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Reforestacion de Sarapiqui v. United States,
26 Cl. Ct. 177 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Reliance Ins. Co. v. United States,
931 F.2d 863 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Roy v. United States,
38 Fed. Cl. 184 appeal dismissed, 124 F.3d 224 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . 12

Sam Gray Enterprises, Inc. v. United States,
43 Fed. Cl. 596 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Trauma Service Group v. United States,
104 F.3d 1321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

United States v. American Renaissance Lines, Inc.,
494 F.2d 1059 (D.C. Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

W.M. Schlosser Co., Inc. v. United States,
705 F.2d 1336 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Witherington Constr. Corp. v. United States,
45 Fed. Cl. 208 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATUTES AND REGULATIONS**

48 C.F.R. § 1.601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

48 C.F.R. § 1.602-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 1491(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

31 U.S.C. § 200 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

31 U.S.C. § 1341 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

31 U.S.C. §1501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

41 U.S.C. §§ 601 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| Lublin Corp., t/a Century 21 Advantage Gold, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07-206C |
| | ) | (Judge Allegra) |
| v. | ) | |
| | ) | |
| The United States, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR FAILURE TO STATE A CLAIM AND , IN THE ALTERATIVE, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests this Court to dismiss the complaint in the above-captioned matter for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. In the alternative, pursuant to RCFC 56, defendant requests that the Court enter summary judgment for the United States. In support of our motion, we rely upon plaintiff's Complaint, our brief, and the attached affidavits.

## DEFENDANT'S BRIEF

## I. NATURE OF THE CASE

On September 29, 2007, plaintiff Lublin Corp., t/a Century 21 Advantage Gold ("Lublin" or "Advantage Gold") filed its Amended Complaint ("Complaint") in this Court seeking damages resulting from the Government's alleged breach of an implied contract to "protect [plaintiff] against . . . any type of loss or damage as a result of Advantage Gold's participation in [a Quality Management Review]." See Pl. Am. Compl. (hereinafter "Compl.") at ¶¶ 31-49. In

the alternative,[1] plaintiff asserts that the Government breached an express contract. Id. at 50-57.

As discussed in more detail below, plaintiff's Complaint must be dismissed on jurisdictional grounds because, under the Contract Disputes Act ("CDA"), Advantage Gold was required to, but did not, submit a certified claim to the putative contracting officer. Moreover, plaintiff's Complaint fails to state a claim as a matter of law because the alleged contract was not in writing. Finally, even if plaintiff's Complaint states a claim within this Court's jurisdiction, the United States is entitled to summary judgment because none of the government officials named in plaintiff's Complaint had any authority to contract.

## II. STATEMENT OF FACTS

According to Lublin's Complaint, the United States, acting through the Department of Housing and Urban Development ("HUD"), entered into a prime contract with Hooks Van Holm ("HVH"). See Compl. at ¶ 5. Under that prime contract, HVH agreed to provide HUD with various management, marketing, and sales services related to HUD-owned single family properties in the Commonwealth of Pennsylvania. Id. On or about September 13, 2004, HVH awarded a subcontract to Lublin to provide listing broker services "[i]n order [for HVH] to perform the obligations under its contract with HUD." Id. at ¶ 7.

At some point prior to March 30, 2005, HUD asked Lublin representatives "to participate in a confidential Quality Management Review (QMR) program in HUD's Philadelphia office." Compl. at ¶ 15. The purpose of the QMR allegedly "was to allow HUD to evaluate the

---

[1] "[A]n implied-in-fact contract cannot exist if an express contract already covers the same subject matter." Trauma Service Group v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997 (citing Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir. 1990), and Reforestacion de Sarapiqui v. United States, 26 Cl. Ct. 177, 190 (1992)).

performance of HVH." Id. at ¶ 16. On March 30, 2005, as part of the QMR process, Lublin representatives met with Daniel Rogers, III, Deputy Director of HUD's Atlanta Home Ownership Center ("HOC"). Id. at 19. Lublin avers that it told Mr. Rogers that Lublin "was quite reluctant to participate in the QMR sponsored by HUD" or to discuss "any matters involving HVH" due to possible "repercussions or reprisals by HVH should Advantage Gold provide information that did not reflect favorably on HVH." Id. at ¶¶ 21-22.

Lublin further alleges that Mr. Rogers "specifically assured" plaintiff "that all information provided to HUD in the QMR process would be kept strictly confidential" and that "HUD would make certain that here were no repercussions or reprisals by HVH against Advantage Gold." Compl. at ¶ 23. Lublin similarly avers that Mr. Engram Lloyd, Director of the Philadelphia HOC, assured Lublin representatives "that nothing said to Lloyd would be shared within anyone at HVH and that Lloyd would personally make sure that if any information was accidentally or incidentally revealed to HVH that HUD there would make certain that there would be no reprisals or repercussions by HVH against Advantage Gold." Id. at ¶ 27. Moreover, according to Lublin, "[b]oth Mr. Rogers and Mr. Lloyd, at the QMR meeting, assured and promised Century 21 Advantage Gold representatives [of] agency protection against HVH retaliation for any type of loss or damage as a result of Advantage Gold's participation." Id. at ¶ 33 (emphasis added).[2]

Plaintiff's Complaint alleges that plaintiff was damaged when, "within hours after the QMR ended, one or more HUD representatives contacted HVH representatives and breached the

---

[2] Lublin mistakenly believes that Mr. Rogers and Mr. Lloyd "had the actual authority, express or implied, to conduct a QMR, to enter into agreements related thereto, and to bind the government accordingly." Compl. at ¶ 42.

promises made to Advantage Gold's representatives by disclosing to HVH all of the infomration HUD learned [from plaintiff] in the QMR." Compl. at ¶ 35. In particular, Lublin complains that HUD is responsible for HVH's termination of its subcontract with Lublin and, accordingly, for all of the lost profits "that it would have derived from serving as Listing Broker for HUD properties" in Pennsylvania under its subcontract with HVH. Id. at ¶¶ 36-47 (asserting breach of implied-in-fact contract); see also ¶¶ 50-57 (asserting breach of express contract).

## III. ARGUMENT

Plaintiff "bears the burden" of demonstrating that the Court has subject matter jurisdiction to consider the Complaint in this case. Goel v. United States, 62 Fed. Cl. 804, 806 (2004). In that regard, Lublin's Complaint should be dismissed for failing to allege that plaintiff submitted a claim to the putative contracting officer in compliance with the CDA's requirements. Plaintiff's Complaint also fails to state a claim as a matter of law because the alleged contract was not in writing.

In any event, even if plaintiff's Complaint is not covered by the CDA and states a claim within this Court's jurisdiction, the United States is entitled to summary judgment because neither Mr. Rogers nor Mr. Lloyd possessed any authority to contract. Indeed, the United States doubts whether any HUD official possesses the authority to enter into the type of contract that Lublin asserts was breached in this case.

### A. This Court Lacks Jurisdiction Over Lublin's Complaint Because Lublin Failed To Submit A CDA Claim To A HUD Contracting Officer Prior To Filing A Complaint With This Court

Because Lublin alleges that it entered into a contract to provide QMR services to the Government, any claims arising from such a contract are subject to the Contract Disputes Act of

1978 ("CDA"), 41 U.S.C. §§ 601 et seq. Lublin has not complied with the terms of the CDA, and thus this Court does not possess jurisdiction over plaintiff's claims.

Although the United States generally has consented to suit in this Court upon claims related to contracts with the Government, see 28 U.S.C. § 1491(a), Congress has limited that consent in cases involving contracts subject to the CDA. The CDA applies, by its terms, "[u]nless otherwise specifically provided[,] . . . to any express or implied contract . . . entered into by an executive agency for . . . the procurement of services." 41 U.S.C. § 602(a) (emphasis added). "First, regarding the [CDA's] phrase 'unless otherwise provided herein,' there are no provisions contained in the CDA which either specifically or impliedly exclude [Lublin's] contract[] from its ambit." See Flying Horse v. United States, 49 Fed. Cl. 419, 425 (2001). Second, "the CDA states that it covers 'any express or implied contract' for the procurement of services" and "Congress' use of the term any is indicative of its desire that the Act have broad and inclusive coverage." Id. at 426 (emphasis in original).

Assuming arguendo that Lublin's agreement with HUD officials constituted a contract, it is one for services covered by the CDA. In that regard, we note that Lublin's putative consideration to HUD was Lublin's participation in the QMR program. Compl. at ¶ 15. In particular, according to plaintiff's Complaint, Lublin agreed to provide "information" regarding HVH's performance. Id. at ¶ 22. Indeed, Lublin avers that HUD selected Lublin to participate in the QMR because "it had been HUD's listing broker for the prior three (3) years" and thus uniquely was situated to, and ultimately did, provide HUD with an "assessment of HVH's performance related to HUD's Property Disposition Procedures." Id. at ¶ 17, 24 (emphasis added); see also id. at 34 (alleging that Lublin representatives "provided Rogers and Lloyd with

all information requested" (emphasis added)).

The foregoing types of activities that Lublin described in its Complaint are services that fall within the CDA's ambit. Indeed, our view is supported by the FAR's definition of "[a]dvisory and assistance services[,]" which include "services provided under contract by nongovernmental sources to support or improve: organizational policy development; decision-making; management and administration; [and] program and/or project management and administration. . . . It can also mean the furnishing of professional advice or assistance rendered to improve the effectiveness of Federal management process or procedures." FAR 2.101 (emphasis added). Indeed, the FAR specifically provides that "[i]n rendering the foregoing services, outputs may take the form of information, advice, opinions, . . . evaluations, [and] recommendations." Id. (emphasis added).

The CDA further requires that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). Compliance with that section is a jurisdictional prerequisite to the filing of a complaint in this Court. W.M. Schlosser Co., Inc. v. United States, 705 F.2d 1336, 1338-39 (Fed. Cir. 1983); Litton Sys., Inc., v. United States, 27 Fed. Cl. 306 (1992); James M. Ellett Constr. Co. v. United States, 93 F.3d 1537, 1541 (Fed. Cir. 1996). "Under the CDA, a final decision by a CO on a 'claim' is a prerequisite for Board [or United States Court of Federal Claims] jurisdiction." Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995).

Accordingly, this Court repeatedly has dismissed claims because a contractor did not present its claim to the contracting officer in accordance with the requirements of the CDA. See, e.g., Reliance Ins. Co. v. United States, 931 F.2d 863, 866 (Fed. Cir. 1991) (no jurisdiction to

entertain bad faith claim not presented to the contracting officer); Deponte Investments, Inc. v. United States, 54 Fed. Cl. 112, 115-116 (2002) (no jurisdiction to entertain money claim for damages when no claim was presented to contracting officer); Witherington Constr. Corp. v. United States, 45 Fed. Cl. 208, 212 (1999) (no jurisdiction to entertain termination claim not made prior to suit).

Like the contract at issue in Flying Horse, Lublin's putative contract with HUD to provide QMR related services are subject to the terms of the CDA. In this case, because Lublin has not submitted its claims to a contracting officer, the Court does not possess jurisdiction to consider Lublin's instant Complaint, which therefore must be dismissed.

**B. Plaintiff's Complaint Fails To State A Claim Upon Which Relief Can Be Granted**

In the alternative, assuming arguendo that this Court has jurisdiction over Lublin's Complaint, it nonetheless should be dismissed pursuant to RCFC 12(b)(6) for failure to state a claim because Lublin does not allege that it entered into a written contract with the Government. In particular, plaintiff's claim for breach of an express oral contract is barred by 31 U.S.C. § 1501. See Compl. ¶¶ 50-57 (breach of express contract). In addition, the FAR precludes plaintiff from asserting either an express or implied-in-fact oral contract.

The United States Code provides, in pertinent part, that "[a]n amount shall be recorded as an obligation of the United States Government only when supported by documentary evidence of– (1) a binding agreement between an agency and another person (including an agency) that is– (A) in writing . . . and for a purpose authorized by law. . . ." 31 U.S.C. § 1501(a)(1)(A) (emphasis added). The United States Court of Appeals for the District of Columbia Circuit, discussing almost identical language in an earlier version of that statute, held "that the statute

does establish a requirement that government contracts of this type be in writing, and that contracts which are merely oral are not enforceable." United States v. American Renaissance Lines, Inc., 494 F.2d 1059, 1062 (D.C. Cir. 1974) (discussing 31 U.S.C. § 200 (1970), and explaining that "Congress was concerned that the executive might avoid spending restrictions by asserting oral contracts, and so enacted the requirement of a writing").

In Narva Harris Construction Corp. v. United States, the Court of Claims distinguished "between the naked, express oral contract at which [31 U.S.C. §] 200 may be directed and the 'additional facts' from which a contract implied-in-fact could be inferred." 574 F.2d 508, 510 (Ct. Cl. 1978) (denying Government's motion for summary judgment). However, "[t]o the extent that [Lublin's] contract claim is based on an express oral contract, it fails on the . . . ground that it violated the statutory requirements that an agreement be in writing in order to bind the government." Prestex, Inc. v. United States, 3 Cl. Ct. 373, 377 n.5 (1983) (citing 31 U.S.C. § 200(1)(a) (1970) and 31 U.S.C. § 1501 (1983)); see also Edwards v. United States, 22 Cl. Ct. 411, 423 (1991) ("[T]he Court of Claims noted that although this provision, 31 U.S.C. § 200 (now § 1501), may not be enough to preclude recovery on a contract implied-in-fact, it may preclude recovery on an express oral contract . . . ."). Thus, Lublin's express contract claim is barred by, and fails to state a claim as a matter of law under, 31 U.S.C. § 1501(a)(1)(A).

Moreover, FAR 2.101 requires contracts to be "in writing" unless "otherwise authorized." In that regard, the Court of Claims has explained:

> The Federal Procurement Regulations have the force of law. Moreover, parties contracting with the Government are charged with having knowledge of the law governing the formation of such contracts. Therefore, it is clear, in addition to other manifestations of the parties' intent, that applicable procurement regulations in the present case, require Government contracts to be in writing in

order to be binding upon the parties.

American General Leasing, Inc. v. United States, 587 F.2d 54, 58 (Ct. Cl. 1978) (internal citations omitted); see also Johnson Management Group CFC, Inc. v. Martinez, 308 F.3d 1245, 1258 n.5 (Fed. Cir. 2002)). Again, in this case, Lublin does not allege that its putative agreement with HUD officials was reduced to writing, or otherwise documented in any way.[3]

Accordingly, Lublin's implied-in-fact contract claim also must fail as a matter of law. See American Renaissance Lines, 494 F.2d at 1065 ("The regulation . . . does not require a formal two-signature document, but it does require some for of wring, whether letters of intent, or purchase orders, or some other written manifestation.").[4]

### C. The United States Is Entitled To Summary Judgment Because The HUD Officials Named In Plaintiff's Complaint Lacked Authority To Enter Into The Alleged Contract

#### 1. Summary judgment is appropriate on the issue of Mr. Rogers' and Mr. Lloyd's lack of contractual authority.

Summary judgment may be granted where there are no genuine issues of material fact in

---

[3] See also RCFC 9(h)(3) ("Contracts or Treaties. If the claim is founded upon a contract or treaty with the United States, a description of the contract or treaty sufficient to identify it. In addition, the plaintiff shall plead the substance of those portions of the contract or treaty on which the plaintiff relies or shall annex to the complaint a copy of the contract or treaty, indicating the provisions thereof on which the plaintiff relies.").

[4] Alternatively, Lublin's failure to have its putative agreement with HUD reduced to writing is fatal to Lublin's claims on summary judgment with respect to the contracting authority of Mr. Rogers and Mr. Lloyd. See Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1433 (Fed. Cir. 1998) (holding that "agency procedures must be followed before a binding contract can be formed" and that contracting officer "lacked the authority to enter into the oral contract and it is therefore not binding upon the government"); see also HUDAR 2401.104 (HUD contracting officers bound by the HUDAR and the FAR "except as may be otherwise authorized by law").

dispute and the movant is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987); Ralph Larson & Son, Inc. v. United States, 17 Cl. Ct. 39, 42 (1989).

A court may consider a motion for summary judgment in stages. The initial inquiry should be whether the movant has presented an adequate legal basis for its motion. In this case, we contend that a breach of contract claim must fail where there is no valid contract, and that there is no valid contract where the contracting officer lacked authority to bind the United States to the alleged contract.

Once a movant has established an adequate legal basis for its motion, the Court must consider whether the opposing party has identified any genuine issues of material fact. The first step is to determine whether the issues raised are truly factual issues, or are issues of law. The second step is to determine what subset of the truly factual issues are material to the decision of the case. The third step is to examine the evidence presented by the parties to determine whether there is any genuine issue concerning any material factual issue. Ralph Larson & Son, 17 Cl. Ct. at 43 (describing three steps); accord Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

This case is ripe for summary judgment because, as discussed in more detail below, there can be no valid contract where, as here, the Government officials alleged to have contracted with Lublin possessed no contracting authority.

2. Lublin must demonstrate that Mr. Rogers or Mr. Lloyd had the authority to enter into the alleged contract.

A plaintiff asserting the existence of a contract with the United States bears the burden of

establishing that the person or people upon whose alleged promises or representations the plaintiff relied had actual contracting authority. Heckler v. Community Health Serv. of Crawford County, 467 U.S. 51, 63 (1984); see Grundy v. United States, 2 Cl. Ct. 596, 599 (1983) (holding that a "claimant for money damages for breach of contract must plead and prove that the Government officer, who supposedly entered into the contract with the claimant, had the actual authority to appropriate Government funds for such purpose"). Thus, to prove a valid contract with the United States, Lublin must demonstrate that Mr. Rogers or Mr. Lloyd, the individuals that, on behalf of the United States, allegedly entered into a contract with Lublin, possessed the authority to do so. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384 (1947); Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1432-33 (Fed. Cir. 1998); Trauma Service Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997); City of El Centro v. United States, 922 F.2d 816, 820-21 (Fed. Cir. 1990).

Contracts entered into by Government personnel who lack authority to bind the Government are unenforceable. El Centro, 922 F.2d at 820-21; see also Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1263 (2005) ("Surely the assurances from a government agent, having no authority to give them, cannot expose the government to risk of suit for the nonperformance of an obligation that it did not intentionally accept."). When a Federal employee exceeds his or her authority, the Government can "disavow the [agent's] words and is not bound by an implied contract." Essen Mall Properties v. United States, 21 Cl. Ct. 430, 445 (1990).

The requirement of actual authority is critical because the Government, unlike private parties, cannot be bound by the apparent authority of its agents. Roy v. United States, 38 Fed. Cl. 184, 187, appeal dismissed, 124 F.3d 224 (Fed. Cir. 1997). The rationale for this rule is

obvious:

> The United States Government employs close to three million civilian employees. If all Government employees could, of their own volition, enter into contracts obligating the Government, then federal expenditures would be wholly uncontrollable.

Monarch Assurance P.L.C. v. United States, 244 F.3d 1356, 1360 (Fed. Cir. 2001) (footnote omitted).

As demonstrated below, neither Mr. Rogers nor Mr. Lloyd possessed any contracting authority, let alone the authority to enter into a contract indemnifying plaintiff for an unlimited amount of unknown possible damages. Indeed, the Government's position is that no one within HUD has the authority to create the type of contract that Lublin claims to have with the United States. See Khairallah v. United States, 43 Fed. Cl. 57, 64 (1999) (explaining government employee does not have authority to "bind the agency to open-ended promises").

3. Neither Mr. Rogers nor Mr. Lloyd had any contracting authority and thus the Government is entitled to summary judgment on Lublin's breach of contract claims.

Actual authority must be delegated specifically and explicitly, either by Congress or through agency rule-making. El Centro, 922 F.2d at 820. The authority to contract is delegated by the President to the head of a Federal agency. 48 C.F.R. § 1.601. Contracting officers can only bind the United States "to the extent of the authority delegated to them" by the agency head. 48 C.F.R. § 1.602-1(a); see Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384 (1947); Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1432-33 (Fed. Cir. 1998). In this case, as discussed below, none of the HUD officials with whom Lublin allegedly contracted had any authority to bind the Government and, accordingly, the United States is entitled to summary judgment.

Within HUD, the Secretary, as head of that agency, has "delegated all procurement authority . . . to the [Chief Procurement Officer ("CPO")]," now Mr. Joseph Neurauter. See Declaration of Mr. Joseph Neurauter at ¶¶ 1, 3 (attached hereto as Exhibit A). According to CPO Neurauter, "contracting authority [within HUD] is only held by those to whom it has been delegated through published delegations in the [HUD acquisition] regulations or in the Federal Register or those to whom an HCA has given an appointment, or warrant, to contract for HUD." Id. at ¶ 7 ("No one outside these classes of individuals has contracting authority within HUD.").

With respect to Mr. Rogers and Mr. Lloyd, CPO Neurauter confirms that neither HOC official "possessed contracting authority on or around March 30, 2005, nor did either acquire that authority since that time." Id. at ¶ 9. Likewise, both Mr. Rogers and Mr. Lloyd concurr that "[a]t no time during [their] employment at HUD have [they] ever been authorized or delegated authority to enter into contracts of any nature on behalf of HUD." See Declaration of Mr. N. Daniel Rogers, III at ¶ 3 (attached hereto as Exhibit B); Declaration of Mr. Engram Lloyd at ¶ 3 (attached hereto as Exhibit C).

Nor can Lublin assert that Mr. Rogers or Mr. Lloyd had "implied actual authority" to bind the Government. "Under that doctrine, authority to bind the Government is sometimes implied when such authority is considered to be an integral part of the duties assigned to a Government employee." Sam Gray Enterprises, Inc. v. United States, 43 Fed. Cl. 596, 603 n.10 (1999). However, that "doctrine applies only when some contracting authority was actually delegated." Id. (quoting California Sand & Gravel, Inc. v. United States, 22 Cl. Ct. 19, 27 (1990), aff'd, 937 F.2d 624 (Fed. Cir. 1991), for the proposition that "a person with no actual authority may not gain actual authority through the court-made rule of implied actual authority"). Moreover, the fact that Mr. Rogers or Mr. Lloyd were tasked with conducting the QMR is

irrelevant. See Pijanowski v. United States, 60 Fed. Cl. 628, 632 (2004) ("The fact that the individuals who allegedly promised plaintiff a certain number of hours are the ones responsible for scheduling does not mean that they actually possessed the authority to enter into binding contracts on behalf of the government.").

Finally, at base, Lublin alleges that HUD agreed to indemnify Lublin from any and all losses resulting from its participation in the QMR. But, to the best of the Government's knowledge, no HUD official has the authority to promise such indemnification, particularly in light of the Anti-Deficiency Act, 31 U.S.C. § 1341. See Hercules, Inc. v. United States, 516 U.S. 417, 426-27 (1996) ("There is also reason to think that a contracting officer would not agree to the open-ended indemnification alleged here. The Anti-Deficiency Act bars a federal employee or agency from entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation."). Indeed, the Supreme Court in Hercules viewed "the Anti-Deficiency Act, and the contracting officer's presumed knowledge of its prohibition, as strong evidence that the officer would not have provided, in fact, the contractual indemnification [plaintiff] claims." Id. at 427-28 & n.10 (citing In re Assumption by Government of Contractor Liability to Third Persons – Reconsideration, 62 Comp. Gen. 361, 364-65 (1983), for the proposition that "[w]ith one peculiar exception that the Comptroller General expressly sanctioned, "the accounting officers of the Government have never issued a decision sanctioning the incurring of an obligation for an open-ended indemnity in the absence of statutory authority to the contrary"); see also Jarvis v. United States, 45 Fed. Cl. 19, 20 (1999) (discussing Hercules and holding that "[o]pen-ended liabilities would violate the Anti-Deficiency Act . . . and [are ] unauthorized as a matter of law.").

In sum, to the extent Lublin failed to inquire adequately about Mr. Rogers' or Mr.

Lloyd's authority to bind the Government in contract, Lublin assumed the risk that such employees lacked requisite authority. "[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority . . . [T]his is so even though . . . the agent may have been unaware of the limitations upon his authority." Merrill, 332 U.S. at 384.[5] Where "none of the officials with whom plaintiff conceivably dealt" were authorized to contract in the manner alleged, Lublin's breach of contract claims against the Government must fail. Cornejo-Ortega v. United States, 61 Fed. Cl. 371, 374 (2004).

## IV. CONCLUSION

For all of the above reasons, we respectfully urge this Court either to dismiss plaintiff Lublin's Complaint in this case or to grant summary judgment to the United States.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

[5] In this case, we note that neither Mr. Roger nor Mr. Lloyd have ever "represented to the public or to any contractor" that they are contracting officers, nor have they "indicated in any manner that [they] have authority to enter into contracts on behalf of HUD." Rogers Decl. at ¶ 3; Lloyd Decl. at ¶ 3. In particular, neither of the HUD officials represented to Lublin that they possessed any contract authority. Rogers Decl. at ¶ 4; Lloyd Decl. at ¶ 4.

s/ Mark A. Melnick by s/ B. Snee
MARK A. MELNICK
Assistant Director

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274
Fax: (202) 514-8624

September 21, 2007

Counsel for Defendant

EXHIBIT A

## DECLARATION OF JOSEPH NEURAUTER

I, Joseph Neurauter, hereby declare under penalty of perjury as follows:

1. I am the Chief Procurement Officer (CPO) of the U.S. Department of Housing and Urban Development (HUD). I have been CPO since August 8, 2005. By virtue of this position, I am also designated the Senior Procurement Executive of HUD. Notice of this designation is set forth in 48 C.F.R. § 2401.601-70 and 72 Fed. Reg. 7062 (Feb. 14, 2007). As CPO, I am responsible for all departmental procurement policy, regulations, and procedures, and oversight of all HUD procurement operations.

2. Within HUD, only a limited group of people have authority to enter into contracts on behalf of the government. Herein, I will address the lines of contracting authority as they existed between February 1, 2005 and January 30, 2007.

3. The Secretary of HUD, as head of the agency, is vested with contracting authority pursuant to 48 C.F.R. § 1.601(a). Effective August 11, 2003, the Secretary delegated all procurement authority to the Assistant Secretary for Administration/Chief Information Officer and to the CPO, pursuant to 42 U.S.C. § 3535(d), as stated in 68 Fed. Reg. 50157 (Aug. 20, 2003). Then, effective February 1, 2005, the Secretary revoked the prior delegation and delegated all procurement authority pursuant to 42 U.S.C. § 3535(d) to the CPO, as stated in 72 Fed. Reg. 7062 (Feb. 14, 2007).

4. The CPO has authority to contract and to further delegate contracting authority to qualified employees within HUD. This authority is explained at 72 Fed. Reg. 7062.

5. Heads of Contracting Activities (HCAs) at HUD are qualified employees who possess contracting authority by virtue of their position and may delegate some contracting authority to deputies. See 48 C.F.R. §§ 1.601(a), 2401.603-3. The HCAs within HUD are the CPO and, for field-based procurements, the Directors, Field Contracting Operations. See 48 C.F.R. § 2402.101.

6. Finally, HCAs may delegate contracting authority to appointed contracting officers as stated in 48 C.F.R. § 2401.603-3(a). The appointment must be in writing. HCAs must maintain files containing copies of all appointments that have not been terminated as required by 48 C.F.R. § 1.603-3(a).

7. Only HCAs have the authority to appoint as a contracting officer someone who is not expressly delegated procurement authority by a published departmental delegation of authority. 48 C.F.R. § 2401.603-3(a) makes this limitation explicit. The contracting authority of contracting officers may be limited to defined parameters, and contracting officers may not exceed the scope of their delegated authority. 48 C.F.R. § 1.603-3(a).

8. No one outside these classes of individuals has contracting authority within HUD. As discussed above, contracting authority is only held by those to whom it has been delegated through published delegations in the regulations or in the Federal Register or those to whom an HCA has given an appointment, or warrant, to contract for HUD.

9. After a search of our computerized records of issued declarations, to the best of my knowledge and belief neither Engram Lloyd, Director of HUD's Philadelphia Homeownership Center (HOC), nor N. Daniel Rogers, III, Deputy Director of HUD's Atlanta HOC, possessed contracting authority on or around March 30, 2005, nor did either acquire that authority since that time.

In accordance with 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing statements are true and correct this 12 day of September, 2007.

Joseph Neurauter
Chief Procurement Officer
U.S. Department of Housing and
Urban Development

EXHIBIT B

# DECLARATION OF N. DANIEL ROGERS, III

I, N. Daniel Rogers, III, hereby declare under penalty of perjury as follows:

1. I am the Deputy Director of the U.S. Department of Housing and Urban Development's Atlanta Homeownership Center (HOC). I have been employed by HUD since 1986, and have been in my current position since 1998. In this position, I serve as the Deputy to the Director of the Atlanta HOC. As Deputy, I am responsible for the management, administrative, and technical direction of the Atlanta HOC. I supervise a staff of approximately 220 people.

2. As part of my duties and responsibilities, I am sometimes required to participate in Quality Management Reviews (QMRs) of HUD offices around the United States. The purpose of a QMR is to assess the quality of the performance of the unit of HUD being reviewed. In March 2005, I participated in the QMR of the Philadelphia HOC.

3. My duties and responsibilities as an employee of HUD do not include entering into contracts on behalf HUD. I have never been issued a Certificate of Appointment as a Contracting Officer for the United States of America. At no time during my employment at HUD have I ever been authorized or delegated authority to enter into contracts of any nature on behalf of HUD. Moreover, I have never represented to the public or to any contractor that I am a Contracting Officer, nor have I ever indicated in any manner that I have authority to enter into contracts on behalf of HUD.

4. Specifically, while participating in the March 2005 QMR of the Philadelphia HOC, I did not represent to anyone, including any representatives of the Lublin Corporation and/or Century 21 Advantage Gold, that I was a Contracting Officer or that I had authority to enter into procurement contracts on behalf of HUD.

In accordance with 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing statements are true and correct this 11th day of September, 2007.

N. Daniel Rogers, III
Deputy Director
Atlanta Homeownership Center
U.S. Department of Housing and
Urban Development

EXHIBIT C

**DECLARATION OF ENGRAM LLOYD**

I, Engram Lloyd, hereby declare under penalty of perjury as follows:

1. I am the Director of the U.S. Department of Housing and Urban Development's Philadelphia Homeownership Center (HOC). I have held this position since March 2000. In this position, I am primarily responsible for the overall delivery of HUD's single-family housing programs within the Philadelphia HOC geographic area. I have oversight responsibility for the management, administration, and technical direction of the Philadelphia HOC. I supervise a staff of approximately 205 people.

2. HUD periodically conducts Quality Management Reviews (QMRs) of HUD offices around the United States. The purpose of a QMR is to assess the quality of the performance of the unit of HUD being reviewed. In March 2005, a QMR was performed on the Philadelphia HOC.

3. My duties and responsibilities as an employee of HUD do not include entering into contracts on behalf HUD. I have never been issued a Certificate of Appointment as a Contracting Officer for the United States of America. At no time during my employment at HUD have I ever been authorized or delegated authority to enter into contracts of any nature on behalf of HUD. Moreover, I have never represented to the public or to any contractor that I am a Contracting Officer or indicated in any manner that I have authority to enter into contracts on behalf of HUD.

4. During the course of the March 2005 QMR of the Philadelphia HOC, I did not represent to anyone, including any representatives of the Lublin Corporation and/or Century 21 Advantage Gold, that I was a Contracting Officer or that I had authority to enter into procurement contracts on behalf of HUD.

In accordance with 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing statements are true and correct this 11th day of September, 2007.

Engram Lloyd
Director
Philadelphia Homeownership Center
U.S. Department of Housing and
Urban Development

CERTIFICATE OF FILING

I hereby certify that, on this 21st day of September 2007, I caused to be filed electronically the foregoing DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERATIVE, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT with the United States Court of Federal Claims. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON