# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LUBLIN CORPORATION, t/a CENTURY 21 ADVANTAGE GOLD<br>7104 Castor Avenue<br>Philadelphia, PA 19149 | : | No. 07-206C<br>(Judge Allegra) |
| Plaintiff | : | |
| vs. | : | |
| UNITED STATES OF AMERICA | : | |
| Defendant | | |

# PLAINTIFF'S REPLY TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM AND MOTION FOR SUMMARY JUDGMENT

WILLIAM F. THOMSON, JR., ESQUIRE
Gilbert And Thomson Law Offices
952 Trenton Road
Fairless Hills, PA 19030
Tel: 215-337-9300
Fax: 215-337-9131

Counsel for Plaintiff Lublin Corporation
t/a Century 21 Advantage Gold

October 19, 2007

# TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................................i

TABLE OF AUTHORITIES...............................................................................................ii

PLAINTIFF'S BRIEF.......................................................................................................1

I. FACTUAL BACKGROUND.........................................................................1

II. NOTICE OF THE CASE........ ......................................................................4

III. ARGUMENT.................................................................................................4

A. The certification requirements of the CDA do not apply to this claim and, in the alternative, if they are deemed to apply, the letter sent to John McGluckin satisfies the requirement.....................................5

B. Plaintiff's Complaint states a claim upon which relief can be granted....................................................................................................8

C. The United States' Motion for Summary Judgment should be denied since this case is not ripe for Summary Judgment........................13

CONCLUSION .............................................................................................................19

EXHIBIT A.....................................................................................................................20

# TABLE OF AUTHORITIES
## CASES

Algonac Mfg. Co. v. United States
428 F.2d 1241, 192 Ct. Cl. 649 (1970)....................10

Burtt v. United States
176 Ct. Cl. 310 (1966)....................9

Contract Cleaning Maintenance v. United States
811 F.2d 586 (Fed. Cir. 1987)....................9

Cruz-Pagan v. United States
35 Fed. Cl. 59 (1996)....................18

Dart Advantage Warehousing, Inc. v. United States
52 Fed. Cl. 694 (2002).................... 16

Dolmatch Group, Ltd. v. United States
40 Fed. Cl. 431 (1998)....................20

Edwards v. United States
22 Cl. Ct. 411 (1991)....................14

G.E. Boggs and Associates, Inc. v. Roskins
969 F.2d 1023 (Fed. Cir. 1992)....................8

H. Landau & Co. v. United States
886 F.2d 322 (Fed. Cir. 1989)....................18

Hawkins and Powers Aviation, Inc. v. United States
46 Fed. Cir. 238 (2000)....................9

Institut Pasteur v. United States
814 F.2d 624 (Fed. Cir. 1987)....................5, 6, 8

Jankowsky v. United States
23 Cl. Ct. 706, 989 F.2d 1203, 36 Fed. Cl. 148,133 F.3d 888 (Fed. Cir. 1988)....................6, 7, 8, 17, 19, 20

Narva Harris Corp. v. the United States
216 Ct. Cl. 238, 574 F.2d 508 (1978)....................10, 11, 12

Pacord, Inc. v. United States of America
139 F.3d 1320 (1998)....................................................................11, 12, 14

Penn-Ohio Steel Corp. v. United States
173 Ct. Cl. 1064, 354 F.2d 254 (1965)..........................................................13

Perri v. United States
53 Fed. Cl. 381 (2002).............................................................................13, 14

Philadelphia Suburban Corp. V. United States
217 Ct. Cl. 705 (1978).................................................................................20

Prudential Insurance Company of America v. United States
801 Fed.2d 1295 (Fed. Cir. 1986). cert. denied, 479 U.S.1086 (1987)...................12

Schuerman v. United States
30 Fed. Cl. 420 (1994)................................................................................. 16

Silverman v. United States
230 Ct. Cl. 701, 679 F. 2d 865 (1982)............................................................19

United States v. Beebe
180 U.S. 343 (1901).....................................................................................20

United States v. Grumman Aerospace Corp.
927 F.2d 575 (Fed. Cir. 1991)........................................................................ 5

United States v. Purcell Envelope Company
249 U.S. 313 (1919)..................................................................................... 13

## STATUTES AND REGULATIONS

28 U.S.C. §1491...............................................................................................13

31 U.S.C. §200(a)(1)...................................................................................10, 14

39 U.S.C.§1341...............................................................................................21

41 U.S.C. §601 et seq........................................................................................5

41 U.S.C. §602(a)...............................................................................................5

F.R.C.P. 56(c)..........................................................................................................16

F.R.C.P. 56(f)..........................................................................................................4, 14

FAR 2.101..........................................................................................................12

Pub. L. No. 91-129 §1, 83 Stat. 269..........................................................................................................6

R.C.F.C. 56(c)..........................................................................................................16

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

LUBLIN CORPORATION, t/a CENTURY 21 :
ADVANTAGE GOLD No. 07-206C
7104 Castor Avenue : (Judge Allegra)
Philadelphia, PA 19149
:
Plaintiff
:
vs.
:
UNITED STATES OF AMERICA
:
Defendant

**PLAINTIFF'S REPLY TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM AND MOTION FOR SUMMARY JUDGMENT**

Plaintiff by and through its counsel, Gilbert and Thomson Law Offices, hereby responds to defendant's Motions as set forth above and respectfully requests that defendant's Motions be denied and dismissed.

**PLAINTIFF'S BRIEF**

## I. FACTUAL BACKGROUND

The United States Department of Housing and Urban Development (hereinafter "HUD") entered into a Management and Marketing (M&M) contract with Hooks Van Holm, Inc. (hereinafter "HVH") to have HVH serve as the prime contractor to HUD, and

provide various services to HUD, including but not limited to, managing, marketing and overseeing the sales and closing activity for HUD owned single homes (1-4 units) properties in the Commonwealth of Pennsylvania. In accordance with its contract with HUD, HVH also provided other specific services to HUD including but not limited to selling HUD owned homes in the Commonwealth of Pennsylvania. In order to perform the obligations under its contract with HUD, HVH entered into a Subcontractor Agreement with Lublin Corporation, trading as Century 21 Advantage Gold, (hereinafter "Lublin") to provide listing broker services to HVH. As the listing broker, Lublin was required to provide listing services and sublisting services to successfully place single family properties owned by HUD, being managed and marketed by HVH, on a local Multiple Listing Service (MLS), to be sold and to answer or pass on inquiries regarding properties and perform such duties for bidding as are customary. In accordance with Section F (1) of the contract, the contract was in effect from the date of the award which was September 18, 2004 through October 1, 2005.

For the services provided in the contract, Lublin was to receive a fixed fee at the closing of each property. The fixed fee that Lublin was to receive was $321.00 per property. Lublin was to receive its fee at the closing.

Sometime prior to March 30, 2005 representatives from Lublin Corporation were asked by HUD to participate in a Confidential Quality Management Review (QMR) being conducted by HUD in its Philadelphia office. The purpose of the QMR was to allow HUD to evaluate how HVH was handling the Pennsylvania market, since HVH was new to the

Pennsylvania market. On March 30, 2005, Lublin representatives William H. Lublin and Ronald Rudolph met with Daniel Rogers, Deputy Director of HUD's Atlanta Home Ownership Center ("HOC"). The representatives of Lublin Corporation were quite reluctant to participate in the QMR, especially when the Lublin representatives gleaned that HUD's purpose was to obtain information about the practices and procedures of HVH in implementing HUD's property disposition program. When pressed by Rogers at this meeting to respond with regard to various issues relating to HVH's performance, representatives of Lublin stated that they did not wish to discuss these matters with HUD employees since there could be repercussions or reprisals by HVH should Lublin representatives provide information that did not reflect favorably on HVH. Rogers specifically assured Lublin representatives that all information provided to HUD in the QMR process would be kept strictly confidential, that nothing said by Lublin Representatives would be discussed or mentioned by HUD representatives to HVH representatives and that HUD would make certain that there were no repercussions or reprisals by HVH against Lublin should HVH become aware that Lublin provided HUD with some information that did not reflect favorably on HVH. After receiving these assurances from Rogers, representatives of Lublin did participate in the QMR and did provide HUD employees with a candid, honest and forthright assessment of HVH's performance related to HUD's property disposition procedures in Pennsylvania. Later that same day Rogers took Lublin and Rudolph to see Engram Lloyd, Director of the Philadelphia HOC. Again, Lublin raised the same concerns with Lloyd and received the

same assurances from Lloyd regarding repercussions and reprisals by HVH against Lublin Corporation. Lublin representatives responded to all Lloyd's inquiries and provided Lloyd with the information he requested. Approximately two hours after the meeting ended, Lublin Corporation received an e-mail and thereafter a letter by certified mail that served notice upon Lublin that the Subcontractor Agreement between Lublin and HVH was being unilaterally terminated by HVH. Despite the assurances made by Rogers and Lloyd, one or more HUD representatives contacted HVH representatives and breached the promises made to Lublin representatives by disclosing to HVH all of the information HUD learned from Lublin representatives. The result was that Lublin Corporation's contract was terminated, resulting in a substantial economic loss for Lublin Corporation.

## II. HISTORY OF THE CASE

Plaintiff filed a Complaint. The Government filed a Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim. Plaintiff filed a response. After oral argument the Government's Motion was dismissed. Plaintiff filed a Motion to Amend its Complaint. The Motion was granted. Plaintiff filed an Amended Complaint. The Government filed the instant motion.

## III. ARGUMENT

The certification requirements of the CDA do not apply to this claim. If they are deemed to apply, the letter attached hereto satisfies the requirement and, as such, this

Court has subject matter jurisdiction over this claim. This matter is not ripe for Summary Judgment because there are numerous material facts in dispute with regard to contracting authority. The Defendant seeks the entry of judgment based on self-serving affidavits appended to its Brief. Pursuant to Rule 56(f), the Plaintiff requests the opportunity to pursue discovery which Plaintiff believes will reveal that the HUD representatives who conducted the QMR had the authority to enter into an agreement with Plaintiff.

**A. The certification requirements of the CDA do not apply to this claim and, in the alternative, if they are deemed to apply, the letter sent to John McGuckin satisfies the requirement. Accordingly, this Court has subject matter jurisdiction over Lublin's Complaint.**

The first issue is whether this agreement with HUD representatives as set forth in the Complaint is subject to the certification requirements of the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §601 et seq., making it necessary for Lublin to have filed a certified claim prior to commencing suit. See United States v. Grumman Aerospace Corp., 927 F.2d 575 (Fed. Cir. 1991). The CDA applies to any express or implied contract...entered into by an executive agency for (1) the procurement of property...[or] (2) the procurement of services. 41 U.S.C. §602(a). Whether the alleged agreement constitutes a contract for the procurement of property or services within the meaning of the CDA is a question of law for this Court. Institut Pasteur v. United States, 814 F.2d 624 (Fed. Cir. 1987). When discussing the applicability of the

CDA, the United States Court of Appeals, Federal Circuit, has acknowledged the clarity of this CDA, but has said that statutory interpretation will nevertheless be necessary to "do justice to the realities of the situation." See Institut Pasteur, supra. The Court of Appeals has also noted that the legislative history and policy considerations underlying the enactment of this CDA are useful in determining whether Congress intended that an agreement fall within the ambit of the CDA. Institute Pasteur, supra. To determine whether the applicability of the CDA to the pleaded contract is within the intention of Congress, the Court must look to the purpose of the Act and its legislative history.

The CDA is an implementation of the recommendations made by the Commission on Government Procurement, created by Congress in 1969, to promote economy, efficiency, and effectiveness in the procurement of goods, services and facilities by and for the executive branch of the Federal Government by: (1) establishing policies, procedures and practices which will require the government to acquire goods, services and facilities of a requisite quality and within the time needed at the lowest reasonable cost, utilizing competitive bidding to the maximum extent practical...Pub.L.No. 91-129 §1, 83 Stat. 269, as amended.

Such policy considerations relating to costs and competition have no application whatsoever to the contract at issue in this case. The facts in the case Jankowsky v. United States, 133 F.3d 888 (Fed. Cir. 1998) are analogous to the instant case. Jankowsky has an extensive procedural history which is set forth at 36 Fed. Cl. 148. In brief, Jankowsky alleged that he was recruited by the FBI to assist the FBI in infiltrating

corrupt police and organized crime activities. Jankowsky agreed to engage in other activities as directed by the FBI and testify against the targets of the investigation. Jankowsky feared that his cooperation with the Government would bankrupt his business and, therefore, he sought to limit his potential financial loss. He negotiated with certain FBI agents to be paid a certain sum of money for equipment that he provided with regard to the investigation.

Judge Turner of the Federal Court of Claims held that Jankowsky's claim that the FBI breached an implied-in-fact contract with him to compensate him for his services rendered and the use of business was subject to the Contracts Dispute Act and dismissed the case for lack of subject matter jurisdiction and failure to submit a certified claim to the FBI prior to filing suit. 23 Cl. Ct. 706.

The United States Court of Appeals reversed this decision and remanded the case to the Court of Claims. See 989 F.2d 1203. On appeal, Jankowsky argued that the policy goals of the CDA were not served by his agreement with the FBI to act as an informant and, thus, the implied-in-fact contract is not subject to the CDA. In its brief, the Government stated that the underlying policy considerations of the CDA have no application to "typical informant arrangements" and that it is improbable that the drafters of this CDA contemplated imposing costs and competition restrictions with respect to information sought from informants. The Government, in its Brief, also stated that informant agreements generally have not been accepted as contracts for the

procurement of goods and services.

The Court of Appeals reasoned that what is being acquired in informant agreements is information. Citing Institut Pasteur, the Court of Appeals held that informant agreements are necessary to accomplish government social policy and to curb criminal conduct and they are not entered into so that the Government can procure property or services. As such, they are not within the ambit of the CDA. See also G.E. Boggs and Associates, Inc. v. Roskins, 969 F.2d 1023 (Fed. Cir. 1992).

Accordingly, the informant services provided by Lublin are not the type of services that were contemplated as coming within the purview of the CDA, since as in Jankowsky, the purpose of the agreement between Lublin and HUD was to allow HUD to collect information on its prime contractor and not to procure property or services. As such, the Government's Motion to Dismiss for Lack of Jurisdiction must be denied.

In the alternative, the Government argues that the CDA requires that all claims by a contractor against the Government relating to a contract shall be in writing and submitted to the contracting officer for a decision. Attached hereto as Exhibit "A" is a copy of a letter written to John McGuckin, the head of HUD's Home Ownership Center at the Philadelphia office. That letter is dated June 7, 2005. Plaintiff avers that Mr. McGuckin would be the appropriate contracting officer for HUD with regard to the claim made by plaintiffs. Even assuming arguendo, that Mr. McGuckin is not the appropriate contracting officer, it is well-settled law that the relevant determination is whether the letter submitted by Lublin was a clear and unequivocal statement that put HUD on

sufficient notice of the basis for the claim currently before the Court. Contract Cleaning Maintenance v. United States, 811 F.2d 586 (Fed. Cir. 1987). The attached letter clearly puts HUD on notice of the claim and provides sufficient facts so as to allow HUD to investigate the claims made and evaluate the claim. As stated by the Court in Hawkins and Powers Aviation, Inc. v. United States, 46 Fed. Cl. 238 (2000), where a letter clearly stated the basis for the claim and there is no response by the Government to the claim letter, these factors weigh in favor of finding jurisdiction. As such, the Motion to Dismiss for Lack of Jurisdiction filed by the Government must be dismissed.

**B. Plaintiff's Complaint states a claim upon which relief can be granted.**

At oral argument held in open Court on Plaintiff's first Motion to Dismiss, Your Honor posed a hypothetical to the Government's attorney which, in all material respects, was identical to the factual scenario pled by the Plaintiff its Amended Complaint. Your Honor asked counsel that if such allegations could be proven at trial, would an oral contract be created. Counsel responded in the affirmative. Your Honor then asked counsel for the Government whether such a contract would be enforceable against the Government. Counsel again responded in the affirmative. Now, in section "B" of its Brief, counsel alleges that the Amended Complaint should be dismissed because Lublin does not allege that it entered into a "written contract" with the Government. Burtt v. United States, 176 Ct. Cl. 310 (1966) [the case Your Honor handed to counsel for consideration at oral argument] involved a circumstance where

the plaintiff alleged that she made an express oral agreement with the senior government doctor to leave her family for a limited period and enter a military hospital with her husband in order that both of them might receive marriage counseling assistance. Once in the hospital plaintiff alleged that she was confined as a mental patient in derogation of the express contractual arrangement and involuntarily separated from her three children until the Court finally ordered her release. Her assigned grievance was not sub-standard treatment, but treatment and confinement of a nature entirely different from that for which she contracted with an authorized government representative. The Court held that the claim's genesis in contract was unmistakable. Whether or not the agreement that plaintiff alleges was actually made would be a question for determination on the merits. If the evidence deduced refuted the existence of such an agreement, the defendant would prevail because of considerations of proof, not because the Court is without jurisdiction. Clearly, in this case, the alleged oral argument stated a claim upon which relief could be granted.

In Narva Harris Corp.v. United States, 216 Ct. Cl. 238, 574 F.2d 508 (1978), the Government contended that there was no applicable exception to the writing requirement of 31 U.S.C. §200(a)(1) (now §1501). While conceding that the statute may preclude the enforcement of a bare express oral contract, the Court went on to state that, as early as 1874, and more recently, the Court has often allowed recovery on an implied-in-fact contract. Algonac Mfg. Co. v. United States, 428 F.2d 1241, 192

Ct. Cl. 649 (1970). The failure, for whatever reason, of an attempt at express contract, whether it be written or oral, is not enough, in itself, to deprive a party of a recovery for breach where sufficient additional facts exist for the Court to infer the "meeting of the minds" necessary to separate an implied in fact contract from a pure implied in law contract." Narva Harris, supra.

In Narva Harris, a government representative encouraged a contractor to submit an unrealistically low bid in order to get a project started. The government representative assured the contractor that the costs figures would later be adjusted to reflect the actual costs. Relying on these assurances, the contractor proceeded with and completed the work. The Government then failed to adjust the figures as promised. The contractor sued the Government, which defended on the ground that the contract had to be in writing and it was not. The Court held that if Plaintiff could prove facts from which a contract may be inferred, the statutory mandated preclusion of recovery on the oral contract would not bar plaintiff's recovery. Thereafter, the United States Court of Appeals, 9th Circuit, decided the case Pacord, Inc. v. United States of America, 139 F.3d 1320 (1998). In Pacord the United States Department of Navy entered into several contracts with A&E Industries to do ship repairs. The Navy was concerned that A&E might have difficulty getting contractors to work for them because A&E had a history of not paying its sub-contractors. Commander Terry Wright, for the Navy, contacted Pacord. The Commander told Pacord that if Pacord would work

on the project under a sub-contract with A&E, the Navy would require that A&E establish an escrow account for payment of Pacord. The Navy failed to pay Pacord the amount that it was owed. Pacord filed suit against the Government. The Court of Appeals stated that the Pacord case was analogous to Narva Harris. In both cases the Government made assurances to a service provider in order to secure desired performance. In neither case did the parties execute written contracts as required. The agreements were oral. Pacord, like Narva Harris proceeded and completed the work in reliance on the Government's assurances. On these facts, the Pacord Court held that Pacord should be permitted to establish at trial the existence of an implied in fact contract and, if Pacord could do so, recovery is not barred by the FAR 2.101 requirement, that a contract must be in writing. As such, although the FAR governed the contract between the Navy and Pacord, the FAR does not render the contract unenforceable so long as Pacord could establish sufficient facts beyond a mere oral agreement.

It is well settled law that implied-in-fact contracts, as express contracts, require

1. mutuality of intent to contract;
2. other ambiguous offer and accepted;
3. consideration.

To prove an implied-in-fact contract, all elements of an express contract must be shown by facts or circumstances surrounding the transaction. Prudential Insurance Company

of America v. United States, 801 Fed.2d 1295 (Fed. Cir. 1986). cert. denied, 479 U.S. 1086 (1987). There is no express statute of frauds applicable to government contracts requiring that the contract be in writing, and a clear majority of cases have held that a signed document need not exist in order for a binding contract to exist. United States v. Purcell Envelope Company, 249 U.S. 313 (1919), Penn-Ohio Steel Corp. v. United States, 173 Ct. Cl. 1064, 354 F.2d 254 (1965). In Perri v. United States, 53 Fed. Cl. 381 (2002) Perri filed suit to recover 1.3 million dollars from the United States Government. This amount represented one quarter of the proceeds resulting from the Government's auction of a farm. According to Perri, Special Agent Matthews of the FBI had promised that in exchange for his assistance in producing evidence necessary for criminal indictment, the Government would pay him an amount equal to one quarter of the property's auction price. In that case, the Court held that it had jurisdiction under the Tucker Act, 28 U.S.C. §1491. Similar to the instant case, plaintiff alleged that he had either an express oral contract or an implied contract with the Government. The Court noted that the elements of an express oral contract and a contract implied-in-fact are identical. According to Perri, the elements of a binding express oral contract were met because: 1) he and the FBI both intended to enter into a contract, one of whose purpose was for the Government to seize a farm, auction it off, and pay Perri one quarter of the resulting proceeds; 2) Perri provided valuable consideration in his role as a confidential informant and cooperative witness, thereby enabling the Government to

seize and sell the farm; 3) there was no ambiguity in the FBI's offer to Perri and; 4) Special Agent Matthews had authority (either actual or implied) to enter into the contract, thereby establishing the express contract between Perri and The United States. The Perri Court performed an exhaustive review of the facts to determine whether an express oral contract existed. Since this claim by Perri was clearly decided on the merits, plaintiff's Complaint obviously stated a claim upon which relief could be granted. After considering the merits of the case, the Court concluded that the record in the case did not support plaintiff's contention that he had an express oral contract with the United States. The Edwards v. United States case, 22 Cl. Ct. 411 (1991) relied on by the Government, clearly states that although 31 U.S.C. §200(a)(1) (now §1501) may not be enough to preclude recovery on a contract implied-in-fact, it may preclude recovery on an express oral contract. However, the Court correctly noted that this provision is rarely, if ever, the sole basis for invalidating an otherwise valid express oral agreement. The Pacord decision, coming after Edwards has clearly eliminated any distinction between the express oral contract and an implied-in-fact contract for the purpose of determining whether recovery is precluded due to the fact that a writing does not exist. For the above reasons, this issue was never addressed in the Perri case. Since the proofs for an express oral contract and an implied-in-fact contract are

identical, it would be illogical to draw any distinction between the two contracts for the purposes referenced above. As such, plaintiff's Complaint has set forth a claim upon which relief can be granted.

**C. The United States' Motion for Summary Judgment should be denied since this case is not ripe for Summary Judgment.**

At oral argument on the Defendant's Motion to Dismiss, there was discussion amongst the parties with regard to the allegations set forth in Plaintiff's original Complaint. The Court acknowledged that the Federal Rules require only "notice pleading", but strongly suggested, in this circumstance, that Plaintiff considered filing an Amended Complaint and, in said Amended Complaint, set forth all the requisite facts supporting Plaintiff's cause of action. Plaintiff did this. Defendant has not answered Plaintiff's Amended Complaint. Instead, the Government filed a three part Motion and in Part Three seeks Summary Judgment on the basis that the HUD officials named in the Complaint lacked authority to enter into the alleged contract. Plaintiff believes this matter is not ripe for Summary Judgment since the Government has not admitted or denied the allegations set forth in Plaintiff's Complaint, nor has the Plaintiff had any opportunity to do any discovery on the contracting authority issue, which was first raised in earnest in the Government Brief in Support of its Motion for Summary Judgment. The factual underpinnings that allegedly support the Government's Summary Judgment are three self-serving affidavits attached to its Motion for Summary

Judgment. Plaintiff respectfully requests, pursuant to Rule 56(f), that it be provided with the opportunity to propound written discovery to the Government on this contracting issue and take deposition testimony from the relevant parties on this issue.

Summary Judgment is only appropriate and shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), R.C.F.C. 56(c), Schuerman v. United States, 30 Fed. Cl. 420 (1994). A fact is material if it will make a difference in the result of the case under the governing law. Irrelevant or unnecessary factual disputes do not preclude the entry of Summary Judgment. Dart Advantage Warehousing, Inc. v. United States, 52 Fed. Cl. 694 (2002). When deciding a Summary Judgment Motion, the Judge must determine whether the evidence presents disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that the one party must prevail as a matter of law. Dart, supra. If the non-moving party produces sufficient evidence to raise the question as to the outcome of the case, then a Motion for Summary Judgment must be denied. In this regard, the party opposing Summary Judgment is entitled to the benefit of all presumptions and inferences in resolving any doubts over factual issues. Dart, supra.

The Government alleges that an express contract between Lublin and the United States could not come into being unless Mr. Rogers and Mr. Lloyd had authority to enter the alleged agreement. In support of its Motion for Summary Judgment, the

Government provides the Declaration of Joseph Neurauter. He was the CPO for HUD. In that Declaration, Mr. Neurauter states that only a limited group of people have authority to enter into contracts on behalf of the Government. At number five (5) of his declaration, Mr. Neurauter states that Heads of Contracting Activities (HCA) at HUD are qualified employees who possess contracting authority by virtue of their position and may delegate some authority to Deputies. (emphasis added) A material issue of fact exists as to whether any HCA at HUD delegated the authority to any Deputy Director to make an agreement as alleged by the Plaintiff in Plaintiff's Complaint.

Further, if permitted to do discovery, Plaintiff will subpoena from the Government all documentation with regard to the Quality Management Review (QMR) Program conducted by HUD. Plaintiff believes and therefore avers that Manual(s) exist(s) which sets forth operations, guidelines and procedures concerning the QMR process. These documents may provide the actual authority for Rogers and Lloyd to enter into an agreement with the Plaintiff. Plaintiff will also depose both Lloyd and Rogers with regard to the past and current practice of HUD with regard to the QMR process, particularly focusing on the "confidentiality" of the process and any agreements are routinely made with "informants" that participate in the process. Discovery along these lines may well produce material facts that support Plaintiff's position that Rogers and/or Lloyd had actual authority to enter into the agreement with Plaintiff.

Regardless of whether Rogers or Lloyd had actual contracting authority, Rogers or Lloyd may well have had "implied actual authority" to enter into a contract with the Plaintiff. The doctrine of implied actual authority was first articulated by the Federal Circuit in H. Landau & Co. v. United States, 886 F.2d 322 (Fed. Cir. 1989). In that case the Federal Circuit ruled that "implied actual authority", like express actual authority, will suffice to hold the Government bound by the acts of its agents. Authority to bind the Government is generally implied when such authority is considered to be an integral part of the duties assigned to a government employee. This concept of implied actual contracting authority was again recognized in Cruz-Pagan v. United States, 35 Fed. Cl. 59 (1996). If plaintiff can prove that the making of promises to informants in the QMR process is an integral part of the duties assigned to HUD agents, who conduct QMRs, because the same is vital to the objectives of the QMR, then plaintiff can prove that both Rogers and Lloyd had implied actual authority to make an agreement with Plaintiff. In order to prove this, Plaintiff will need to engage in a fact intensive discovery to determine how Deputy Directors conduct QMRs and what means are employed to obtain information from informants; the obtaining of said information being critical to the purposes of the QMR.

Further, regardless of whether Rogers or Lloyd had actual or implied actual contracting authority to obligate HUD, the promise made to the Plaintiffs may be legally deemed "ratified" by higher officials at HUD who did have the requisite contracting authority. This ratification would result in an implied in fact contract between Lublin

and HUD. The principal of ratification comes into play when a government agency affirms, rather than disavows an unauthorized promise by its agents. As explained in Jankowsky, supra, a contract is voidable at the option of the Government when the official who made the agreement lacked actual authority to bind the Government. A principal is free to affirm or disavow the unauthorized promises of its agent, and thus contracts entered into by the agent acting beyond the scope of his authority are not void, but are voidable by the principal. Thus, the Government may, if it chooses, ratify an unauthorized or voidable contract. As a manifestation of such intent, it has long been recognized that, even if a government official lacks actual authority to bind the United States by his promise, knowing acceptance of the benefits by those empowered to bind the government can result in the ratification of the unauthorized official's promise. Jankowsky, supra.

In Silverman v. United States, 230 Ct. Cl. 701, 679 F.2d 865 (1982), a Court reporting service that was a subcontractor on a government contract stopped shipments of FTC hearing transcripts when the contractor failed to make payments to a subcontractor. A senior FTC official who lacked authority to obligate the government contractually promised the service that the FTC would pay for the transcripts. Based on this oral representation, the contractor had the transcripts delivered to the FTC. The Court of Claims held that the FTC was liable for the cost of transcripts based on an implied-in-fact contract. According to the Court, by accepting the benefits that flowed from the senior FTC official's power, the FTC ratified such promise and was bound by it.

This doctrine, where a government agency as a whole is viewed as having ratified an acceptance to a contract is referred to as "institutional ratification." See also Philadelphia Suburban Corp. v. United States, 217 Ct. Cl. 705 (1978).

Unauthorized agreements may also be subsequently ratified...if ratifying officials have actual or constructive knowledge of the unauthorized acts. United States v. Beebe 180 U.S. 343 (1901). In Jankowsky, plaintiff alleged that he had an implied-in-fact contract with the FBI to compensate him for services rendered. The Court of Claims granted summary judgment to the Government on the basis that the FBI agent who allegedly made the promise to Jankowsky lacked contractual authority. Plaintiff appealed and the Federal Circuit remanded the case to the trial court to determine whether the FBI's conduct – allowing the sting operation to continue and reaping benefits therefrom - constituted ratification of the proposed contract. Similarly in the instant case, the HUD officials did reap the benefits of the information provided by Lublin and Rudolph and Plaintiff believes that in discovery Plaintiff will be able to prove that the agreement made by Rogers and Lloyd was ratified by HUD. Plaintiff intends to pursue discovery to prove that HUD's actions constituted ratification.

In Dolmatch Group, Ltd. v. United States, 40 Fed. Cl. 431 (1998), the Court of Federal Claims denied the Government's Motion for Summary Judgment because there were genuine issues of material fact as to whether an agreement plaintiff negotiated with a representative of the Smithsonian Institute, who did not have contracting authority, was ratified by someone who had the requisite contracting authority.

Similarly, Plaintiff believes that through discovery Plaintiff could ascertain whether HUD's designated contracting officers had actual or constructive knowledge that agreements were being routinely made with informants so as to implement the purposes of the federally mandated QMR.

Accordingly, factual issues as set forth above clearly preclude entry of Summary Judgment in favor of the Government at this time.

Finally, the Anti-Deficiency Act, 39 U.S.C. §1341 has no applicability to this case. The essence of the Government's promise in this case was that should there be any untoward consequences due to the intentional or unintentional disclosure of information to HVH, that HUD representatives would instruct its prime contractor that the contractor could not terminate its agreement with Lublin Corporation. If the Government representatives would have kept their promise and instructed HVH to continue the contract with Lublin Corporation, there would be no necessity for this lawsuit. The damages that flow from the breach of the agreement are not as a result of any failure to indemnify per se, but rather the outright refusal of the Government to act in accordance with its promise. It was certainly within the power of the HUD representatives who made the agreement with Lublin to direct its prime contractor to continue its sub-contract with Lublin Corporation. HUD refused to do this and, as such, HVH cut Lublin Corporation loose and Lublin Corporation has incurred significant economic damages.

In conclusion, it seems incomprehensible that in order to recover for a breach of

contract, citizens who were contacted by a federal agency, which requested that the citizens provide information to the federal agency pursuant to a federally mandated process, would first need to inquire of a government official whether that government official has the authority to make that promise. This is particularly so, when the promise made is directly related to the information sought. It seems both unjust and inequitable that the Court would sanction the actions of government officials who dupe unsuspecting citizens. Citizens who provide information to a government agency, pursuant to a federally mandated process, have the legal right to expect that any agreement made relating to the information provided be enforceable in a court of law. It also stretches credulity to claim that a Deputy Director of HUD would lack the authority to make such an agreement, particularly since this is an integral part of the QMR process. The HUD officials who made the agreement with the Plaintiff in this case had the actual authority to prevent the harm to Plaintiff's business, but simply refused to do so. The Government is clearly liable on the facts alleged and the Plaintiff is entitled to the damages sought in the Complaint.

## II. CONCLUSION

For all the above reasons, the Plaintiff respectfully urges this Court to deny the Government's Motions to Dismiss and to Deny the Government's Motion for Summary Judgment.

Respectfully submitted,

/s/ William F. Thomson, Jr., Esquire
WILLIAM F. THOMSON, JR., ESQUIRE

**CERTIFICATE OF FILING**

I hereby certify that, on this 19th day of October, 2007, I caused to be filed electronically the foregoing Reply to Defendant's Motion to Dismiss For Lack of Jurisdiction and Failure to State a Claim and Motion for Summary Judgment with the United States Court of Federal Claims. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ William F. Thomson, Jr., Esquire
WILLIAM F. THOMSON, JR., ESQUIRE