COPY

LAW OFFICES
GILBERT AND THOMSON
952 TRENTON ROAD
FAIRLESS HILLS, PENNSYLVANIA 19030
(215) 337-9300
WTHOLAWYER@AOL.COM

RALF GILBERT
OF COUNSEL

WILLIAM F. THOMSON, JR.
MEMBER, PA & NJ BAR

FAX (215) 337-9131

June 7, 2005

John McGuckin
U.S. Department of Housing & Urban Development
Home Ownership Center
The Wanamaker Building
100 Penn Square East
Philadelphia, Pennsylvania 19107-3389

RE: Subcontractor Agreement between M&M: HVH, Inc. and
Listing Broker: Century 21 Advantage Gold

Dear Mr. McGuckin:

This correspondence will advise you that I have been retained by Century 21 Advantage Gold to represent its interest with regard to various issues which have arisen concerning the Subcontractor Agreement between Hooks Van Holm, Inc. and Century 21 Advantage Gold. I am enclosing for your review and file a copy of a letter which I have sent to Robert Hooks of Hooks Van Holm, Inc. In addition to enlisting your assistance to obtain compliance with the contract, I would like to take this opportunity to address several issues and statements contained in your letters, dated May 23, 2005 to Ron Rudolph of Century 21 Advantage Gold and May 26, 2005 to a Century 21 Advantage Gold's subcontractor, Ms. Helen Fausnaught of Classic Real Estate.

In your letter of May 23, 2005 to Mr. Rudolph, you indicated that Century 21 Advantage Gold's termination did not appear to be related to its recent participation in HUD's Quality Management Review Program (QMR) in the Philadelphia HUD office. You stated that the timing of the company's termination "was coincidental" and was not in any way related to Century 21 Advantage Gold's participation in HUD's QMR. You go on to add that the termination was the function of failed negotiations with respect to Century 21 Advantage Gold's contract with Hooks Van Holm, Inc. which, by its own terms, had expired.

Even a cursory review of Century 21 Advantage Gold's contract with Hooks Van Holm, Inc. would have disclosed that the contract was in full force and effect at the time Century 21 Advantage Gold was terminated and, per the terms of the contract, was to continue through October 1, 2005.

Secondly, Mr. Hooks had traveled to Philadelphia and met with my client on March 9, 2005 to discuss the possibility of renegotiating certain terms in the contract. At that time, Mr. Hooks assured my client that Hooks Van Holm was extremely pleased with the services provided by my client and that Hooks Van Holm wished to continue with my client as the "Listing Broker" in Pennsylvania. What Mr. Hooks proposed was a reduction in the flat fee my client was to receive and a concurrent reduction of the scope of services my client would provide. My client advised Mr. Hooks that they were generally agreeable to the proposal advanced by Mr. Hooks. Mr. Hooks advised my client that he would prepare a revised contract and forward it to my client for consideration. He did that. As such, my client had the distinct impression that the parties would reach agreement on a new contract. My client had the revised contract in hand and was in the process of tweaking the contract at the time it was unceremoniously terminated.

My client was quite reluctant to participate in HUD's QMR, especially when they gleaned that HUD's purpose was to obtain information about the practices and procedures of Hooks Van Holm in implementing HUD's property disposition process. My client responded to the QMR request by indicating that they did not wish to discuss any matters involving Hooks Van Holm, since Hooks Van Holm employed my client, not HUD, and that Hooks Van Holm could terminate my client's contract. My client was assured that all information provided to HUD would be kept strictly confidential and that there would be no repercussions or reprisals by Hooks Van Holm, should Hooks Van Holm become aware that my client provided HUD with some information that did not reflect positively on Hooks Van Holm. After receiving HUD's assurances, my client provided HUD with a candid, honest and forthright assessment of Hooks Van Holm's performance in the Pennsylvania property disposition process. Approximately two (2) hours later, Hooks Van Holm terminated my client's contract without any cause, reason, or explanation.

Frankly, in my experience as a trial lawyer, I doubt that any jury will believe that it is a "mere coincidence" that this contract was terminated two (2) hours after my client provided HUD with confidential information concerning Hooks Van Holm's performance. The termination of the contract had nothing to do with "failed negotiations", since Hooks Van Holm tendered a proposed contract to my client. As indicated, the parties reached agreement on many of the essential terms, and the parties were in the process of memorializing the contract when my client was terminated. The overwhelming circumstantial evidence indicates what actually occurred that day, someone from HUD contacted Hooks Van Holm, violated the contract with my client to keep matters

confidential, and told Hooks Van Holm everything that my client said in the QMR. Hooks Van Holm responded by terminating my client's contract. This conduct is both reprehensible and a violation of federal law.

Moreover, your letter to Mr. Rudolph is inaccurate in many other respects. The new Listing Broker retained by Hooks Van Holm has not taken the steps to list HUD properties in all 67 counties in Pennsylvania and, in fact, the new Broker's license is not in good standing, as per the information provided by the Pennsylvania Real Estate Commission, since the new Broker's license is listed "inactive."

My client's contract with Hooks Van Holm requires that Hooks Van Holm provide my client with HUD-1's for all properties closed in Pennsylvania, so that my client can accurately track the closed properties and make certain that it receives the payment required by its contract. It is my hope that HUD has not directed Hooks Van Holm to breach its contractual arrangement with my client by directing HVH not to send to my client the HUD-1's for all properties closed in Pennsylvania. In any event, I ask that HUD direct HVH to immediately commence with sending the HUD-1's to my client.

In your letter to Ms. Helen Fausnaught, you indicated that Century 21 Advantage Gold receives a report every week of all cases that have closed in Pennsylvania. **Century 21 Advantage Gold has never received a weekly report from Hooks Van Holm or HUD of all HUD homes that have closed in Pennsylvania**. The only information that my client ever received from Hooks Van Holm was an Excel spreadsheet. This Excel spreadsheet would reference Pennsylvania HUD closings in a particular month. Unfortunately, my client never received this spreadsheet in a timely manner. The spreadsheets would be sent to my client many weeks later after the end of the month, frequently covering closings for multiple months. As you can glean from my letter to HVH, the information provided was never accurate. This was not what was contemplated in our contract with Hooks Van Holm and this is the reason why we required, per contract, that HVH provide the actual HUD-1's.

The information you provided to Helen Fausnaught of Classic Real Estate is clearly inaccurate and places us in a bad light with our subcontractors who would believe, based on your letter, that we are receiving timely information and payment from Hooks Van Holm. This is clearly not the case and, as indicated in our letter to Hooks Van Holm, which is attached hereto, we are owed a substantial sum of money from Hooks Van Holm. To imply that we are holding monies that may be due subcontractors is not only grossly inaccurate, but perhaps actionable.

It is the considered opinion of my client that the failure of responsible HUD officials to appropriately discharge their duties and keep in strict confidence the information provided by my client to HUD, in a formal HUD QMR process, was the direct and proximate cause of my client losing its contract with Hooks Van Holm. As such, my client intends to seek all available remedies under the law against HUD, both in contract and in tort.

We certainly would welcome the opportunity to attempt to resolve this matter amicably, without the need for litigation. If HUD wishes to engage in a dialogue with my client and Hooks Van Holm to discuss potential remedies, we would be glad to do so. However, if this matter is not resolved within thirty (30) days of the date of this letter, you will leave my client with no choice but to pursue its remedies under the law. We look forward to your prompt response.

Very truly yours,

WILLIAM F. THOMSON, JR., ESQUIRE

WFT/sa

cc: Robert Hooks