No. 07-206C
(Judge Allegra)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

Lublin Corp., t/a Century 21 Advantage Gold,

Plaintiff,
v.

The United States,

Defendant.

---

# DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR FAILURE TO STATE A CLAIM AND, IN THE ALTERNATIVE, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division, U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274
Fax: (202) 514-8624

November 13, 2007

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR FAILURE TO STATE A CLAIM AND, IN THE ALTERNATIVE, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. This Court Lacks Jurisdiction Over Plaintiff's Complaint In This Case Because Plaintiff Failed To Comply With The CDA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Lublin's Claims Are Barred By Either Statute Or Regulation And Thus Fail To State A Claim Upon Which Relief Can Be Granted . . . . . . . . . . . . . . . . . . . . . . . 5

III. Because Lublin Has Neither Opposed Defendant's Summary Judgment Motion With Any Evidence Nor Submitted Any Affidavit Pursuant To RCFC 56(f), The United States Is Entitled To Judgment As A Matter Of Law . . . . . . . . . . . . . . . . 10

A. Plaintiff's Response To Defendant's Motion For Summary Judgement Is Improper Because It Does Not Comply With RCFC 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B. The United States is Entitled to Summary Judgment Because No HUD Official With Actual Authority Contracted With Lublin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

C. The Doctrines Of "Implied Actual Authority" And "Ratification" Cannot Save Plaintiff from the Government's Summary Judgment Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

### CASES

Am. Gen. Leasing, Inc. v. United States,
587 F.2d 54 (Ct. Cl. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Appeals of Thomas Creek Lumber & Log Co., IBCA No. 3917R,
2006 WL 2037324 (July 20, 2006), aff'd, 2007 WL 2908181 (Fed. Cir. Oct. 3, 2007) . 9

Applegate v. United States,
52 Fed. Cl. 751 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Bell Atlantic Corp. v. Twombly, --,
127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Blue Legs v. U.S. Bureau of Indian Affairs,
2007 WL 1815994 (D.S.D. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Branch Banking & Trust Co. v. United States,
98 F. Supp. 757 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Brubaker Amusement Co.v. United States,
304 F.3d 1349 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11,12

California Sand & Gravel, Inc. v. United States,
22 Cl. Ct. 19 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

City of El-Centro v. United States,
922 F.2d 816 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Clark v. United States,
95 U.S. (5 Otto) 539 (1877) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Cornejo-Ortega v. United States,
61 Fed. Cl. 371 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

Doe v. United States,
48 Fed. Cl. 495 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Edwards v. United States,
22 Cl. Ct. 411 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Erie Coal & Coke Corp. v. United States,
266 U.S. 518 (1925) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

F. Alderete Gen. Contractors, Inc. v. United States,
715 F.2d 1476 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Crop Ins. Corp. v. Merrill,
332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

Flying Horse v. United States,
49 Fed. Cl. 419 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

G.E. Boggs & Associates, Inc. v. United States,
969 F.2d 1023 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Goodin v. United States Postal Inspection Serv.,
444 F.3d 998 (8th Cir. 2006), cert. denied, 127 S. Ct. 930 (2007) . . . . . . . . . . . . . . . . . 4

H. Landau & Co. v. United States,
886 F.2d 322 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

Harbert/Lummus Agrifuels Projects v. United States,
142 F.3d 1429 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

Hopkins v. Arkansas.,
2007 WL 2996842 (E.D. Ark. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Institut Pasteur v. United States,
814 F.2d 624 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Janowsky v. United States,
989 F.2d 1203 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 16

Johnson Mgmt. Group CFC, Inc. v. Martinez,
308 F.3d 1245 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Jones v. United States,
11 Ct. Cl. 733 (1875) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Keebler Co. v. Murray Bakery Prods.,
866 F.2d 1386 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Liberty Mut. Ins. Co. v. United States,
70 Fed. Cl. 37 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Narva Harris Constr. Corp. v. United States,
574 F.2d 508 (Ct. Cl. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 8

New America Shipbuilders, Inc. v. United States,
871 F.2d 1077 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

New York & P.R.S.S. Co. v. United States,
206 F. 443 (2d Cir. 1913) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Night Vision Corp. v. United States,
68 Fed. Cl. 368 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

Oroville-Tonasket Irrigation Dist. v. United States,
33 Fed. Cl. 14 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

PacOrd, Inc. v. United States,
139 F.3d 1320 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Penn-Ohio Steel Corp v. United States,
354 F.2d 254 (Ct. Cl. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Perri v. United States,
53 Fed. Cl. 381 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Petrini v. United States,
19 Cl. Ct. 41 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Prestex, Inc. v. United States,
3 Cl. Ct. 373 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Pure Gold, Inc v. Syntex (U.S.A.), Inc.,
739 F.2d 624 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Reflectone, Inc. v. Dalton,
60 F.3d 1572 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

Sam Gray Enterprises, Inc. v. United States,
43 Fed. Cl. 596 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ruttenburg v. United States,
65 Fed. Cl. 43 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

South Boston Iron Co. v. United States,
118 U.S. 37 (1886) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Strickland v. United States,
382 F. Supp. 2d 1334 (M.D. Fla. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Sutton v. United States,
256 U.S. 575 (1921) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

Sweats Fashions, Inc. v. Pannill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Am. Renaissance Lines, Inc.,
494 F.2d 1059 (D.C. Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Beebe,
180 U.S. 343 (1901) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Purcell Envelope Co.,
249 U.S. 313 (1919) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATUTES AND REGULATIONS**

41 C.F.R. 1-1.208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

48 C.F.R. § 2.101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

25 U.S.C. § 1616a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

31 U.S.C. 200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

31 U.S.C. 1501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

41 U.S.C. 602(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

41 U.S.C. 605(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

41 U.S.C. § 605(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| Lublin Corp., t/a Century 21 Advantage Gold, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07-206C |
| | ) | (Judge Allegra) |
| v. | ) | |
| | ) | |
| The United States, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR FAILURE TO STATE A CLAIM AND, IN THE ALTERNATIVE, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On September 21, 2007, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, moved this Court to dismiss the complaint in the above-captioned matter for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. In the alternative, defendant, pursuant to RCFC 56, requested that the Court enter summary judgment for the United States. On October 19, 2007, plaintiff Lublin Corp., t/a Century 21 Advantage Gold ("Lublin" or "Advantage Gold") filed its response to defendant's motion ("Opposition" or "Pl. Opp.").

As discussed in more detail below, this Court should dismiss Lublin's complaint either for lack of jurisdiction because Lublin failed to comply with the CDA, see RCFC 12(b)(1), or for failing to state a claim upon which relief can be granted because Lublin does not allege that it entered into a written contract with the United States, see RCFC 12(b)(6). In the alternative, the United States is entitled to summary judgment because none of the Government officials with whom Lublin allegedly contracted had authority to do so.

## I. **This Court Lacks Jurisdiction Over Plaintiff's Complaint In This Case Because Plaintiff Failed To Comply With The CDA**

Lublin concedes, as it must, that the Contract Disputes Act ("CDA") ordinarily requires that claims subject to the CDA be submitted in writing to a contracting officer for a final decision, prior to the filing of a complaint in this Court. See 41 U.S.C. § 605(a); Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995). Lublin disputes, however, the application of the CDA to Lublin's alleged contract with the Department of Housing and Urban Development ("HUD").

In support of Lublin's view that the CDA is inapplicable to the instant case, Lublin relies primarily on two Federal Circuit cases: Institut Pasteur v. United States, 814 F.2d 624 (Fed. Cir. 1987), and Janowsky v. United States, 989 F.2d 1203 (Fed. Cir. 1993) (unpublished). Both cases are inapposite, however, and do not permit this Court to depart from the CDA's plain language, applying the Act's requirements to "any express or implied contract . . . entered into by an executive agency for . . . the procurement of services." 41 U.S.C. § 602(a) (emphasis added); See Flying Horse v. United States, 49 Fed. Cl. 419, 426 (2001) ("Congress' use of the term any is indicative of its desire that the Act have broad and inclusive coverage." (emphasis in original)).

First, in Institut Pasteur, the Federal Circuit held, based on then existing procurement regulations, that the transaction at issue was for "scientific collaboration" and "was closer to being donative in nature than it was to the contracts for procurement of property or services." 814 F.2d at 628 (discussing 41 C.F.R. § 1.209 (1983)). Thus, the agreement in Institut Pasteur bears no similarity to the alleged contract at issue here. See Oroville-Tonasket Irrigation Dist. v.

United States, 33 Fed. Cl. 14, 23(1995) (distinguishing Institut Pasteur).[1]

Janowsky is similarly distinguishable. In that case, the Claims Court held that it had no jurisdiction over a claim for breach of a contract for criminal informant services because no CDA claim had been submitted to the contracting officer. See Janowsky, 23 Cl. Ct. 706 (1991), reversed-in-part, 989 F.2d 1203 (Fed. Cir. 1993) (unpublished). The Federal Circuit reversed the Claims Court's decision, holding that the CDA does not cover such agreements because "[w]hat is being acquired in informant agreements is information relative to the enforcement of the criminal laws." 989 F.2d 1203, 1993 WL 36863,*2-*3 (emphasis added) (explaining that "the principal purpose of the agreement in the first instance . . . was to collect information and evidence regarding the criminal activities of others"). In so holding, the Federal Circuit carefully distinguished such criminal informant agreements from those contracts where, as here, "services [are] rendered in the traditional sense of performing a task or function beneficial to the operations of government or its programs." Id. at *2 (emphasis added).

Given that the alleged purpose of the Quality Management Review "was to allow HUD to evaluate the performance of [prime contractor] HVH" on a Government contract, see Pl. Compl. at ¶ 15, the Federal Circuit's decision in Janowsky provides no basis for exempting

[1] Indeed, this Court in Oroville-Tonasket appears to criticize Institut Pasteur for its partial reliance on that "part of the Report of the Commission on Government Procurement . . . concerned with the competitive or non competitive process of contract award[,]" rather than the part of the Report addressing "a uniform procedure for resolving disputes arising under government contracts, however awarded." 33 Fed. Cl. at 23. Thus, Oroville-Tonasket correctly explains that "[t]he procurement regulations provide authority for the award of contracts where there is other than full and open competition and set forth no indication that this is a factor with respect to CDA coverage." Id. ("Circumstances exist where there is only one logical source to supply a product or service to the government, and the CDA is still applicable if a contract is awarded to such a source."). Institut Pasteur appropriately should be limited to the facts presented therein.

Lublin's alleged contract from the CDA's ambit.[2] In any event, Lublin ignores the FAR's definition of "[a]dvisory and assistance services" addressed in defendant's opening brief, see Def. Mot. at 7 (discussing FAR 2.101), which Lublin does not dispute covers its alleged contract with HUD. See, e.g., Goodin v. United States Postal Inspection Serv., 444 F.3d 998, 1002 (8th Cir. 2006) ("Goodin's attempt to exempt herself from the reach of the CDA by characterizing her actions as forming a contract for information rather than for services is similarly unpersuasive. We agree with the district court that there is no basis for concluding that the term services does not include the provision of information . . . ."), cert. denied, 127 S. Ct. 930 (2007).

In the alternative, Lublin contends, see Pl. Opp. at 8, that its June 7, 2005 letter to John McGuckin satisfies the CDA's claim requirement. The CDA, however, requires not only a written demand explaining the contractor's claim, but also a demand for "'the payment of money in a sum certain.'" See Reflectone, 60 F.3d at 1575-76 (discussing FAR 33.201). Lublin's aforementioned June 7, 2005 letter does not qualify as a CDA claim because it does not request "the payment of money in a sum certain." To the contrary, the letter expresses plaintiff's counsel's "hope that HUD has not directed Hooks Van Holm to breach its contractual arrangement with [Lublin]" and requested that "HUD direct HVH to immediately commence with sending HUD-1's to [Lublin]." June 7, 2005 letter to John McGuckin, at 3.

[2] Plaintiff cites, but does not discuss, G.E. Boggs & Associates, Inc. v. United States, 969 F.2d 1023 (Fed. Cir. 1992). That case, however, did not involve a procurement of "services by an executive agency of the [United States] government" but rather a contract with a foreign government. 969 F.2d at 1027-28 (explaining that "the sole and express purpose of the AID-Boggs contracts was to terminate the Syria-Boggs contracts for convenience, and to apply federal contract regulations to determine the sums due to Boggs following such a termination").

Moreover, for claims of more than $100,000, the contractor must certify to the contracting officer that

> the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor.

41 U.S.C. § 605(c)(1) (2000). The aforementioned letter does not include the required certification; accordingly, even if the letter identified the "sum certain" now sought by Lublin's complaint, the letter would be insufficient to confer jurisdiction upon this Court.

## II. Lublin's Claims Are Barred By Either Statute Or Regulation And Thus Fail To State A Claim Upon Which Relief Can Be Granted

Lublin's complaint asserted claims for both breach of an express oral contract (Count II) and an implied-in-fact contract (Count I). Lublin does not dispute that a number of courts either have held, explicitly, or suggested that 31 U.S.C. § 1501 bars the assertion of claims based on express oral contracts. See United States v. Am. Renaissance Lines, Inc., 494 F.2d 1059, 1062 (D.C. Cir. 1974); Narva Harris Constr. Corp. v. United States, 574 F.2d 508, 510 (Ct. Cl. 1978); Prestex, Inc. v. United States, 3 Cl. Ct. 373, 377 n.5 (1983); Edwards v. United States, 22 Cl. Ct. 411, 423 (1991).

Lublin maintains, however, that it can assert an implied-in-fact contract notwithstanding either 31 U.S.C. § 1501 or FAR 2.101. Although Narva Harris supports Lublin's position with respect to 31 U.S.C. § 1501, that case is silent regarding FAR 2.101, which precludes both of Lublin's claims in this case. 574 F.2d at 511 (holding that "such an expansive interpretation of [31 U.S.C.] § 200 is unacceptable" but not discussing FAR 2.101 or any similar regulation).

Lublin does not dispute that the plain meaning of FAR 2.101 "require[s] Government

contracts to be in writing in order to be binding upon the parties." Am. Gen. Leasing, Inc. v. United States, 587 F.2d 54, 58 (Ct. Cl. 1978) (internal citations omitted); see also Johnson Mgmt. Group CFC, Inc. v. Martinez, 308 F.3d 1245, 1258 n.5 (Fed. Cir. 2002). Lublin addressed neither of those two cases in its response, but instead relies upon PacOrd, Inc. v. United States, 139 F.3d 1320 (9th Cir. 1998), a decision not binding on this Court.[3]

The Ninth Circuit in PacOrd agreed both that FAR 2.101 applied to the "guaranty contract" at issue and that the plain language of that provision "require[s] that the contract must be in writing." 139 F.3d at 1323. Purporting to follow Narva Harris, however, the court held that PacOrd "should be permitted to establish at trial, the existence of an implied-in-fact contract[,]" FAR 2.101 notwithstanding. Id.

PacOrd was not a unanimous decision, however; indeed, Judge Nelson's dissent pointed out that the FAR "has made it clear that contracts within the FAR must be in writing." 139 F.3d at 1324 (Nelson, J., dissenting) ("With thousands of contracts and hundreds of billions of dollars in play every year, the Government simply has to know to whom and for what it is obligated.").[4]

---

[3] In terms of an express oral contract, the Ninth Circuit cited Clark v. United States, 95 U.S. (5 Otto) 539 (1877), for the proposition that "although a statute requiring a writing precluded recovery based completely on an express oral contract, recovery was available on an 'implied contract.'" 139 F.3d at 1322 n. 1; see also id. at 1323 ("Although the FAR governs the alleged contract between the Navy and PacOrd, [FAR] 2.101 does not render the contract unenforceable so long as PacOrd can establish sufficient facts, beyond a mere oral agreement, for the court to infer the existence of an implied-in-fact contract." (emphasis added)).

[4] In our opening motion, see Def. Mot. at 10 n.4, we also explained that FAR 2.101 was fatal to Lublin's claims because that provision deprives anyone at HUD from having the authority to contract in the manner Lublin has alleged. See 139 F.3d at 1324 ("PacOrd has not shown that anyone connected with the alleged indemnity contract was 'otherwise authorized' to enter into an oral agreement. In the absence of such authority, the oral contract can have no validity." (discussing Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947))); see also Night Vision Corp. v. United States, 68 Fed. Cl. 368, 388 (2005) ("Under the FAR all contracts

Judge Nelson observed that "[t]he [PacOrd] majority relies on the Narva Harris case[,]" but correctly pointed out that the latter case simply "was not decided under the FAR." Id. Thus, plaintiff's reliance on PacOrd and Narva Harris is misplaced, as neither case controls the outcome here.

Moreover, both PacOrd and plaintiff failed to take note of American General Leasing, a Court of Claims case that was issued after Narva Harris, and that remains as binding precedent in the Federal Circuit and in this Court. American General involved a procurement regulation containing almost identical language to FAR 2.101, including the requirement that contracts be "in writing." See 587 F.2d at 57 (discussing 41 C.F.R. § 1-1.208). The Court of Claims first correctly recognized both that the "Federal Procurement Regulations have the force of law" and that "parties contracting with the Government are charged with having knowledge of the law governing the formation of such contracts." Id. at 58. The court then held, based on the "in writing" language contained in then-41 C.F.R. § 1-1.208, that "it is clear, in addition to other manifestations of the parties' intent, that applicable procurement regulations . . . require Government contracts to be in writing in order to be binding upon the parties." Id. Lublin entirely fails to address American General. See Sutton v. United States, 256 U.S. 575, 580 (1921) ("The limitation upon the authority to impose contract obligations upon the United States is as applicable to contracts by implication as it is to those expressly made.").

Although Lublin cites both United States v. Purcell Envelope Co., 249 U.S. 313 (1919),

---

'except as otherwise authorized' must be 'in writing.' Federal Acquisition Regulations, 48 C.F.R. § 2.101 (2005). The very nature of the plaintiff's claim concedes that these procedures were not followed."); Arnie Bruce Mason, Implied-In-Fact Contracts Under the Federal Acquisition Regulation: Why PacOrd Got It Wrong, 41 Wm. & Mary L. Rev. 709 (2000).

and Penn-Ohio Steel Corp v. United States, 354 F.2d 254 (Ct. Cl. 1965), in support of its position, those cases – like Narva Harris – neither considered, nor were decided under, federal acquisition regulations. Moreover, in Purcell Envelope, while a contract document existed that simply had not been "formally signed," there was no dispute that plaintiff's bid had been accepted by the Government via an "entry of [an] order awarding the contract to [plaintiff]." 249 U.S. at 319-20.

Penn-Ohio is similarly distinguishable, if not supportive of the Government's position in the instant case. In Penn-Ohio, the Government argued that an alleged contract was precluded by the Pennsylvania statute of frauds. See 354 F.2d at 269. The court held that "even assuming that the State statute of frauds was applicable to the transaction in question," there was a written agreement "[that] was in compliance with [the statute's] requirements." Id. at 270. In contrast to the facts in Penn-Ohio, Lublin makes no allegation of a written agreement in the instant case.

Furthermore, in rejecting the applicability of the state statute of frauds in Penn-Ohio, the Court of Claims also explained that a Federal statute requiring that certain contracts "be in writing" had been repealed and thus,"under Federal law there is no requirement that contracts be in writing." Id. at 269 & n.26. It is then clear from Penn-Ohio that if there had been a Federal statute or regulation requiring contracts to "be in writing," the Court of Claims would have given such a provision its natural effect and barred the assertion of the plaintiff's contract claim in the absence of a writing. See, e.g., Jones v. United States, 11 Ct. Cl. 733, 1800 WL 876, *7 (1875) ("[T]he requirement that the contract shall be in writing is ... mandatory . . . . And in cases after case, since the enactment of that statute, we have held contracts for supplies invalid because not made in writing."); Erie Coal & Coke Corp. v. United States, 266 U.S. 518, 521 (1925) ("It must

be held that, because of the failure to make and sign a written contract as required by [Revised Statute] section 3744, the United States was not bound."); South Boston Iron Co. v. United States, 118 U.S. 37 (1886) (same); New York & P.R.S.S. Co. v. United States, 206 F. 443, 444 (2d Cir. 1913) (following South Boston and explaining that "[i]f Congress wishes the agreements between the Navy Department and individuals to depend on oral testimony, it has only to repeal or modify the statute in question; this court can do neither").[5]

Lublin's reliance upon Perri v. United States, 53 Fed. Cl. 381 (2002), similarly is misplaced. Although Lublin is correct that Perri was decided "on the merits," Pl. Opp. at 14, this Court ultimately held that given certain FBI regulations requiring "that any procurement of goods or services exceeding $25,000 necessitates a formal contract[,]" – what the Court characterized as a "restriction on contracting authority" – "it is obvious that [the] Special Agent . . ., who was not a contracting officer, had no authority to enter into a 'services' contract with Perri committing $1.5 million, or more, of FBI or other government funds . . . ." 53 Fed. Cl. at

---

[5] See also Ruttenburg v. United States, 65 Fed. Cl. 43, 48-49 (2005) ("The Indian Health Care Improvement Act, which governs the IHSLRP, requires that all contracts made pursuant to the IHSLRP be in writing. 25 U.S.C. § 1616a. This provision alone prevents enforcement of an oral contract purporting to establish Plaintiff's participation in the IHSLRP."); Petrini v. United States,19 Cl. Ct. 41, 46 (1989) ("In American General Leasing, Inc. . . ., the court held that the applicable procurement regulations required government contracts to be in writing in order to be binding upon the parties. . . . Thus, no implied-in-fact contract came into being. . . . The applicable regulations in this case require an employment contract to be in writing. . . . No contract therefore can be implied. Even assuming, arguendo, that the parties did not envision a formal writing as the only manifestation that would establish a binding contractual relationship, plaintiff's implied-in-fact contract claim would still fail due to lack of mutuality."); See Appeals of Thomas Creek Lumber & Log Co., IBCA No. 3917R, 2006 WL 2037324 (July 20, 2006), aff'd, 2007 WL 2908181, *3 (Fed. Cir. Oct. 3, 2007) (unpublished slip op.) (citing American General Leasing and timber contract regulations for the proposition that, "[g]enerally, a government contract must be in writing and signed by the parties before it binds them").

398. Lublin, in this case, has failed to explain why, as a matter of law, the Court here should not reach the same result as it did in Perri.

In sum, pursuant to 31 U.S.C. § 1501 and FAR 2.101, Lublin's various claims for breach of contract – whether under an express oral, or implied-in-fact, contract theory – must fail as a matter of law because Lublin does not allege that it entered into a written contract with HUD.

## III. Because Lublin Has Neither Opposed Defendant's Summary Judgment Motion With Any Evidence Nor Submitted Any Affidavit Pursuant To RCFC 56(f), The United States Is Entitled To Judgment As A Matter Of Law

In the Government's opening motion for summary judgment, the United States provided conclusive and undisputed evidence that none of the officials that allegedly contracted with Lublin possessed the authority to do so. In response to that evidence, Lublin merely asserts that "[d]iscovery . . . may well produce material facts that support Plaintiff's position . . . ." Pl. Opp. at 17 (emphasis added). Lublin did not provide any evidence, let alone "sufficient evidence," to contradict the HUD officials' affidavits and thereby "raise [a] question as to the outcome of the case." Pl. Opp. at 16. Thus, Lublin's response did not comply with the requirements of RCFC 56(f), and is insufficient to overcome the Government's motion for summary judgment.

### A. Plaintiff's Response To Defendant's Motion For Summary Judgement Is Improper Because It Does Not Comply With RCFC 56(f)

Lublin argues that summary judgment should be denied in this matter because it has not conducted discovery. Plaintiff disregards the requirements of RCFC 56(f). "A party may not simply assert that discovery is necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." Keebler Co. v. Murray Bakery Prods., 866 F.2d 1386, 1389 (Fed. Cir. 1989), quoted in Brubaker Amusement Co. v. United States, 304 F.3d 1349, 1361 (Fed. Cir. 2002). Moreover,

the non-movant may not argue simply that "'we have no factual basis for opposing summary judgment, but, if you stay proceedings, we might find something.'" Keebler, 866 F.2d at 1389.

In Pure Gold, Inc v. Syntex (U.S.A.), Inc., 739 F.2d 624, 625 (Fed. Cir. 1984), the non-movant did not proffer an affidavit in opposition to a motion for summary judgment. Instead, the non-movant "merely assert[ed] that the pleadings and the motion itself raised genuine issues of material fact, and that it was entitled to discovery in order to develop relevant evidence." Id. In affirming summary judgment in favor of the appellee, the Federal Circuit held that a nonmoving party is required to identify, "usually in an affidavit by one with knowledge of the specific facts, what specific evidence could be offered at trial," and that "mere assertions of counsel" lacked the required specificity. Id. at 626-27. In this case, Lublin's response to our motion for summary judgment consists of argument, expressions of desire for discovery, and references to its complaint. None of these can raise a genuine issue of fact. Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562-63 (Fed. Cir. 1987) ("The non-movant may not rest on its conclusory pleadings . . . ."); see also Cornejo-Ortega v. United States, 61 Fed. Cl. 371, 375 n.2 (2004) (Allegra, J.) (concluding discovery "unwarranted" where "discovery almost assuredly would present no opportunity for plaintiff to prevail" and because RCFC 56(f) "applies only if the requesting party's affidavits demonstrate that he is unable to justify his opposition without discovery" (emphasis added)).

Finally, RCFC 56(e) all but compels judgment for defendant. That Rule provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for

> trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

RCFC 56(e) (emphasis added). "In other words, in the oft-repeated adage, when the moving party has met its initial burden under Rule 56, the nonmoving party must meet proof with proof, and if the nonmoving party fails to do so, summary judgment, if appropriate, must be entered." Hopkins v. Arkansas. 2007 WL 2996842, *2 (E.D. Ark. 2007) (emphasis added) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587(1986)); see also Brubaker, 304 F.3d at 1361 (affirming summary judgment for the United States and explaining that appellants "failed to avail themselves of the protection of [RCFC 56(f)] by not filing an affidavit"); Blue Legs v. U.S. Bureau of Indian Affairs, 2007 WL 1815994 (D.S.D. 2007) (slip op.) (denying a Rule 56(f) request where the party "did not file an affidavit setting forth specific facts that further discovery would reveal").

**B. The United States is Entitled to Summary Judgment Because No HUD Official With Actual Authority Contracted With Lublin**

Even if Lublin properly had filed a RCFC 56(f) affidavit, discovery is not necessary in this case because there can be no genuine issue of fact as to Mr. N. Daniel Rogers' or Mr. Engram Lloyd's lack of authority to enter into the alleged contract with Lublin. In that regard, Lublin does not dispute that it has the burden to "show that the government agent whose conduct was relied upon had actual authority to bind the government in contract." Doe v. United States, 48 Fed. Cl. 495, 501 (2000) (citing City of El-Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990)). Indeed, the Supreme Court has made clear that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority" even if "the agent

himself may have been unaware of the limitations upon his authority." Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947).

In this case, as demonstrated in our motion for summary judgment and its accompanying affidavits, Lublin cannot show the requisite authority on the part of Mr. Rogers or Mr. Lloyd. In particular, the declarations of Mr. Rogers , Mr. Lloyd, and Mr. Joseph Neurauter – the Chief Procurement Officer of HUD – all confirm that neither Mr. Rogers nor Mr. Lloyd possessed any contracting authority of any kind.[6]

The facts are clear. Mr. Rogers and Mr. Lloyd, as a matter of fact and law, cannot bind the Government in contract. Plaintiff has not shown – beyond mere hopeful speculation – how discovery could refute the underlying fact that Lublin did not contract with any HUD official with actual contracting authority, and it is not necessary, and would be wasteful, to allow Lublin to tie up the resources of the Government and this Court in a vane attempt to dispute that fact.

### C. The Doctrines Of "Implied Actual Authority" And "Ratification" Cannot Save Plaintiff from the Government's Summary Judgment Motion

Although Lublin relies on H. Landau & Co. v. United States, 886 F.2d 322 (Fed. Cir. 1989), to postulate that Mr. Rogers or Mr. Lloyd might have had "implied actual authority," Lublin stretches the holding of that case beyond its breaking point. In H. Landau, the Federal Circuit held that "implied actual authority . . . will suffice" to "hold the government bound by the acts of its agents." 886 F.2d at 324. In so holding, the Federal Circuit relied on a single Court of

[6] Lublin argues, based on Mr. Neurauter's declaration, that "[a] material issue of fact exists as to whether any [Heads of Contracting Activities] at HUD delegated [contracting] authority to any Deputy Director to make an agreement as alleged . . . ." Pl. Opp. at 17 (citing Def. Mot. at Exhibit A, ¶ 5). There is, however, no such issue of material fact. See Def. Mot. at Exhibit A, ¶ 9; id. at Exhibit B, ¶ 3; id. at Exhibit C, ¶ 3.

Claims case and an excerpt from a government contracts textbook. Id. (quoting Branch Banking & Trust Co. v. United States, 98 F. Supp. 757, 766, 120 Ct. Cl. 72 (1951), and J. Cibinic & R. Nash, Formation of Government Contracts 43 (1982)).

Since the issuance of H. Landau, the aforementioned textbook excerpt has taken on a life of its own, but the holdings of both H. Landau and Branch Banking – necessarily extracted from the facts of the cases – are exceedingly limited.[7] In the former, the court held that actual authority to draw checks on a joint bank account "might carry with it the implied authority to guarantee payment from that account." California Sand & Gravel, Inc. v. United States, 22 Cl. Ct. 19, 27 (1990) (discussing H. Landau), aff'd, 937 F.2d 624 (Fed. Cir. 1991). In Branch Banking, the court merely held that "an officer authorized to make a contract for the United States has the implied authority thereafter to modify the provisions of that contract particularly where it is clearly in the interest of the United States to do so." 98 F. Supp. at 766 (quoted in H. Landau, 886 F.2d at 324).

Thus, in both H. Landau and Branch Banking, the government official possessed some actual authority to contract, but "a person with no actual authority may not gain actual authority through the court-made rule of implied actual authority." 22 Cl. Ct. at 27 ("The court believes that Landau and the theory of implied actual authority is of limited application, and was not

---

[7] Applegate v. United States, 52 Fed. Cl. 751, 758 (2002) (explaining that a case's holding properly is limited to its actual facts considered by the court); Liberty Mut. Ins. Co. v. United States, 70 Fed. Cl. 37, 51 (2006) ("Although Supreme Court dicta are binding on subordinate lower federal courts, the Federal Circuit has cautioned that dicta in its own decisions 'should be read in the light of the court's central holding and the controlling fact in that case.'" (quoting F. Alderete Gen. Contractors, Inc. v. United States, 715 F.2d 1476, 1479 (Fed. Cir. 1983)).

intended to repeal the long established rule that, when dealing with the government, only government agents with actual authority can make a contract, express or implied."); see also Sam Gray Enterprises, Inc. v. United States, 43 Fed. Cl. 596, 603 n.10 (1999) (implied actual authority "doctrine applies only when some contracting authority was actually delegated").

Moreover, as explained above, even if Mr. Rogers or Mr. Lloyd had "implied actual authority" to contract in some general sense related to their QMR duties, the FAR's requirement that contracts be "in writing" precludes those officials from creating the unwritten contract that Lublin alleges was formed in this case. See Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1433 (Fed. Cir. 1998) (holding that "agency procedures must be followed before a binding contract can be formed" and that contracting officer "lacked the authority to enter into the oral contract and it is therefore not binding upon the government"); see also HUDAR 2401.104 (HUD contracting officers bound by the HUDAR and the FAR "except as may be otherwise authorized by law"); New America Shipbuilders, Inc. v. United States, 871 F.2d 1077, 1080 (Fed. Cir. 1989); Night Vision, 68 Fed. Cl. at 387-88 ("[E]ven if plaintiff could produce adequate evidence demonstrating the existence of specific oral promises, such promises would have been ineffectual because applicable agency regulations were not complied with."); Cornejo-Ortega v. United States, 61 Fed. Cl. 371, 374-75 (2004); Sutton, 256 U.S. at 580 ("The limitation upon the authority to impose contract obligations upon the United States is as applicable to contracts by implication as it is to those expressly made.")..

Lublin's assertion that its alleged contract with HUD somehow was institutionally ratified is meritless and untimely. See Pl. Opp. at 18-20 (discussing Silverman v. United States,

679 F.2d 865 (Ct. Cl. 1982), and Janowsky v. United States, 133 F.3d 888 (Fed. Cir. 1998)). "Agreements made by government agents without authority to bind the government may be subsequently ratified by those with authority" but only "if the ratifying officials have actual or constructive knowledge of the unauthorized acts." Harbert/Lummus, 142 F.3d at 1433 (quoting United States v. Beebe, 180 U.S. 343, 354 (1901), for the proposition that "ratification can only be based upon a full knowledge of all the facts upon which the unauthorized action was taken").[8] "Moreover, ratification must be based on a demonstrated acceptance of the contract. Silence in and of itself is not sufficient to establish a demonstrated acceptance of the contract by the [contracting officer]." Id. at 1434 (citations omitted).

Lublin has alleged no facts in its complaint that even suggest that any HUD official with authority ratified Lublin's supposed contract with the agency, nor has Lublin provided any affidavit to substantiate such a claim. At this stage, as explained above, Lublin is required to do more than simply speculate about what discovery might show, and should not be permitted to effectively amend its complaint a second time. See also Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S. Ct. 1955, 1968-70 (2007) ("a wholly conclusory statement of claim" cannot "survive a motion to dismiss" simply "whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery").

In any event, HUDAR 2401.602-3 requires that a request for ratification of "unauthorized

---

[8] Harbert/Lummus notably was decided after Janowsky, upon which plaintiff heavily relies. See also Strickland v. United States, 382 F. Supp. 2d 1334, 1348 (M.D. Fla. 2005) (citing cases and observing that "[s]ince Janowsky, several cases have considered institutional ratification, but that "[i]n all of these cited cases, institutional ratification was rejected").

commitments arising in the field shall be submitted in writing to the Director of the cognizant [field contracting operation]." HUDAR 2401.602-3(b)(1); see also FAR 1.602-3(b)(3) ("in no case shall the authority [to ratify unauthorized commitments] be delegated below the level of chief of the contracting office"). No such ratification request was made in this case. See November 5, 2007 Declarations of Mr. Engram Lloyd and Mr. N. Daniel Rogers (attached hereto as Exhibits A and B).

Moreover, the FAR authorizes ratification "only" if "[t]he resulting contract would otherwise have been proper if made by an appropriate contracting officer." FAR 1.602-3(c)(3) (emphasis added). Because the alleged contract was not in writing, see FAR 2.101, it would not "otherwise have been proper" if made by a contracting officer. Accordingly, Lublin's ratification argument must fail. See Harbert/Lummus, 142 F.3d at 1433 ("[T]he CO's delegation of authority expressly provided that even a ratification by the CO would have to be in writing. In the absence of such a writing, the CO could not have properly demonstrated his acceptance of the contract."); see also FAR 1.602-3(c)(5) (ratification effective only if "[t]he contracting officer recommends payment and legal counsel concurs in the recommendation"). It bears repeating that Lublin has neither alleged, nor provided an affidavit asserting, any facts suggesting that HUD institutionally ratified a contract with Lublin.

## IV. CONCLUSION

For all of the above reasons, we respectfully urge this Court either to dismiss plaintiff Lublin's complaint or to enter judgment in favor of the United States.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division, U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274
Fax: (202) 514-8624

November 13, 2007

Attorneys for Defendant

EXHIBIT A

**DECLARATION OF ENGRAM LLOYD**

I, Engram Lloyd, hereby declare under penalty of perjury as follows:

1. I am the Director of the U.S. Department of Housing and Urban Development's Philadelphia Homeownership Center (HOC). I have been in this position since March 2000. In this position I am primarily responsible for the overall delivery of HUD's single-family housing programs within the Philadelphia HOC geographic area. I have oversight responsibility for the management, administration, and technical direction of the Philadelphia HOC. I supervise a staff of approximately 205 people.

2. At no time during my career at HUD have I ever submitted a request for ratification of an unauthorized commitment to: (1) the HUD Chief Procurement Officer, (2) the HUD Deputy Chief Procurement Officer, (3) any HUD Director of Field Contracting Operations (FCO), (4) any HUD Contracting Officer, or (5) any person with authority to enter into contracts on behalf of HUD.

3. Specifically, at no time did I, or, to the be best of my knowledge, did anyone else at HUD, ever submit to any person with authority to ratify unauthorized commitments on behalf of HUD, pursuant to HUDAR § 2401.602-3, any request for ratification related to the Lublin Corporation and/or Century 21 Advantage Gold.

In accordance with 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing statements are true and correct this 5th day of November, 2007.

Engram A. Lloyd

Engram Lloyd
Director
Philadelphia Homeownership Center
U.S. Department of Housing and
Urban Development

EXHIBIT B

**DECLARATION OF N. DANIEL ROGERS, III**

I, N. Daniel Rogers, III, hereby declare under penalty of perjury as follows:

1. I am the Deputy Director of the U.S. Department of Housing and Urban Development's Atlanta Homeownership Center (HOC). I have been employed by HUD since 1986, and have been in my current position since 1998. In this position I serve as the Deputy to the Director of the Atlanta HOC. As Deputy, I am responsible for the management, administrative, and technical direction of the Atlanta HOC. I supervise a staff of approximately 220 people.

2. At no time during my career at HUD have I ever submitted a request for ratification of an unauthorized commitment to: (1) the HUD Chief Procurement Officer, (2) the HUD Deputy Chief Procurement Officer, (3) any HUD Director of Field Contracting Operations (FCO), (4) any HUD Contracting Officer, or (5) any person with authority to enter into contracts on behalf of HUD.

3. Specifically, at no time did I, or, to the be best of my knowledge, did anyone else at HUD, ever submit to any person with authority to ratify unauthorized commitments on behalf of HUD, pursuant to HUDAR § 2401.602-3, any request for ratification related to the Lublin Corporation and/or Century 21 Advantage Gold.

In accordance with 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing statements are true and correct this 5th day of November, 2007.

N. Daniel Rogers III

N. Daniel Rogers, III
Deputy Director
Atlanta Homeownership Center
U.S. Department of Housing and
Urban Development

CERTIFICATE OF FILING

I hereby certify that, on this 13th day of November 2007, I caused to be filed electronically the foregoing DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR FAILURE TO STATE A CLAIM AND, IN THE ALTERNATIVE, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT with the United States Court of Federal Claims. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON