# UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LUBLIN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 07-206C |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

<u>Live Tape</u>

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on May 20, 2008.)

Pages: 1 through 94

Place: Washington, D.C.

Date: May 13, 2008

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| LUBLIN CORPORATION, Plaintiff, | ) |
| v. | ) Docket No. 07-206C |
| UNITED STATES, Defendant. | ) |

Tuesday,
May 13, 2008

Live Tape

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on May 20, 2008.)

APPEARANCES:

On Behalf of Plaintiff:

WILLIAM F. THOMSON, JR., Esquire
Gilbert & Thomson
952 Trenton Rd.
Fairless Hills, Pennsylvania 19030
(215) 337-3900

On Behalf of Defendant:

MATTHEW SOLOMSON, Esquire
U.S. Department of Justice

P R O C E E D I N G S

(2:05 p.m.)

THE COURT: We are on the record in the matter of Lublin Corporation v. United States, Case No. 07-206C. For Plaintiff, we Mr. William F. Thomson. Good afternoon, sir.

MR. THOMSON: Good afternoon, Your Honor.

THE COURT: All right. And we're using electronic digit recording, and so I'm going to ask you both to one, stay relativel those microphones when you're seated and also stay relatively clos the microphone when you get up to the podium. So Mr. Thomson's la name is T-H-O-M-S-O-N.

I'll also note for the record that if you desire a copy essentially the proceedings today or a transcription, you can actu that one of two ways. You can request a copy of the audio file, w be provided to you on a CD-ROM, or you can ask for an actual transcription to be made based upon that recording. So either one those is a possibility if for some reason you think you need it.

And for Defendant, we have Matthew Solomon from Department of Justice. Good afternoon, Mr. Solomon.

MR. SOLOMSON: Good afternoon, Your Honor.

THE COURT: And I'll just spell your name for the record too, which is S-O-L-O-M-S-O-N.

So it's Defendant's motion to dismiss, and we're going t to it in a moment. What I thought I would do, though, at the outs give you a sense as to what I'm seeing. We're going to start in a while here with Mr. Solomon first, then go to you, Mr. Thomson, an of go back and forth as long as you have something that you all wa say.

Mr. Solomson has several theories that he's arguing in h motion to dismiss, but the two that I think are things that we can today or at least the two that I think are the primary focus today the question of whether or not the Contracts Disputes Act covers t of a contract such that jurisdictional prerequisites to bringing a need to be met. And then the second has to do with the potential application to this case of 31 U.S.C. § 1501. I know there's a co arguments sort of hanging out there, but those really are the two want to focus on.

So let me just give you some preliminary thoughts about those. The Contracts Disputes Act of course defines what types of arrangements are subject to that statute for a variety of purposes purpose that it does so is to help to define this Court's jurisdic of its Contracts Disputes Act jurisdiction. The other thing of co that same provision serves to do is to help define the jurisdictio various Boards of Contract Appeals, which also have jurisdiction t up CDA cases.

In the context of the latter, the Federal Circuit has co the language of 41 U.S.C. § 602(a) on several occasions. And in particular, the focus that they've had is not on the portion of th that talks about goods or services but on what is meant by the ter procurement.

And they've said a couple of things in their cases regar what that terms means, most recently in a case, and let me just pu here, that they decided I think just last year, actually two years <u>Wesleyan Company, Inc. v. Harvey</u>. And that's a case that was construing 602(a) in the context of deciding whether or not the Bo Contract Appeals had jurisdiction over a matter.

In <u>Wesleyan</u>, they focused in on the definition, and they cited some of their earlier cases, so this is not sort of new law. actually a restatement of about three or four at least other Feder opinions in which they've said that procurement for purposes of th statute means "the acquisition by purchase, lease or barter of pro services for the direct benefit or use of the Federal Government", limitations of that definition in many cases deriving from the ref "by purchase, lease or barter" and also by virtue of the reference phrase "direct benefit or use".

And so that language appears not just in this <u>Wesleyan</u> case, again, that's 454 F.3d 1375, it actually originated in a cas <u>New Era Construction v. United States</u>, which is 890 F.2d 1152, a 1

Federal Circuit opinion. And it actually shows up in about two or other Federal Circuit opinions that have essentially restated that definition. I'm not going to go through every single one that doe you were to run that definition, you would see that it pops up in cases. Another one it pops up in is called Bonneville Associates States, 43 F.3d 649, a 1994 opinion.

So one of the questions I guess I have in my mind in deciding whether or not this type of contract that we have here is to the CDA is how it meets or does meet for that matter the defini procurement that's set forth in these cases, which again are const Section 602(a).

So it's not like they're just sort of setting out a defi the word "procurement" for some other purpose. In fact, they're c procurement in the context of the precise provision that's the cor one for deciding whether or not the CDA provisions somehow limit t Court's jurisdiction. The same provision, 602(a), defines essenti is a contract subject to the Contract Disputes Act.

And so, in my mind, it's I guess difficult at this point will be for Mr. Solomson I guess to convince me otherwise, to conc how this involves a situation where there was a purchase, an acqui a barter to use that language from these various cases -- a purcha lease or a barter to be more specific is the language. Does it lo there's a purchase? Certainly it doesn't look like there's a leas

think the term "barter" also doesn't quite at least jump out at me

And in fact, Judge Bruggink in a separate opinion, and I don't think we have to probably get there, has even questioned whe or not the reference to barter in this definition is dicta and in might not even be part of the definition so that, in fact, to have definition in his view, you might just have to show a purchase or

All right? But be that as it may, it seems to me that w going to have to examine here whether or not there was some acquis here by purchase, lease or barter.

And then we get into a question as to what do they mean when they talk about "direct benefit or use of the Federal Governm That language has been focused upon in cases in which the governme essentially acquires some benefit but does so indirectly. In othe the benefit flows to it from some other arrangement it has with a party.

And so I think it's maybe a little bit more problematic terms of trying to decide whether we're dealing with a direct bene use, but that's also part of the calculus here in deciding whether a procurement, and if we have a procurement, then whether or not w then have the Contract Disputes Act being triggered.

There's of course a number of interesting questions associated with whether this is covered by the Contract Disputes A because if it is, well, then there's a whole bunch of other things

would sort of expect to see here which you don't see, all right? you're going to say that a contract is covered by the Contract Dis Act, it seems a little odd that we wouldn't have had some identifi a contracting officer associated with this arrangement, because, otherwise, I'm not sure how one would meet the requirement of the statute that you have to file a claim with the contracting officer know who the contracting officer is.

And in fact, while I haven't done that yet but probably before we get to the point of actually rendering an opinion here, that we're going to find that if you trigger the definition of wha contract for purposes of the Contract Disputes Act, it actually ha number of implications when we look at the FAR, the Federal Acquis Regulations, and we look at other places.

So, in other words, there's sort of corresponding responsibilities and obligations associated with being covered by Contract Disputes Act. It's not just there is a jurisdictional pr There's actually meaningful sort of distinctions that have been ma based upon the administration of the contract associated with qual as a contract for purposes of that statute.

All right? So, to me, there's sort of a practical side because I don't think it makes sense to focus upon this jurisdicti requirement I guess in the abstract without sort of saying, well, this seem to fit the overall purpose of the Contract Disputes Act?

Of course, I'm not the first person to come to that conc because the Pasteur case, which is discussed in your briefs, a Fec Circuit case from 1987, in applying this provision looks at the pu the Contracts Dispute Act and sort of asks the question, are they or not served by treating a particular type of arrangement as one covered by that statute.

And so it seems to me that apart from a plain meaning construction of the term, the focus is on the word "procurement" a have the analysis in Pasteur to deal with as well, which is explai fully apart from sort of looking at this in the abstract as a juri issue this sounds like the type of contract that ought to be subje overall Contracts Disputes Act mechanism. So that's at least some thoughts I have on that issue.

The other thing I wanted to talk about preliminarily bef we hear arguments has to do with this other provision, 31 U.S.C. § There are probably very few Federal Judges who spent a substantial portion of their time doing budget work before they came to the be however, am somebody who spent substantial time doing budget work the Department of Justice before I came here, and there are terms in this statute which actually had meaning to me based upon that experience, one of which is the term "obligation", okay?

Obligation is actually in Title 31 a technical term of a talking about essentially setting up a debt on the books to be ass

with a particular budget so that that budget can be allocated to t obligation for purposes of budgeting. It doesn't generally I thin sort of obligation in the sense of any obligation, but it's talkin about a term of art and that term of art being one that deals with government budget accounting.

And so one of the questions I have about this Title 31 provision, recognizing that there's surprisingly little law out th about this provision apart from the D.C. Circuit case that you bot discussed and maybe a case here that sort of glancingly deals with thing, but it seems to me that one of the questions is when it's t about obligation here, is it really just talking about that techni of a matching of a debt to a specific budget authority, or does it mean obligation in the broader legal sense.

One indication in my mind that it doesn't mean it in the broader legal sense is the fact that both the Contracts Dispute Ac as this Court's Tucker Act statute, 1491, talk about both Courts h jurisdiction, our Court having jurisdiction and the Board of Contr Appeals having jurisdiction, over implied contracts, all right?

By definition, okay, an implied contract can be one that not have a written agreement, okay? One reason it doesn't is that always it deals with a situation in which acceptance occurs by vir performance. So, even if you had a writing that evidenced the aut those situations, you almost never have any writing that evidences

acceptance because the acceptance is done by performance.

All right? And in fact, if you take a look at some auth construing this 31 U.S.C. § 1501, and there's actually Comptroller General opinions out there that deal with it, you'll see that they about a wide range of documents that can evidence the type of obli that's being referred to in the statute. So they're not talking a you have to have "a writing in the sense of a formal contract".

In fact, if you take a look at some of these Comptroller General opinions, you'll see that they're talking about having wri in some form. It doesn't even have to be the contract. There mig other things that essentially identify the debt in such a fashion it to be matched up with budget authority.

So, in many ways, I'm not sure that the way that writing used even in the context of this particular statute is necessarily refer to as a fully incorporated contract, but instead they're tal documented evidence of a binding agreement, okay? And that doesn' necessarily mean that it has to be the binding agreement in the ty sense of an integrated written contract.

But be that as it may, the problem with construing this statute as requiring as a matter of any enforcement an integrated is the fact that there's a whole bunch of things that we have juri over here that don't seem to meet that definition.

And so I don't know how that can be construed in that

fashion and have 1491 be construed the way that it's been construe terms of authorizing certain forms of implied contracts, nor do I you could have this statute mean what it means and have Section 60 the same one that we talked about in the context of the other one, about implied agreements.

Those have always been viewed as implied in fact agreements rather than ones implied in law. But implied in fact agreements by definition are not witnessed by integrated written agreements. If they were, then they would be express contracts.

So the one case that talks about the statute sort of dar around this point, because it sort of says on the one hand, gee, w this statute means that you can't have oral contracts. On the oth we recognize that that would create a problem for implied in fact contracts. Definitely we don't think that it means that. And it' well, I don't really know aside from convenience how you get to th distinction. So it seems to me in for a dime, in for a dollar.

So either this statute is construed as requiring a writt contract, in which case I think it blows out all those other requi it's not. But I don't think that you can somehow say, well, it re written contract unless you have an implied in fact contract, and don't see how you can reconcile that. It just seems to me that in the analysis in the one opinion that does that is basically bootst So I don't find it very persuasive at all.

All right? So now that said, I'm a little surprised by that there are not more cases dealing with the question squarely c whether or not you can have an oral contract that's enforceable ei under the CDA or under 1491.

There are of course a number of cases, and I can tell yo this because I went to look, in which oral contracts appear to get hurdle and then we get into other questions involving whether or n they're breached, whether or not there's damages owed, all right, like.

Now you can say, and I think it's fair to say, that thos don't take a position one way or the other as to whether or not yo going to have an oral contract. On the other hand, it does strike bit odd that you could have a dozen or more opinions that I found looking quickly that involve oral contracts and nobody thought tha was a slam dunk point that basically said, oral contract, automati the door, don't have to deal with anything else.

Because, of course, that would have been the easiest way to resolve all those cases, all right, because if oral contracts a period, well, then you don't have to get into questions as to whet were breached or not or as to whether or not there was authority o as to whether or not the damages were "x" versus "y". You simply I've got an oral contract, end of discussion. It's not cognizable this statute.

All right? But I will grant the fact that there is not there on that, and it seems to me that one of the tasks here is go to put this statute in some context. For me, that might mean also look at the legislative history, because this statute dates back i 1950s and, in fact, there is legislative history that talks about some point, it seems like it might make sense to see what the Cong thought they were doing when they passed this statute.

All right. So that's pretty much what I want to say out outset, and that's probably a mouthful. But I do that to help gui and particularly you, Mr. Solomson, in terms of the points that yo address when you get up there.

Now let me actually tell you just a little bit about the that we're not talking about today. I take Rule 12 very seriously basically says what is or is not within the realm of something tha properly a motion to dismiss, all right?

And in my view, if you have to start looking outside the complaint, that means that you've now passed the realm of Rule 12 unless we're dealing with purely jurisdictional facts, you know, w not a claim was filed, for example, would be appropriate in this c this was a CDA case to look at because you can look at jurisdictio facts.

But in my view, questions involving authority really go to maybe allegations that are in the complaint, and the actual tes

whether or not there was authority, the actual testing of who the agreement was with, whether or not it was ratified by somebody or like in my view implicate discovery and are the types of questions should be raised up after discovery in this case.

So, if we get to that point where those arguments are th I'm not suggesting that they're not bona fide. I am suggesting th probably what I'm going to do is to hold those arguments until dis occurs in this case and have them be examined at that point just s know why we're not talking about those other issues today.

All right. So any questions about how we're going to proceed? So not merits but just procedurally, any questions, Mr. Thomson?

MR. THOMSON: No, Your Honor.

THE COURT: Mr. Solomson?

MR. SOLOMSON: No, Your Honor.

THE COURT: All right then, Mr. Solomson, why don't you go ahead and take the podium and let's start talking about some of issues. Why don't we start talking first about the questions invo CDA.

MR. SOLOMSON: May it please the Court. I would like to pick up with something the Court indicated about whether the Tucke since it mentions implied contracts would sort of suggest that the exist some type of implied contract over which the Court has juris

and that usually those are going to not have a writing.

THE COURT: Well, they might have some writing, but they're not going to be integrated written agreements, because if were, they wouldn't be implied agreements; they'd be express, whic the other word that's in the statute.

MR. SOLOMSON: And on that note, though, in 602(a), the CDA indicates that the chapter applies to any express or implied c and then lists the number of types of procurement that can occur. there are two ways to look at it. If we were to determine or if t were to determine or inclined to determine that procurement would necessarily include acquisition with appropriated funds and those of --

THE COURT: Well, I don't know about the appropriated funds part, but, I mean, it seems to me I'm faced up with the fact have not one or two, and I haven't done an absolute on those count more like three or four Federal Circuit opinions that have defined "procurement" in the context of this statute, 602(a), as meaning something that involves purchase, lease, barter, all right? And s question here preliminarily I think is, was there a purchase, leas here?

MR. SOLOMSON: But one could not have a purchase under that theory without appropriated funds. So the government's though, is that implied contract in the CDA wouldn't make any sens

you had to use appropriated funds because there would never be a circumstance in which you have an implied contract.

THE COURT: Well, I don't have any reason to know that the word purchase requires obligation of appropriated funds. I me moreover, agencies have in some situations very broad procurement authority, all right? So it's not like every single purchase of s to be associated with an obligation that goes on the books in a pa fashion. Some agencies have the ability to spend money under gene authority.

So I don't know anything about the word purchase and I'm not actually sure where you're heading, because you're saying it i subject to the CDA. So it seems to me that then you'd have to sho that it's either a purchase, a lease or a barter. So you're givin reason why it's not a purchase, but what's the reason why it is a here then?

MR. SOLOMSON: No, Your Honor, I think the argument is that the implied contract in the CDA wouldn't make any sense if it limited to purchases.

THE COURT: I've got four Federal Circuit opinions that define procurement in that fashion, and so I can tell you that whe think it makes a lot of sense or not, it's going to have to be a p lease or a barter to meet the definition of procurement. If it's procurement, then we don't even get it, because procurement is par

that definition, correct?

MR. SOLOMSON: I concur.

THE COURT: It has to be a procurement to meet the 602(a) definition, correct?

MR. SOLOMSON: Correct.

THE COURT: All right. So I can't weave my way around the Federal Circuit opinion. How is it that that definition is me

MR. SOLOMSON: Well, I confess that out of all those cases, I saw only Wesleyan, and if I recall, it was the facts in t were dealing with purchase orders. So it makes sense that the Fed Circuit used the word purchase. I don't know that they were neces making a --

THE COURT: Well, they're picking up a definition that comes from the Board of Contract Appeals, and in that case, in fac they're citing a prior case in which they used that definition. S certainly isn't sort of itself defining it. It's referring to and other case is one of three or four that refers to a BCA opinion th procurement for purposes of whether or not that Court has jurisdic over a particular category of contract.

MR. SOLOMSON: Well, if procurement in fact meant purchase, I don't know how else we would define purchase except wi appropriated funds.

THE COURT: But that didn't happen here, right?

MR. SOLOMSON: That did not happen here.

THE COURT: All right.

MR. SOLOMSON: If the Court were to construe or is committed to construing that phrase, then in fact the CDA would no apply.

THE COURT: Well, the problem I have is I'm not sure I have a lot of flexibility on that point, because Wesleyan is defin word "procurement" for purposes of Section 602(a), okay? Let's wo way back through these cases here just so we understand the full s breadth of authority that we're talking about here.

So Wesleyan is citing, hold on here -- so we're looking page, I'm sure you're looking on the same place as me, on page 137 the opinion, right? It says there, "We begin our analysis with th language of the statute," and so it says in citing to the Pasteur "Pursuant to the CDA, the Board," okay, so it's referring to the B Contract Appeals, "has subject matter jurisdiction over any expres implied contract entered into by an executive agency for (1) the procurement of property other than real property and being," okay?

All right? And then it says procurement is "the acquisi by purchase, lease or barter of property or services for the direc or use of the Federal Government." And it's quoting from the New Construction case, all right, which is a 1989 case. So, if you lo you'll see that.

Now, if we go to New Era, we'll see that there it says o page 1157, it goes through the same analysis. So it says, "Sectio of the Contract Disputes Act, 481 U.S.C. § 602(a), makes the act applicable to any express or implied contract entered into by the executive agency for", and this one now is using the third definit procurement of construction of real property."

And then it says, "The procurement that this provision covers is a procurement by an executive agency as the Board has stated." So now it's picking up the Board's definition of procure stated. "The acquisition by purchase, lease or barter of property services for the direct benefit or use of the Federal Government characterizes a Federal procurement." That's the quote it picks u the Board, all right? So I'm up to two cases now construing 602(a

But there in fact are two or three other ones that use t same language. Is there any definition of contract that you're re that doesn't rely on the word "procurement"?

MR. SOLOMSON: No, I mean, I just don't know where any of those lines get us, because that would just turn procurement in meaning purchase, and then --

THE COURT: Well, no, excuse me, purchase, lease or barter.

MR. SOLOMSON: So, in this case then, our position would be that we purchased the information and management assistance

services from Plaintiff by the promise of confidentiality. I mean see any reason why purchase would be limited to just money, which would get us back to the other --

THE COURT: Well, it might not be limited to money, but presumably it might be limited to money and something else that ha essentially property value.

MR. SOLOMSON: But that would then get into the sort of analysis in the other Board cases that the government cited in its supplemental notice yesterday wherein the government did not actua give anything tangible.

THE COURT: I mean, the other problem I have with the argument is it seems to be limitless. If you go there and you bas purchase is anything that has value, tangible, intangible, you kno security value, value that doesn't necessarily have to correspond monetary value or money worth, then pretty much everything is cove by the CDA.

MR. SOLOMSON: I agree.

THE COURT: Which means that every contract we have in this Court that we've dealt with under 1491 as a non-CDA contract probably is a CDA contract.

MR. SOLOMSON: No, the Winstar cases, for example, would not be CDA contracts because they were not purchases of serv but for regulatory treatment, certain regulatory treatment.

THE COURT: It depends on how you define the word "services." You've argued for the term "services" to be construed If services here is the provision of information, why wouldn't ser there be, for example, the willingness to acquire a failing bank? I'm going to take the word "services" out that broadly, in other w anything that sort of turns into some performance, that means serv okay, that's everything.

MR. SOLOMSON: But we're now going to shift the discussion away from the word "procurement" to the word "services' just proposed one instance in which it would not cover, but based word "services" --

THE COURT: The fact of the matter is you don't know tha there's any cases that define purchase as broadly as you're sugges other words, that it doesn't have to be an exchange of something f something of monetary value.

MR. SOLOMSON: Correct. But there are recent cases that have adopted broader definitions of the word "procurement" that ar necessarily mutually exclusive with the word purchase.

THE COURT: Well, but the ones in the contest of this statute? I mean, I know I could go to *Webster's* and find a defini procurement, all right, and I did and it's a pretty broad definiti But I've got four cases that are construing the section you're inv right, defining the word "procurement" for that purpose and in fac

even different clauses in your definition.

So I just don't see how I could just sort of say, well, for that definition, let me go to *Webster's*. It just talks about period.

MR. SOLOMSON: That is the method that Flying Horse used in a 2001 case in this Court.

THE COURT: Right. And that's Judge Gibson, correct?

MR. SOLOMSON: Correct.

THE COURT: All right. Who apparently didn't find any c these cases, did he?

MR. SOLOMSON: No. No, none of those are discussed, but I'm not sure that the dictionary definition is somehow precluc word purchase. I just don't know that in those other cases, and I that I have not taken a detailed look other than that I briefly re Wesleyan --

THE COURT: He's construing 602(a), isn't he, in Flying Horse, right?

MR. SOLOMSON: Yes.

THE COURT: All right. And so, I mean, it's nice that h wants to pull out *Webster's*, but he's got binding Circuit preceder he's not paying any attention to.

MR. SOLOMSON: That he's not addressing, but I'm not sure that it's inconsistent with it.

THE COURT: Well, to the extent that it's not focusing o that definition, it's not like he's focusing on the same basic lar the definition and just happens to use a broad definition of the w purchase for example. That's not what he's doing.

I mean, he goes to *Webster's* and says, procure simply means to obtain or acquire. That's what he says, to obtain or acq right? So he's not looking at the same concept at all as the defi the Federal Circuit has mapped out. He's using an entirely differ definition, one which is so generic that seemingly it would sweep everything: to obtain.

MR. SOLOMSON: But purchase still, I mean, all it does f the way we would define it, it does not preclude --

THE COURT: If you haven't looked at it before today, ho do you know how you define the word purchase? I mean, did you act look at the word purchase and see whether not there's been constru of the term someplace in a case that's consistent with what you're me?

MR. SOLOMSON: No, Your Honor, but in Institut Pasteur -

THE COURT: Right.

MR. SOLOMSON: -- the Federal Circuit briefly touched on whether there was a necessity of being a buyer or seller relations noted the Claims Court position in that case that there was no nee cash payment and went on to say that it was donated in that case.

THE COURT: They also of course looked at the purpose of the procurement statute. Are you going to suggest somehow that th purposes are somehow served by treating this as a contract subject CDA?

MR. SOLOMSON: No. I would just suggest, though, that i Institut Pasteur, that's not ultimately what they relied on to dec case.

THE COURT: Who's the contracting officer in this contra

MR. SOLOMSON: I assume it would -- well, that gets us into the notion of the authority issue that --

THE COURT: Well, no, I'm just saying if it's a Contact Disputes Act contract, all right, so basically you're saying that why there is nobody is because fundamentally the agency still does believe it has a contract.

MR. SOLOMSON: Correct.

THE COURT: Okay. All right, but in reality, there woul nobody for this person to defend a claim two. I mean, the letter debating about whether it's a claim or not is actually just sent t agency essentially. It's not sent to anybody who is denominated a contracting officer for purposes of this claim, correct?

MR. SOLOMSON: Or the individual who the Plaintiff believes was authorized to and in fact did enter into a contract.

THE COURT: All right. But you know, as I know you know

that the term "contracting officer" is a term of art. It's just r we decide has the authority to enforce a contract. There's a sort specific set of provisions that talk about the appointment of that and what you got to say when you do it and what their authority is what it isn't. In reality, we don't have any of that here.

MR. SOLOMSON: Correct. and I believe had Plaintiff submitted a letter or a claim that met the tests of the CDA, the C would not find the government arguing that Plaintiff failed to sub proper contracting officer if it were sent to the person.

THE COURT: Well, I don't know what you would argue, but quite frankly, I don't know how you'd come to the conclusion. I'm assuming that in a real CDA case, if someone sent the letter to th agency in general and didn't send it to the contracting officer th probably would be grounds for concluding that you didn't file a cl the contracting officer.

All right? So it's the fact that this is something that quite fit the CDA rubric that maybe would lead you to sort of be a more lenient in terms of your definition as to who it's got to go

MR. SOLOMSON: But then we're back to the issue of the fact that the CDA in 602(a) does make itself applicable to implied contracts, which in a classic sense with the contracting officer u FAR would never be oral.

THE COURT: Sure they would. I mean, I could say to the person, if you do "x", I will pay you $200,000, and then they go p

MR. SOLOMSON: Except that the FAR would restrict the authority of that contracting officer to do anything that's not in he would have no authority to enter into an oral contract under th so there would no way to have a contract --

THE COURT: But the FAR only applies to certain types of contracts. Otherwise, you would never have an implied in fact con

Give me an example of an implied in fact contract that somehow is subsumed within these definitions, because the hurdles you're posing I think basically get to the point where I can't con how one could have an implied in fact contract. Give me an exampl one that is bona fide.

MR. SOLOMSON: The way we were thinking about this case is that where someone alleges an implied in fact contract for procurement of goods or services, then it is covered by the CDA an they're required to submit a claim to the contracting officer.

THE COURT: Well, that's not what I asked you. I said g me an example of something that's an implied in fact contract that all the requirements you're mapping out have to occur.

MR. SOLOMSON: Well, under the definition of purchase that the Court has set out, with that understanding, I cannot conc one.

THE COURT: Sure you can. I mean, what if an agency says to somebody, if you do "x", I'll pay you $200,000, and puts t

written offer and it's accepted by performance? There would be a there. There would be cash involved there. Why would that not be purchase?

MR. SOLOMSON: Oh, in that case, there would be an implied contract. Well, it wouldn't be implied. It would be an a

THE COURT: No, it's accepted by performance. Therefore it's an implied in fact contract. That's the classic example of a fact contract is one which is accepted by performance.

There is no written acceptance, okay? It's accepted because the person takes the offer and then performs and the performance is viewed as the acceptance. That's sort of the arche version of an implied in fact contract at least within this Court' jurisdiction, okay? It just is.

All right. Moreover, in those situations, it's not alwa case at least in the cases I've seen that you specify up front exa much you're going to pay the person. You sometimes indicate that, know, if you do "x", then we will compensate you for that, all rig the person accepts the offer by performance and then they figure o much money they owe the person.

All right? So I'm looking for an example of an implied contract that would weave around all the requirements you're talki about, because if I'm hearing you, you're saying it has to be in w Well, by definition, it's not. It's not. Part of it might be. I

looked in our jurisprudence, we would actually find examples of or in fact that are accepted by performance, and as long as the perso making the oral offer is authorized, that's been viewed as okay to

MR. SOLOMSON: I think the recent jurisprudence from the Federal Circuit says that that's not the case.

THE COURT: There's actually a case that says you have t have these things all in writing.

MR. SOLOMSON: That would be Harvard Lummis (ph), that there's just no authority to enter into contracts or to make modifications unless they're in writing, and that's the definitio in --

THE COURT: Well, that depends, doesn't it, upon whether or not the procurement is subject to the FAR to begin with, and so types of contracts are not subject to the FAR. That's the whole p

MR. SOLOMSON: But if it was an acquisition --

THE COURT: Well, yes, but that's the whole point. You can't say that, and I haven't looked at this, but I suspect that w the definition of what's subject to the FAR, okay, has a limitatio too.

Not every single contractual arrangement that the Federa Government enters into is subject to the FAR. You know for a fact that's not the case, because the Winstar-type cases that you're ta

about are contracts, all right, but they're not subject to the FAR

So we know there's whole classes of contracts recognizab as contracts, enforceable as contracts, okay, that are not only ou CDA regime, they're also outside the FAR regime, all right?

All right. So, for that to be the case, the FAR can't b omnipresent, okay? It can't be all- inclusive. All right? So th the FAR might require that contracts subject to the FAR be in writ doesn't mean that all contracts have to be in writing.

MR. SOLOMSON: Correct. And I believe in fact that the FAR itself has these limitations of procurement and acquisition in

THE COURT: It wouldn't shock me to find out that lo and behold, the CDA and the FAR are looking pretty much at the same classes of contracts. But then, if you say that it's not subject I'm not sure that it tells me very much to say that if it is subje FAR, it has to be in writing, because the answer may be what's not subject to the FAR.

MR. SOLOMSON: I'm not willing to agree to that here, bu that may be the case. That may be the case that they're coterminc

THE COURT: All right. So, when the Federal Circuit is construing the FAR and says in that context it has to be in writin not saying that all contracts, all contracts have to be in writing subject to the FAR to begin with, correct?

MR. SOLOMSON: Well, of course, because they're

interpreting the application of the FAR provision.

THE COURT: All right. So until we decide, though, whet or not the contract we have is subject to the FAR, then we don't k whether the writing requirement that's in the FAR is going to be c or not.

So you can't say based upon that opinion that all contra have to be in writing or that the offer in all contracts have to b because one of the questions is, is it subject to the FAR or is it not, then you're going to have to point to something else that wou require writing, not the FAR.

MR. SOLOMSON: But getting back to the definition of implied contract in 602(a) --

THE COURT: Right.

MR. SOLOMSON: -- I mean, my understanding, for example, of acceptance by performance is classically in the purcha order context where you issue a purchase order.

THE COURT: Well, that may be, but the whole point is purchase I still think is talking about some form of compensation in exchange for the acquisition of the goods or services, all righ haven't seen a case I guess that you've cited that would suggest t mean, we haven't even focused on the definition until today, all r

So I don't see anything here that tells me that purchase be construed so broadly as to basically pick up everything, becaus

much here the only "consideration" that's flowing from the governm
Lublin is the alleged promise that we will not tell your prime con
you provided us the information. Any other consideration flowing
government down to Lublin here?

MR. SOLOMSON: Not as alleged, no.

THE COURT: All right. So basically whether it's a cont
or not may be subject to debate. But at least the alleged contrac
takes the form of, you give us information in exchange for a promi
we won't tell your prime contractor what you told us or that you t
all right?

MR. SOLOMSON: Right.

THE COURT: All right. So the only consideration that
passes here in exchange for the information is that promise.

MR. SOLOMSON: Correct.

THE COURT: All right. So then I guess I don't see how
looks like a purchase to me.

MR. SOLOMSON: But then the Court would be saying that
purchases are limited to --

THE COURT: No, because I can think of a lot of situatio
in which implied in fact contracts occur in which something other
a nice promise is the consideration. In some cases, it's cash. I
that's a fairly typical one. So you do the service and I now pay
service, all right, hard dollars, okay, implied in fact contract.

okay?

All right? So those are implied fact contracts. They definitely would meet the definition of purchase. Cash flows in t transactions, you do the service by accepting the offer. We give money. In fact, in some cases, the offer might be one that basica to the person orally -- and we realize it doesn't have to be a ger It might be an offer to a particular person. You do "x" and we'll compensate you for it, okay? And they go do "x" and get money for it. Sounds like a purchase to me, and it would qual implied in fact contract.

MR. SOLOMSON: But that would be it would be the promise of cash.

THE COURT: Well, that would be, but you're trying to ar to me that if I define purchase as requiring some form of cash or equivalent to be transferred that I would blow out the entire defi implied in fact contract. I don't see that.

MR. SOLOMSON: But then the Court would be saying that those two ASPCA cases that we cited yesterday are erroneous.

THE COURT: If they don't follow the Federal Circuit's definition of what is a procurement, I don't care whether they're wrong because I'm stuck with the Federal Circuit's definition.

MR. SOLOMSON: Unless we can read purchase to mean --

THE COURT: But that's not what they do, is it? Do they apply a definition like the one of procurement that we're talking and apply portions of it broadly to conclude that in those cases w talking about a contract subject to the CDA? They don't do that,

MR. SOLOMSON: The Federal Circuit cases?

THE COURT: No, the two BCA cases or Board cases that you're talking about, that you cited in your supplemental?

MR. SOLOMSON: No, cash is not the only --

THE COURT: Well, that may be, but they're talking about some form of hard consideration, aren't they?

MR. SOLOMSON: Well, one was the opportunity for a bagger to perform bagging services. That's to me a fine line betw there and saying we'll give Plaintiffs the opportunity to come in information in exchange for our commitment to pay if we breach and promise of confidentiality.

I mean, in some sense, there is a promise of payment to Plaintiffs here. It's just conditional. You don't get paid unles the promise of confidentiality. But that has value.

THE COURT: Right. But that case, so Hernandez, does basically what Judge Gibson did, applies a dictionary definition o word "procurement", I'm looking right at your supplemental brief, means to get possession of, obtain or acquire. That's all it does

MR. SOLOMSON: Right.

THE COURT: All right. And I have Federal Circuit opini now that seemingly say, no, that word procurement is a term of art it's used in the context of CDA, because there's no way to -- I me these cases are actually based in some cases upon particular words that definition, the Federal Circuit's definition, that are not fo *Webster* definition.

So, for example, one of the Federal Circuit cases goes o on whether it's direct or not, all right? Well, there's nothing i definition that's direct or not. So obviously the Federal Circuit this just in dicta. They're actually applying that definition and what is a contract or not a contract within the meaning of the CDA

So I don't see how I can take a dictionary definition th doesn't even have in it the prongs that the Federal Circuit is act applying in deciding cases and say that they are the equivalent. obviously not the equivalent.

MR. SOLOMSON: But here we have a direct benefit to the government, and in the end --

THE COURT: You're missing my point. My point is let's operate on the assumption I'm bound by the Federal Circuit opinion anything that doesn't apply to that definition I'm going to say is right? So that's a safe assumption, okay?

So purchase, you're saying, doesn't require any form of money or money equivalent, i.e., property would be an example.

MR. SOLOMSON: Correct.

THE COURT: All right. It can include anything. Is tha
what you're saying?

MR. SOLOMSON: Anything of value.

THE COURT: Anything of value.

MR. SOLOMSON: Correct.

THE COURT: Even intrinsic value. So, for example, you can't take a promise not to reveal the source of information and g exchange someplace and convert it into a monetary equivalent. So, definition, your definition of that which could be considered some that's exchanged for the goods or services here will be something does not have monetary value, correct?

MR. SOLOMSON: I guess the promise of confidentiality and whether it has value depends upon the context.

THE COURT: Well, any type of promise could have importance or value, but it doesn't mean it's a money equivalent. words, it does not have to have a value, in other words, a fair ma value. It doesn't have to have that. It's anything that has valu of broadest sense of the word value.

MR. SOLOMSON: That is the government's position. That is correct.

THE COURT: Okay.

MR. SOLOMSON: Otherwise, in fact, there would be no

contract. If it had no value at all, and not just in the Federal

THE COURT: Right.

MR. SOLOMSON: -- there would be no consideration.

THE COURT: Right, but you haven't looked anywhere to decide. The definition is something that we're talking about toda mean, nothing in your supplemental brief is talking about these ca correct?

MR. SOLOMSON: Correct.

THE COURT: All right. So how do you know this aside from the fact that at least it's the conclusion that you want?

MR. SOLOMSON: And the other authorities that suggest that that definition --

THE COURT: They're applying, but they're applying a totally different definition.

MR. SOLOMSON: I don't know. It seems to be subsumed in the end as to whether we have a definition of purchase that is cash or cash equivalence.

THE COURT: It doesn't even say that in these dictionary definitions. It says, "to get possession of, obtain or acquire." says, and that's what the Board opinion that you cite in here, <u>Her</u> says. That's what Judge Gibson, I think he might even be citing same dictionary, says in the other case. There's nothing there th about in exchange for what. It just says, "to get possession of,

acquire." I'm looking right at your brief.

MR. SOLOMSON: Right.

THE COURT: All right. and if I went back to his opinio pretty sure that that's the definition he's applying too.

MR. SOLOMSON: I'm just saying the alternative reading that the Court is proposing within the Federal Circuit opinion see then that purchase would have to be limited to something that coul converted into cash.

THE COURT: Well, or has some sort of cash equivalent, yes, I guess that would be my definition until I see something tha otherwise.

All right. But your definition of purchase I think basi doesn't conform. I mean, I'm not sure what you're basing it upon I don't think you focused on the word purchase until you were here

MR. SOLOMSON: That's correct.

THE COURT: All right. So I'm not sure based upon what research you're making this argument. It just seems to me that yo making an argument based upon a construction of the word purchase based upon what? We don't even have a definition of purchase. I we haven't even looked to see whether or not if we went to *Webster* what it would say about the word purchase.

MR. SOLOMSON: But if purchase were so narrow, then some of these other Federal Circuit cases it seems would have gone

that way too. I mean, in Pasteur, there was no allegation that mo in play. It was a promise to not use something without permissior the Federal Circuit in Pasteur doesn't say, well, there's no purch get out of Dodge.

THE COURT: Well, but Pasteur concludes, does it not, th that agreement is not subject to the CDA?

MR. SOLOMSON: Right, but for different reasons.

THE COURT: All right, so they didn't happen upon this c they had three others. By the way, here's *Webster's* I hate to tel This is the definition of purchase: "To acquire by the payment of or its equivalent." That's what it says, okay? Actually that's dictionary.com, okay?

All right. So it's not even saying what you're saying. went and looked in the dictionary for the word purchase, lo and be find payment of money or its equivalent. so I guess "purchase" is of art then, or do I use the dictionary definition for that term? dictionary definition says "money or its equivalent".

MR. SOLOMSON: Without having done extensive research on the meaning of the word purchase, I can't say except that it se me that it would be a very narrow reading of the CDA's coverage.

THE COURT: Well, maybe that's intended. I mean, you see, one of the problems I'm having with your whole argument is I that if you said to me step back from the statute, and this is sor

to Pasteur, what type of things is this thing talking about, okay? talking about typical procurements of goods and services. I'm buy pencils, okay? I'm buying grass-cutting services, okay? I don't has this type of contract at all in mind, and the only time these seem to come up is when you all want to invoke the claim requireme

In fact, there are other situations in which I could ima would not be to the government's advantage to argue that something contract within the meaning of the CDA. So I don't know, prejudgm interest might be an example, all right.

And I wouldn't be surprised if I went to go find, to loo cases where it was disadvantageous, that a narrow construction was placed on the same definition of the term "contract".

So it just seems to me that the problem that I'm having I've got a Federal Circuit definition. It doesn't look like it fi and, in fact, you know, now I can take a look and see that the wor purchase doesn't seem to fit the situation. Certainly it's not a and I don't think it's a barter, all right? And so let's get this purchase means to acquire something in exchange for money or its equivalent, this is not a purchase, correct, if it means that?

MR. SOLOMSON: Yes, that would be correct.

THE COURT: All right.

MR. SOLOMSON: Maybe it's also a barter. I don't know what a barter is. I mean, maybe there's a whole host of reasons w

Plaintiff wanted to, as if the allegations were taken as true, gav information to the agency for the agency's benefit.

For instance, part of their allegation is that they were guaranteed the continued business from the government in relation prime contractor. You know, maybe their interest was in getting t promise that their business would continue and that the confidenti breach, there would be no breach of confidentiality, and if there would get money. Maybe that's the type of an exchange that is a b of promises. I don't know. I admittedly don't know.

THE COURT: The problem I'm having is if I adopt your definition, I think it sweeps up everything. It sweeps up every i contract that we have here, doesn't it?

MR. SOLOMSON: Well, I would argue that the informant contracts the Federal Circuit has said are limited to sort of the context.

THE COURT: Well, that may be, and some of them might not be viewed as contracts which are enforceable at all. But in s situations, they've been held to be contracts in which you can hav information passed, all right, and they'd be subsumed here, would not? I mean, it just seems even the Winstar cases I think are sub by your definition, because if I take a broad definition of the wo "service", doing something that's beneficial to the government, ok say, gee, what happened in those cases, it's like, okay, well, wha

essence of the contracts in those cases? The essence of the contr those cases is you acquire this savings and loan or do something e that causes it not to go under and we will afford you a variety of among which is beneficial accounting treatment, okay?

That seems to meet your definition. Yet I don't think t any cases out there that say that those contracts were subject to type requirements or that people then filed claims, for example, t should be out of Court.

The HUD cases that we have here, the Farmers Home Administration cases that we have here all involve situations in w person who is providing housing, for example, is providing a servi okay? Depending on how you want to view it, it directly benefits government because it's providing that which the government wants. providing rural housing. It's providing housing to low income inc

Certain things are received in exchange for that: subsi low interest mortgage arrangements. Why wouldn't those be all purchases? It sounds like they're all purchases.

MR. SOLOMSON: Well, I don't know about the HUD agreements, but I would say that the Winstar cases are distinguish because those are regulatory treatment and not services.

THE COURT: Why would that make any difference?

MR. SOLOMSON: It's one chose a broad enough definition of services that --

THE COURT: Well, no. If one also takes a broad enough sense of what is considered a purchase, then yes, it seems to me a those things are. If you don't have to have money or monetary equivalence and you don't have all these other limitations of what doing, then I think everything becomes a purchase.

MR. SOLOMSON: Everything might be a purchase, but it wouldn't be a service, in which case it wouldn't sweep up everythi

THE COURT: I think initially, before we even focused on this, you argued for an extraordinarily broad definition of the wo "service".

MR. SOLOMSON: No, here, though, our definition of service is a provision of information. I mean, that is the defini FAR.

THE COURT: Well, that may be, but the basic definition service subsumes a whole bunch of things. There's no requirement direct versus indirect, and the definition of the Federal Circuit But service if we look at it, are you acquiring a service? Sure. of information is a service, why wouldn't the acquisition of a sav loan be a service?

MR. SOLOMSON: But there's no doubt that in our case, had we had the government hire one of the large consulting firms t in and help evaluate the performance of its prime contractors, tha would be a service within the meaning of the CDA.

THE COURT: That's exactly why I don't think the rubber meets the road on that term. It may well even be the case, okay, the Winstar context, okay, that's a service. That might not be th limitation. The limitation I think probably comes from the defini word "procurement". And the answer is it's not a purchase.

So I'm not disagreeing with you at all in terms of the b or the sweep of the word "service", all right? My problem is, and why I asked you to focus on that to be prepared for today, is the think where the limiting language in the statute is is the term "procurement", all right? So no, I think it conceivably could be that a whole bunch of things fit under acquisition of services, al just I'm not sure that those are procurements of services within t meaning of that statute.

MR. SOLOMSON: Well, there's no doubt that if we go with the definition of purchase, cash or cash equivalence, that the CDA not apply.

THE COURT: All right. Well, what I'm going to do is gi you a little time after this I guess to come back and show me whet anybody has actually applied a definition of purchase under 602(a) broader than that, and if they have, then I want to see those case right?

But I don't view the cases that sort of go off to *Webste* here as giving me any type of ready way of dealing with Federal Ci

opinions that are defining the term for purposes of the statute th talking about. And it seems to me that I have to start with the p that that's binding law and that that's where I'm going to start i the analysis.

All right? So I can tell you that as far as I'm concern other cases that don't do that are probably erroneous. To be fair Gibson, some of the cases that are doing this don't state his opin you're citing, all right, but not all of them, all right? And so the definition here is more well established now than it was back or 2001 when he wrote his opinion. But the fact of the matter is are more precedents prior to his opinion that defined the term "procurement" in the same fashion, and for whatever reasons, he do discuss them.

I haven't read those Board opinions that you cited, but what you're telling me about them, it appears that they go off on *Webster's* type route and that they don't cite the Federal Circuit' definition of procurement either.

MR. SOLOMSON: No, I don't believe they do, but I do believe that Hernandez, and I can't swear on it, but I do believe definition, and if not that case, then one of the other ones in ou supplemental notice cites the definition in Title 43.

THE COURT: No, you're saying Hernandez does that.

MR. SOLOMSON: I think it may. I don't have it in front

me.

THE COURT: Well, your brief says that.

MR. SOLOMSON: Oh. Well --

THE COURT: But I don't really see where that gets me around it. I have a Federal Circuit -- not one. As far as I can to four, and I suspect when I start looking, I'll probably find a And they're not defining the word procurement for purposes of some statute. They're defining the word procurement for purposes of th exact provision we're looking at.

So it seems to me it's going to have to be a purchase or lease or a barter. And if purchase means, all right, cash or cash equivalent, and assuming there's not some creative definition of b that would cover this, but I view a barter as an exchange of commo Okay, that's one commodity exchanged for another.

So I would be surprised if that term picked this up. Th answer would be, it doesn't mean any of those three terms, all rig I'll give you some time to see if you can find something that some sheds some light on what the word purchase means in a way differen don't see just off the top of my head anything that would be incon between applying that Federal Circuit decision by its terms and sa that the statute could also cover implied in fact contracts. I ju it.

I can see situations in which implied in fact contracts

not meet that definition, but I don't see anything about the use o purchase in the facts that we're talking about that would eliminat the use of implied in fact contracts in such a way as to create an inconsistency between the definition of the word purchase and the reference in the statute to implied in fact. I don't see that eit

I definitely see it as a limiting term. In other words, no doubt that it means that some things that would be implied in f contracts are not going to be subsumed within the meaning of the t contract for purposes of the CDA. I actually think that's probabl intended.

MR. SOLOMSON: I would also like to take a look at whether that's the case. I just can't conceive of anything off th head still that would be an implied contract that would involve ca cash equivalence that would not be subject to the FAR, and then we would be back to the issue of the problem with having a --

THE COURT: Yes, but if you're right about what the FAR requires, and I think that again, there's a whole category of impl contracts which are not subject to the FAR, then you couldn't have implied in fact contracts not for anything that's in the CDA or my of purchase. It has to do with the writing requirement in the FAR was something applied to virtually everything, well, then yes, you problem with implied in fact contracts. But I don't think it does

All right? At this point, I think I'm going to limit yo

dealing with the word purchase because I want to get the briefing sort of done.

MR. SOLOMSON: Okay.

THE COURT: Anything else about this first issue?

MR. SOLOMSON: No, Your Honor.

THE COURT: Let's talk about 31 U.S.C. § 1501. Now I know there's this D.C. Circuit opinion out there, but in fact, it get to the point of saying absolutely that all contracts have to b It sort of hangs it out there as a possibility. And the case in t talks about it doesn't absolutely say it. It just sort of says, w considered that, but we're not going to rely upon that ground esse resolve this case, correct?

MR. SOLOMSON: Correct.

THE COURT: Any case that's directly actually held that statute requires all contracts to be in writing?

MR. SOLOMSON: I believe the D.C. Circuit opinion, though, did hold that it was a bar.

THE COURT: Well, the Court of Federal Claims case, which was that one?

MR. SOLOMSON: The Court of Federal Claims case was Narva Harris, and the Court is correct that there they opined that statute, which was then 31 U.S.C. § 200, may not be enough to prec recovery on a contract implied in fact. It may preclude recovery

express oral contract.

THE COURT: How can that be by the way? I mean, I'm scratching my head. It's a nice sounding result, all right, but I conceive of any rationale where you can construe that statute in t and basically say, well, everything has to be writing except impli contracts. But if it's an express contract, well, it's got to be

I mean, that's a nice result because in fact what they'r saying sub silentio is if I applied that statute, that statute bei provision, by its terms, it would blow up everything and it can't okay? All right. But I don't think that leaves you with any type construction of that statute that can be limited in that fashion.

It's like a nice convenient one, all right, because it s well, when they're express contracts, they can't have them be oral it's implied in fact, well, we can't mean that that means that the oral because clearly we know that a portion of an implied in fact is by definition not in writing. So it can't mean that therefore, apply to that.

It's like except for the fact that there's nothing in th language, if you're going to construe that statute to say obligati means not obligation as a technical term but obligation as in bind agreement, okay, they're making it up. I mean, how do you draw th line? Can you draw that line?

MR. SOLOMSON: Speaking for myself and not for the

government --

THE COURT: No, you can't do that, sorry. Is there a wa to draw a line?

MR. SOLOMSON: No, I agree with the Court's analysis. I is one that I presented to my government contracts course myself, don't understand how the distinction is made in Narva Harris betwe two except to say that they did not like the contrary result, whic one that it seems that all the Courts before that had applied.

I mean, it's the same type of statute that the Federal C itself applies under the FAR in Harvard Lummis, and it's the same that the Supreme Court applied in countless earlier statutes under revenue statutes to all these early Supreme Court cases that are i brief. It's the same type of statute.

THE COURT: It's the same type of statute, but the probl is those statutes assume already, see, because you're not saying, nothing about this provision, okay? So let's put the language up. it right here.

MR. SOLOMSON: 1501, Your Honor?

THE COURT: Right. Pull up 1501 if you've got it there.

MR. SOLOMSON: I do.

THE COURT: All right. There's nothing about that statu that's limiting, okay? So, in other words, it doesn't say that. amount shall be recorded as an obligation to the United States onl

supported by documentary evidence of a binding agreement between a agency and another person, that is, in writing in a way and form a purpose authorized by law," et cetera.

All right. So I read pretty much the critical language. leave anything out of the statute?

MR. SOLOMSON: No, Your Honor.

THE COURT: All right. So the first thing of course is "when supported by documentary evidence of a binding agreement between an agency and another person, that is, in writing." Query the "in writing" refer to binding agreement or documentary evidenc

And as I think I made reference to the fact, there is or Comptroller opinion that I saw that seems to suggest that the writ requirement can be met other than by an actual copy of a written agreement. In other words, you have to have some written evidence there's an agreement, but you don't have to have something that sa contract on the top of the agreement that is an integrated documer just has to be something that evidences the fact that there was ar agreement.

MR. SOLOMSON: But that's not even alleged here in our case.

THE COURT: Well, now my point is the fact that they cou say that about the statute seemingly undercuts the notion that thi language is talking about the fact that if you don't have a writte

agreement, then you don't have an enforceable contract.

MR. SOLOMSON: But that does in fact seem to be the holding of all those early Supreme Court cases in addition to, I m same type of language in the FAR that the Federal Circuit holds in Harvard Lummis.

THE COURT: Yes, I know, but the point is they're dealin with a particular category of contract. The first part of that an subject to the FAR? Is this type of agreement subject to the FAR? then there's a writing requirement, okay, and it's not framed in t terms.

MR. SOLOMSON: Correct, and I agree. I would want to make clear that I think there are two ways that 1501 or even the F could be read. I mean, I know that we're not in the summary judgm portion, but I don't think I need to go there, not that the Court me. But my point is that there's two ways to look at it. One is statutes, be it the FAR or 1501, work as sort of a statute of frau no contracts that aren't in writing.

And the other way it could work is via an authority mechanism that says that it's not that the contract must be in wri the statute of fraud. It's just that nobody has the authority to contract unless they put it in writing.

THE COURT: And why would Congress put this very critical provision that according to you applies across the entire

government not in Title 48, which deals with procurements, but in and particularly in the part of Title 31 that deals with the budge and appropriation accounting? It seems like an odd place to put t provision, right?

MR. SOLOMSON: For the same reason all sorts of squirrelly provisions wind their way up in legislation.

THE COURT: Unless the term obligation means what I think it means, which is it's not talking about a legally binding It's talking about a concept of government budget, which is matchi an expenditure, a proposed expenditure, with the funds that are go pay it. That's an obligation.

So, I mean, the typical term for an obligation is I have contract, all right, that I'm going to execute or I have some purc I'm going to make and I'm going to buy chairs before the end of th year, okay? And one of the things I have to do is to obligate the So what I do is I take the purchase order. I don't even have at t by the way, the chairs in hand, nor have I given the person the ca

I just take the purchase order. I just order 20 chairs. the purchase order, and I set up an obligation in the books. What basically doing is matching up that purchase order with money in t budget so that money then becomes "obligated". That's what we cal all right?

It has nothing to do at that point with an executed cont

It might not even have to do with something which is binding at th in the sense that, you know, they might come back to me and tell m that chair is out of order and they can't get it, in which case I the funds, which is another term out there in terms of purchasing.

So one reason we know that that's not absolutely referri to binding agreements is that we obligate funds and then sometimes deobligate funds. So, if it was absolutely binding and always goi expended, well, then we wouldn't have this deobligation concept.

All right. So there is this concept in budgeting, and i perfect sense in the context of the statute. If we look at one of Comptroller opinions that construes this statute, so let's get spe so there's not too many things.

You know, when you take USCA here and you look at this particular statutory provision, you don't exactly get 47 different its construction of things. That's in other words various authori construing 31 U.S.C. § 1501, all right? So you get maybe eight or when you look at various cases and other types of authorities that construed this provision.

MR. SOLOMSON: I'm sorry to interrupt. Including the former section?

THE COURT: Including § 200, correct, yes, all right, because it hasn't been around that long for one thing. All right?

In the Comptroller General opinion that I'm looking at,

is from 1955, okay, it talks about things like obligating against funds. "The general rule for legally obligating a fiscal year app is that the supplies or services that are required are the service bona fide need of the fiscal year in which the need arises." So t type of construction we're getting in this.

So what I'm saying is I'm seeing authorities that constr this statute along the lines that I'm telling you that I think it other words, it's talking about budget accounting. It's not talki legal obligations. Now I know what the D.C. Circuit did, but I'm how they got there.

MR. SOLOMSON: Your Honor, there are cases from this Court as well that have done the same thing.

THE COURT: Right, people who have talked about it, but anybody actually held this?

MR. SOLOMSON: I believe in Prestex, to the extent that Footnote 5 in Prestex, Claims Court 373 --

THE COURT: Right.

MR. SOLOMSON: -- to the extent that Plaintiff's contrac claim is based on an express oral contract that fails on the addit ground that it violated the statutory requirement that an agreemen writing in order to bind the government, 31 U.S.C. § 200(1)(a), an says, current version at 31 U.S.C.A. § 1501. It does cite the D.C case and Narva Harris

And I agree Narva Harris has the difficulty, and I woulc actually go one step further and say it would actually be kind of say that an express promise wherein I allege that the government a committed something to me very clearly is not actionable, but if t the implied circumstances, it is actionable. But that still nonet what Narva Harris holds.

And then when we compare it to the FAR language, it's a very similar type of issue in Harvard Lummis. The FAR does not sa contracts must be in writing. It defines contracts as the types c agreements that are in writing. That's how it defines them.

THE COURT: Basically, if you're right, then I would exp guess that you all would come in, in every single case of an oral and make this argument. Yet I see cases where that doesn't appear have been the case, so those people are all asleep at the switch.

I mean, there are Federal Circuit cases out there, I've them, dealing with on other issues express oral contracts, all rig there are definitely a decent number of them in this Court dealing questions like the nature of the agreement, whether it was breache whether there were authority questions, what type of damages were and the like. They're all off the reservation basically because, those cases should have all been simply resolved based upon this statute, 31 U.S.C. § 1501.

MR. SOLOMSON: Correct.

THE COURT: Every single one of them would be subject to this, would they not?

MR. SOLOMSON: Correct. In Harvard Lummis, that's what they held.

THE COURT: And every implied in fact contract would be subject to this.

MR. SOLOMSON: Correct, assuming that there was no -- I don't know. I have not thought about the end limits of that.

THE COURT: Well, but I think you need to, because if you're telling me this is correct, basically what you're saying is statute essentially blows out our jurisdiction over implied contra that matter blows out the CDA jurisdiction over implied contracts because implied in fact contracts will not meet this requirement a you're construing it.

MR. SOLOMSON: That's correct.

THE COURT: And therefore, it means that even though 1491 gives us jurisdiction over implied in fact contracts, in fact such thing.

MR. SOLOMSON: It could be that in theory, the Tucker Ac gives the authority to this Court to hear such contracts. The pro that another statute takes the authority away from certain governm representatives to enter into such contracts.

THE COURT: Because you realize that's a pretty broad

argument. Basically what you're saying is that not only should we dismissing every express oral contract, but we should be dismissin single implied in fact contract case we have in the Court on the b this statute.

MR. SOLOMSON: If there's an oral contract.

THE COURT: No, no, no. I mean, if I'm hearing you, wha this statute requires is that it has to have express written agree correct?

MR. SOLOMSON: Well, I agree that Narva Harris held that express --

THE COURT: Well, what's your position? Does the statut or does it not require express written agreements?

MR. SOLOMSON: I would say it the other way. An express oral contract is precluded.

THE COURT: That's not what I'm asking you. What does i require? I understand that you're saying that that doesn't meet t requirements. What does the statute require?

MR. SOLOMSON: Well, under Narva Harris, an implied in fact contract that is more than just an express oral contract woul sufficient.

THE COURT: How can that be? Look at the words of the statute. If I'm understanding what you argued, you argued that th to be a written binding agreement. That's what you argued, isn't

MR. SOLOMSON: I mean, I'm just dealing with what Plaintiff's alleged.

THE COURT: I know, but you can't do that. You have to tell me a construction of the statute that makes sense in the cont what's out there, all right? So you can't just make an argument t good enough to get rid of his case. So, I mean, if in fact I'm understanding what you're arguing that this statute -- are you arg not that this thing requires a written binding agreement?

MR. SOLOMSON: No, because Narva Harris plainly says that that's not the case.

THE COURT: Well, then what does it mean? Go back to the statutory language.

MR. SOLOMSON: Well, there are two counts in Plaintiff's complaint.

THE COURT: No, I don't want that. I'm looking right at statute. Tell me what this language means then. What does it req don't want to know how it applies or doesn't apply. I want to kno requires so I know what standard to apply in deciding whether it's not.

What does it mean? Only ones supported by documentary evidence of a binding agreement between an agency and another pers including an agreement that is in writing in a way and form and fo purpose authorized by law.

MR. SOLOMSON: Well, then I think I can't answer the Court more clearly, and I apologize for hesitating before, but I t the government's position is that in fact, it would require under Lummis, that it would require a writing.

THE COURT: A written binding agreement?

MR. SOLOMSON: And that the D.C. Circuit got it right, a the Narva Harris distinction between implied in fact and express c contracts does not make any sense and that the correct constructio would be it precludes nonwritten contracts.

THE COURT: Well, does it preclude then every implied in fact contract? I mean, the distinction we're talking about here i have to have a written binding agreement, okay, or do you have to some writing that evidences that there is a binding agreement? Do understand the distinction I'm making?

MR. SOLOMSON: Yes.

THE COURT: Which is it under the statute?

MR. SOLOMSON: I think it would have to be a writing contemporaneous evidence, not a postrecordation evidence but some amount of writing that evidences the transaction, something more t just oral conversation.

THE COURT: I know that's what you're saying. Parse the language to get to that conclusion.

MR. SOLOMSON: It comes down to what does the phrase

"in writing" mean.

THE COURT: Well, it also talks about documentary evidence of a binding agreement between an agency and another pers that is in writing.

MR. SOLOMSON: Well, I don't know what else there would be. What other kind of documentary evidence is there other than t that's in writing?

THE COURT: Well, but you said, no, it has to be contemporaneous. So a letter subsequent that recognizes that ther an express oral agreement before?

MR. SOLOMSON: No, I don't think that would be sufficien I think it means that the writing that the statute refers to is th transaction has to be in writing.

THE COURT: Right, which basically almost all the contracts implied in fact in this Court go to the wayside under yo definition.

MR. SOLOMSON: Well, but that's not so clear --

THE COURT: Certainly any that involved an oral offer th was accepted by performance, they definitely do, correct? They de do. Oral offer accepted by performance no doubt goes under the st in terms of your interpretation, right?

MR. SOLOMSON: Correct, yes.

THE COURT: What about a written offer accepted by performance?

MR. SOLOMSON: I think that would work. I mean, that's classic purchase order under the FAR.

THE COURT: How does the offer document a binding agreement? There's no written acceptance.

MR. SOLOMSON: That would be in writing. That is sufficiently in writing. I'm not only trying to create a construc I'm trying to deal with the various precedents that I'm looking at

THE COURT: I know, but as you know, I'm trying to evaluate whether I think those precedents are right. So one of th I want to figure out is, do they make sense in the context of the okay, of all these other statutes? Because I have to come up with construction of 31 U.S.C. § 5801 that hopefully accommodates 28 U. § 1491, and I don't know off the top of my head what Section 602(a Maybe it's in 48 U.S.C.

But I have to come up with definitions here that seeming give effect to all those statutes, and the trouble is it doesn't s can do that.

MR. SOLOMSON: But under <u>Harvard Lummis</u>, the Court says quite clearly, citing <u>American General Leasing</u>, that an expre agreement with a government agency is not binding. We hold the CO not have authority to enter into an oral contract.

THE COURT: I know, but I'm worried about rationale. I mean, it's easy, okay? That's not where the tension is created wi respect to express oral agreements. You could say that this thing requires express agreements to be in writing, all right? And ther tension with 1491 and the CDA saying that.

The problem is that if the agreement itself has to be wr then there is tension with 1491 and the CDA to the extent that the jurisdiction over implied in fact contracts as in implied contract been construed to mean implied in fact contracts, because dependin how you construe the statute, they wouldn't meet that requirement. you just said a second ago it was afforded jurisdiction by one sta somehow swept away by another.

MR. SOLOMSON: Well, I agree with the Court's assessment that Narva Harris makes a difficult distinction. I wou personally prefer the one that reads it like the D.C. Circuit and all of these that aren't in writing.

THE COURT: Right.

MR. SOLOMSON: But be that as it may, Narva Harris was spoken, and Harvard Lummis was spoken, and Harvard Lummis unfortunately doesn't deal with Narva Harris.

THE COURT: Narva Harris is dicta. There is nothing in Narva Harris that's binding.

MR. SOLOMSON: Except that Harvard Lummis reaches

the same conclusion under the FAR and doesn't bat an eye about say that, well, anything that should be subject to the FAR will now be

THE COURT: Well, I don't have any problem with that because I'm not sure that there's any implied in fact contracts th subject to the FAR. The whole point is before you conclude, to sa the FAR requires an agreement to be in writing doesn't tell you an unless you first determine which agreements are subject to the FAR

So there's nothing talking about the FAR that says it's be in writing that tells me anything about whether or not a partic contract has to be in writing, because the first thing I have to d before the FAR requirement applies is is that agreement is subject FAR.

MR. SOLOMSON: Fair enough, and this does I think get to the point I was making about how the different statutes may work. the problem here, I think the most room for summary judgment is fa only to the extent that we're pointing to two people or three peop talking about what their authority is.

So that's a factual issue. Do they hold a warrant or do they? That's properly I agree for summary judgement. But if a pl comes into court and says that we entered into contracts with peop having authority and the government sits back and says, well, we d understand how that could possibly be the case because the only th we have in the agency is procurement authority or authority grante

some statute or the HUDAR or the FAR and none of those are implica
it's either one way or the other. It fails before we get there.

THE COURT: But the problem with that argument is, and I haven't had to explore these areas, but there's things like implie authority and all kinds of other things. So it's not like the jur basically says if it's not explicitly written down someplace, that they don't have it.

And so the problem with going down that path is there's of potential twists and turns that could impact the conclusion as whether they had authority or not, what their general job descript all right? It may well be that in fact, what would be case, for e part of the process here for obtaining these views is that the age instructs these people always to tell people that as part of the c giving me the information, we agree to hold your information essen on close hold so that your identity is not known?

MR. SOLOMSON: It can't be actionable.

THE COURT: Well, but no, at that point, if that's the c then whether they were authorized or not wouldn't make any differe because the agency conceivably could be the one who effectively authorized the agreement. I mean, if the agency says you can tell as part of this process that we'll hold their information on close confidentially -- so I'm not going to go there, I mean, because in the authority question, convenient or not, requires me to look out

complaint, all right?

It's not a jurisdictional question per se, because if it jurisdictional, then every question about whether or not we have a fide contract here is jurisdictional and the Federal Circuit is go opposite direction. They basically said that essentially a well p complaint gives me jurisdiction. That's all I need.

MR. SOLOMSON: I agree it wouldn't be jurisdictional. I think it would be failure to state a claim, the failure to allege

THE COURT: Then you can't show me something outside the complaint to say that.

MR. SOLOMSON: Well, no. All I would do is point to the complaint and say the complaint does not allege anything in writin here are all the statutes that we've come up with, none of which w give any of these people authority. Plaintiff hasn't come up with statute to indicate that the people had authority, and it just fai claim because the claim of authority is not well pled.

THE COURT: All right. We're getting off topic, so let' back onto anything else you want to tell me about 31 U.S.C. § 1501

MR. SOLOMSON: I guess I just would want to make clear that I don't know that there's any way to resolve -- in other word two ways to go with Narva Harris and either say that --

THE COURT: I mean, there's no binding precedent on this point, correct?

MR. SOLOMSON: Correct, unless a careful look at the early Supreme Court precedent on those revenue statutes shows that they were similar to the language.

THE COURT: Well, that wouldn't be a binding precedent o that statute. There might be rationale there that carries over to with the statute, but I guess to be more specific, I have nothing construes this statute in a binding way in terms of how it applies case, this statute.

MR. SOLOMSON: Correct, correct. That is true, although would say, though, that there is nothing that's so far-fetched abo proposed construction limited by the dicta in Narva Harris that th Circuit itself doesn't undertake with respect to the FAR.

THE COURT: And we've already talked about what I think about that FAR.

MR. SOLOMSON: Right, correct, and other than that, no, would only be the D.C. Circuit.

THE COURT: Okay. Anything else, Mr. Solomson?

MR. SOLOMSON: No, Your Honor.

THE COURT: Let's get Mr. Thomson. Whenever you're ready.

MR. THOMSON: Judge, I think that what we have here is putting a round peg into a square hole. And I think that was the decision and that was Jenowski (ph) and that was the Bailey v. The

United States decision of this Court. I mean, what we're basicall is none of these issues, these informant-type issues, fit into the you're coming at it from an angle of procurement, which I apprecia think you're correct on.

But when you read the Pasteur case and your analysis, doesn't it reach the same road? None of this fits into a procurem because these guys went in. These are citizens that went in to gi information in a confidential QMR. That's what we have here. The weren't government contractors. There was no acquisition. There no buyer and seller. There was no noncompetition, quality contro Who were they going to talk to? Was the government going to say, right there, let's get some informant agreements out?

I mean, in the Jenowski case, basically the government argues in its brief these takeover agreements, they're not subject CDA. Well, I would take that position, not because they're crimi because they don't run themselves through the statutory analysis. why Pasteur makes sense. That's why Jenowski makes sense. That's why Bailey makes sense. I mean, this Court in Bailey v. The Unite States is a perfect example of what Your Honor said: oral contrac determined to provide services.

Nobody said that agreement had to be in writing, because under the Tucker Act, the Judge says, hey, we filed a contract and actually we were in the right place. They're using the government

they're using these issues to prevent access to the courthouse whe were never intended to be as such.

This is a Court where someone should be able to bring a contract claim. A guy comes in as a citizen and responds to what' a confidential QMR, provides information. Information is leaked c hours later. We don't have access to the Court because nobody sig anything. We didn't write to a contracting officer.

You've asked the question, who is the contracting office That never came up through two deputy directors and two HOCs, Atla and Philadelphia. What are my guys supposed to think?

I mean, I think in actuality, what we have here in these cases reached the same conclusion, and that conclusion is the CDA doesn't apply. It was never meant to apply. This isn't about pur or buying or selling. So the CDA should never have been raised as issue to bars and jurisdiction and 1501 doesn't apply, and the FAR doesn't apply because they weren't coterminous.

We talked about the Narva Harris case, but Palcorp (ph) even goes a little bit further in the Ninth Circuit decision. Whe those together, how can anyone logically say there's a difference an express oral agreement and an implied in fact contract? They'r exactly the same. I can name five cases right now of oral agreeme that this Court's decided, Bailey being one, Priley (ph) being ano Jenowski being another one.

THE COURT: Well, then I'm correct that there is no opin that I've seen that flat-out says that 31 U.S.C. § 1501 does not r agreements to be in writing. I mean, I was kind of surprised not cases that say that. But there's no case that flat-out says that correct?

MR. THOMSON: I agree with what you're saying. You're right, but you read Narva Harris. What you were saying before is what I was saying. How can you read Narva Harris and read the sta and say that they make sense together? You can't.

THE COURT: If it wasn't dicta, it wouldn't make any difference because they'd be stuck.

MR. THOMSON: But then Palcorp goes further.

THE COURT: But that's a Ninth Circuit case, and it's a different.

MR. THOMSON: Yes, I understand, but it goes further on the same exact error of law. So, I mean, I don't see how that app This wasn't that kind of circumstance. My guys aren't government contractors. My guys are citizens that went in, met with governme confidential QMR and gave information and had a promise.

And my point is exactly what you said. I want to find o does the agency permit this to occur? I don't think you can resol summary judgment. I was pleased that you ordered that way, becaus we all know those answers going in.

But we saw, as in the Bailey case, an oral contract, the attorney came to Court here, a huge opinion by this Court on that Went through the CDA, blew it out under Pasteur and then basically in the end, hey, this is a contract claim. This is why this Court That's how I see it. I saw it that way the first day when you pre with that case about the oral agreement with regard to treatment t handed out and asked us to read.

Isn't that what we have here case after case? But we ha now a motion that now these cases should all have been blown out c Court under 1501 or under our application to CDA. I just don't se under the applicable law. I don't think that was the purpose of t statutes. The statutes weren't here to bar people like my client getting a hearing in front of Your Honor.

THE COURT: All right. Thank you, Mr. Thomson.

Anything else, Mr. Solomson?

MR. SOLOMSON: Just briefly, Your Honor, on Palcorp and Narva Harris. I believe the government's position is that the dis Palcorp had it right and that not only was Palcorp not decided unc FAR, but that it is, as I believe the dissent said, just simply wr 1501 would in fact bar contracts that are not in writing, and that up eliminating a great deal of a number of cases that this Court c does see come through here that are not embodied in some sort of writing. That is the government's position, and it is similar to

Lummis analysis under the FAR, so we would preserve that.

THE COURT: Well, at the least, maybe this case will provide an opportunity for the Federal Circuit to say whether that wrong, because I'm kind of surprised I guess (1) that there's not resolution of that issue someplace here and (2) that the argument made in every single case involved.

I mean, presumably, if you're right, they should be goir back into every single pending case and basically saying what, lac jurisdiction? Has that statute had the effect of depriving the Co jurisdiction or is it failure to state a claim?

MR. SOLOMSON: That's what I was getting at before is that I believe it's failure to state a claim.

THE COURT: All right. But effectively they could go ba into every single pending case here and make that 12(b)(6) motion, correct?

MR. SOLOMSON: That's correct, but it's no different tha what would happen under the FAR if the FAR were to apply.

THE COURT: Well, I know that, but I'm just saying that there's a whole bunch of cases here conceivably where this argumer be made in. Is it being made in all those cases now; all of a suc the government is focused on this statute, so they're going to go make sure that they now file those 12(b)(6) motions in maybe 25 or cases?

MR. SOLOMSON: I do not know.

THE COURT: It would be good to find out, because I thin if you're going to make this argument, you need to make it consist

MR. SOLOMSON: I know that I've shared the analysis with colleagues and have discussed it with the reviewer that signed on briefs and who argued Harvard Lummis.

THE COURT: Well, I think that one of the things you're going to have to maybe find out here is whether or not the governm going to take the position that this applies to implied in fact co right, because if that is your position, I think I need to know th

MR. SOLOMSON: Okay.

THE COURT: All right? And I think people need to understand that that then would have the ramification that my expe would be that you're going to make this argument consistently in a cases in this Court, not just this one.

MR. SOLOMSON: I will check with senior management who are more senior than myself.

THE COURT: All right. So you can sit down, Mr. Solomson. I'm going to give you both a relatively short period of here to come back to me and focus in on that definition that we ta about of procurement, all right, so I think you know the cases we' about.

But if there are any cases out there that you want to ci

me that apply that definition one way or the other and whether for matter it seems to me that that will be the focal point of any ana anyhow, any cases involving the word purchase that somehow enlight me as to how that word is used within the definition that's employ the Federal Circuit, that you can both do that.

I'm going to just ask for simultaneous memos on that. I not going to ask for replies to those memos unless upon viewing th decide I need that, all right? So I'd like to see those memos by 3rd. Mr. Solomson, if upon discussions with your superiors some decision is made that particular arguments are not going to be mac I just need to know that. So, if they determine upon review and m thinking about the implications that they want to back off of some well, then you just need to let me know that. And if not -- I'm s

MR. SOLOMSON: When and where should I do that?

THE COURT: Well, in particular, you know, I think that argument that has the potential probably of dismissing maybe 100 c in this Court is something that -- I mean, if they want to make th argument, I think that that's fine.

But it would seem to me that if that was the case, one possibility is that I might actually certify that point up to the to get it resolved, because I would think that if there's an argum there that potentially it would lead to dismissal of 100 of our ca one thing that I would expect to see is it raised in all those cas

this one. And I don't get the sense that it is, because if it is, apparently it's not being decided, all right, because I'm not seei opinions that talk about it.

So, to me, it's a big enough argument that maybe there's the necessity to get Federal Circuit review of that point to find or not they agree or don't agree that 31 U.S.C. § 1501 has this br impact. So I think that the folks there need to decide whether or want that review or not.

MR. SOLOMSON: And then the Court's position if I understand it then with respect to <u>Narva Harris</u> is that because it or nothing phenomenon so that --

THE COURT: Well, I don't know that, but it seems to me that you all have to decide that. Certainly, I think I need to kn some construction that you think somehow carves up the domain in a fashion that rules out express oral contracts but doesn't blow out in fact contracts. But I don't see it, not based so much upon tha I don't see anything in the statutory language that would allow yo that line. It seems to me in for a dime, in for a dollar.

So I think that there needs to be some thought as to how that argument goes. But in my view, I'm going to be evaluating th argument unless I hear otherwise as one which would essentially bl jurisdiction in this Court, or not jurisdiction but would essentially blow out every claim in this Court predicated up

express oral contract or implied in fact contract.

MR. SOLOMSON: Then the question for the government is really whether we're arguing for Narva Harris to be completely rev because it definitely held that you could have an implied in fact not in writing.

THE COURT: Well, I mean, I don't know. You're not arguing for it to be reversed I guess, but the problem I guess I'm that I don't see how your argument is consistent with that result. guess if what you're saying to me is that the Federal Circuit need en banc to clean that up, then maybe that would be a good thing to But I don't see how you can make the distinction.

So, if there is such a distinction being made, I guess I to know how you make it, because looking at the statutory language means what you think it means, it seems to me it sweeps everything And to it seems to me that at least I'm going to give you the oppo find out how far you want to take it. And if it turns out that, m the way it is in terms of the way the briefs are explaining it, we Maybe you just need to indicate that in the memo that you file.

But if there's going to be some modification of that argument, then I guess I need to know that. I don't want to decid more than I have to. But at this point, I have to say that one of that leads me to conclude that you're wrong is the fact that the ramifications seem to exceed that which you're willing to argue, b

if in fact you're willing to argue that it blows out all implied i contracts, well, then at least I would view that as consistent wit statutory construction.

MR. SOLOMSON: I guess the only thing that I'm not sure what to take back to the Department is precisely what we argued. believe that we conceded that Narva Harris, although difficult to understand, did make the distinction between the two. I mean, it didn't go so far as to hold that you could have an express oral co under --

THE COURT: Well, I mean, let's make sure we understand what it says. It says you can have an implied in fact contract th run afoul of the statute. It expresses no opinion on whether or n can have an express oral contract that does or does not run afoul statute, correct? I mean, if it had held that this statute meant have an express oral contract, I suspect you would be citing that quite a bit in this court, all right? It doesn't deal with that i

MR. SOLOMSON: It punts on express oral contract.

THE COURT: Well, it's not dealing with that fact patter there's probably a good reason why it's not dealing with that. An that case holds -- that's the problem I'm having with the argument that case holds is that 31 U.S.C. § 1501 does not bar the case tha before the Court there, correct?

MR. SOLOMSON: Correct.

THE COURT: All right. And you're citing it for the proposition that it bars something else, and I don't see how you g analysis.

MR. SOLOMSON: I think I understand the Court's positior although we did also move under the FAR provision as well for fail state a claim.

THE COURT: Well, that's true, but the problem is I thir conclude that it's outside the domain of the CDA, and I'll go take that, that I'm also going to conclude that it's outside the domair FAR, all right, for similar reasons probably too.

MR. SOLOMSON: Thank you very much.

THE COURT: All right. I'm not suggesting that you have do anything one way or the other. It's just that I view the argum making as extraordinarily broad-based, and I guess I'm giving you opportunity to confirm whether in fact it's intended to be so broa

MR. SOLOMSON: Thank you.

THE COURT: All right. Any questions about how we're going to proceed? Mr. Thomson?

MR. THOMSON: No, Your Honor.

THE COURT: Mr. Solomson?

MR. SOLOMSON: No, Your Honor.

THE COURT: All right. Then we're adjourned. Thank you

THE CLERK: All rise.

//

(Whereupon, at 3:50 p.m., the hearing in the above-entit
matter was concluded.)

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

# CERTIFICATE

DOCKET NO.: 07-206C

CASE TITLE: Lublin Corporation v. United States

HEARING DATE: May 13, 2008

I certify that the foregoing is a true and correc transcript made to the best of our ability from a copy of the electronic digital recording provided by the United States Co Federal Claims in the above-entitled matter.

Date: May 13, 2008

Shari Acosta

Heritage Reporting Corporation
Suite 600
1220 L Street, N.W.
Washington, D.C. 20005-4018