# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LUBLIN CORPORATION, t/a CENTURY 21 ADVANTAGE GOLD<br>7104 Castor Avenue<br>Philadelphia, PA 19149<br><br>Plaintiff<br><br>vs.<br><br>UNITED STATES OF AMERICA<br><br>Defendant | :<br>:<br>:<br>:<br>:<br>: | No. 07-206C<br>(Judge Allegra) |

# PLAINTIFF'S SUPPLEMENTAL BRIEF WITH AUTHORITY CONTRA DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR FAILURE TO STATE A CLAIM

WILLIAM F. THOMSON, JR., ESQUIRE
Gilbert And Thomson Law Offices
952 Trenton Road
Fairless Hills, PA 19030
Tel: 215-337-9300
Fax: 215-337-9131

Counsel for Plaintiff Lublin Corporation
t/a Century 21 Advantage Gold

June 3, 2008

# TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................................i

TABLE OF AUTHORITIES...........................................................................................ii

PLAINTIFF'S BRIEF.....................................................................................................1

**I. This Court has subject matter jurisdiction over this claim under the Tucker Act. The agreement between the parties is not a contract for the procurement of property or services under the CDA**.....................................................................................1

**II. Plaintiff's Complaint states a claim upon which relief can be granted**...........................................................................7.

# TABLE OF AUTHORITIES

## CASES

35 Comp. Gen. 319(1955)..........................................................................................7

ASBCA-Appeal of Hernandez
2000 WL 1844742 (2000)..........................................................................................8

ATL, Inc. v. United States
4 Cl. Cr. 672 Aff'd 735 F.2d 1343 (Fed. Cir. 1984)..................................................10

Bailey v. United States
46 Fed. Cl. 187 (Fed. Cir. 2000)...........................................................................6,11,13

Coastal Corp. v. United States
713 F.2d 728, 730 (Fed. Cir. 1983)..........................................................................4

Dalton v. Sherwood Van Lines
50 F.3d 1014, 1017 (Fed. Cir. 1995)........................................................................5

Edwards v. United States
22 Cl. Ct. 411 (1991)...............................................................................................13

Ervin and Assoc. v. United States
44 Fed. Cl. 646, 654 (1999).....................................................................................5

G.E. Boggs and Associates, Inc. v. Roskins
969 F.2d 1023 (Fed. Cir. 1992)................................................................................5

Harbridge House, Inc.
PSBCA No. 264, 77-2 BCA ¶ 12,653 @ 61,341......................................................10

Institut Pasteur v. United States
814 F.2d 624 (Fed. Cir. 1987)..................................................................................2,5

Janowsky v. United States
23 Cl. Ct. 706, 989 F.2d 1203, 36 Fed. Cl. 148,133 F.3d 888 (Fed. Cir. 1988)...........................................................................................................6

Marks v. United States
15 Cl. Ct. 609 (1988)................................................................................................10

Narva Harris Corp. v. the United States
216 Ct. Cl. 238, 574 F.2d 508 (1978)....................................................................8,9.10

New Era Construction v. United States
890 F.2d, 1152 (Fed. Cir. 1989)...........................................................................2,3

PacOrd, Inc. v. United States of America
139 F.3d 1320 (1998)..........................................................................................9,10,13

Perri v. United States
53 Fed. Cl. 381 (2002).........................................................................................12, 13

United States v. American Renaissance Lines, Inc.
494 F.2d 1059, cert denied, 419 U.S. 1030 (1974)..............................................7

United States v. Purcell Envelope Company
249 U.S. 313 (1919)...........................................................................................10

Weslayan Company, Inc. v. Harvey
454 F.3d 1375 (Fed. Cir. 2006)...........................................................................2,3,11

Woll v. United States
45 Fed. Cl. 475, 480 (1999).................................................................................5

## STATUTES AND REGULATIONS

28 U.S.C. §1491.....................................................................................................11,12

31 U.S.C. §200(a)(1).............................................................................................8

31 U.S.C.§1501.....................................................................................................7,8,10

41 U.S.C.§601 et seq.............................................................................................1

41 U.S.C.§602(a)....................................................................................................2

FAR 2.101...............................................................................................................8

**OTHER SOURCES**

Black's Law Dictionary (5th Ed.)....................................................................3

Dictionary.com.......................................................................................3

Webster's Dictionary..............................................................................3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

LUBLIN CORPORATION, t/a CENTURY 21 :
ADVANTAGE GOLD No. 07-206C
7104 Castor Avenue : (Judge Allegra)
Philadelphia, PA 19149
:
Plaintiff
:
vs.
:

UNITED STATES OF AMERICA :

Defendant

**PLAINTIFF'S SUPPLEMENTAL BRIEF WITH AUTHORITY CONTRA DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR FAILURE TO STATE A CLAIM**

On September 21, 2007, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, moved this Court to dismiss plaintiff's Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Plaintiff has filed a response to defendant's Motion. The Court has ordered that each party file a supplemental brief that addresses specific issues identified by the Court. Plaintiff submits the following:

## I. This Court has subject matter jurisdiction over this claim under the Tucker Act. The agreement between the parties is not a contract for the procurement of property or services under the CDA.

Whether the alleged agreement constitutes a contract for the procurement of property or services within the meaning of the Contract Disputes Act ("CDA"), 41 U.S.C.

§601 et seq., is a question of law for this Court. Institut Pasteur v. United States, 814 F.2d 624 (Fed. Cir. 1987). The term "procurement" has been recently defined by the United States Court of Appeals, Federal Circuit in Wesleyan Company, Inc. v. Harvey, 454 F.3d 1375 (Fed. Cir. 2006). The Wesleyan Court began its analysis with the language of the statute. The Court held, pursuant to the CDA, that the Armed Services Board of Contract Appeals has subject matter jurisdiction over any express or implied contract...entered into by an executive agency for - (1) a procurement of property other than real property in being. 41 U.S.C. §602 (a). The Wesleyan Court defined "procurement", as used in §602, to be the acquisition by purchase, lease or barter of property or services for the direct benefit or use of the Federal Government. The Wesleyan Court cited to New Era Construction v. United States, 890 F.2d 1152 (Fed. Cir. 1989) for this definition of "procurement." The New Era Court, in affirming an order of the Department of Housing and Urban Development Board of Contract Appeals dismissing the case for lack of jurisdiction, held that the term "procurement", as used in §602, means the acquisition by purchase, lease or barter of property or services for the direct benefit or use of the federal government. This characterizes a "federal procurement." In that case, the Federal Circuit held that the only contract for the procurement of construction of real property involved was the turnkey contract by which the Housing Authority undertook to procure real property. The contributions contract was not one for the procurement of construction of real property by an executive agency.

As such, it was held that there was no "procurement" under the Contract Disputes Act. In Weslayan Company and New Era Construction, the Federal Circuit has defined the word "procurement" in the context of the precise provision that is controlling in this case. It is difficult, if not impossible, to conceive how the factual scenario as set forth in the instant Complaint could be characterized as the acquisition by a purchase, lease or barter of services by the federal government. The term "purchase" is defined in Dictionary.com as follows: "to acquire by the payment of money or its equivalent." Webster's Dictionary defines "purchase" as "the act of buying; something bought." Black's Law Dictionary (5th Ed.) defines purchase as "transmission of property from one person to another by voluntary act and agreement, founded on a valuable consideration." The term "barter" is defined in Black's Law Dictionary, 5th Ed. as "an exchange of goods or services without using money."

When we consider that the CDA is an implementation of the recommendations made by the Commission on Government Procurement, created by Congress in 1969 to promote the economy, efficiency and effectiveness in the procurement of goods and services by the Federal Government, the logical conclusion is that such policy considerations relating to bidding, costs and competition have no application whatsoever to the contract at issue in this case. This is so because the agreement made in this case did not involve a "procurement."

There was no purchase, lease or barter of services as defined in the CDA. HUD requested that representatives of Lublin Corporation participate in a confidential Quality Management Review (QMR), which was being conducted by HUD at its Philadelphia office pursuant to the HUD policies and regulations. Plaintiff's representatives did not attend this meeting for the purpose of entering into any type of contract with HUD to provide HUD with any services. Rather, they attended the meeting at the express invitation of HUD and, at the meeting, were asked to cooperate with HUD representatives and answer some questions. No contracting officer was ever identified, no contract was drafted for representatives' review and signature and no representative of HUD ever advised plaintiff's representatives that they should not answer any questions posed to them until some type of contract was executed.

The Federal Circuit has observed for many years that the CDA does not cover all government contracts. Coastal Corp. v. United States, 713 F.2d 728 (Fed. Cir. 1983). In Coastal Corp., the Federal Court held that an asserted implied contract to fairly and honestly consider submitted bids "was preliminary and ancillary to any contract, express or implied, the government might enter into for goods or services. It was not itself such a contract, however." 713 F.2d at 730. This Court noted that some Boards of Contract Appeals had previously extended jurisdiction to claims based on "other contracts tangentially connected with government procurement of goods and services," such as claims for bid preparation costs. Id. However, the Coastal Court held, "we reject this gloss upon the unambiguous language of the statute. Congress explicitly

specified the types of contract that it intended the Contract Disputes Act to cover. A implied contract to treat bids honestly and fairly is not one of them." Id. See also Dalton v. Sherwood Van Lines, 50 F.3d 1014, 1017 (Fed. Cir. 1995). (holding that Congress did not intend the Contract Disputes Act to apply to GBL (Government Bill of Lading)-based transportation services of the sort at issue in these cases.) G.E. Boggs & Assocs., Inc. v. Roskens, 969 F.2d 1023, 1028 (Fed. Cir. 1992). (holding that the CDA did not apply to host country contracts adopted by the Agency for International Development because the contracts were not for the direct benefit or use of the Federal Government.) Woll v. United States, 45 Fed. Cl. 475, 480 (1999). (holding that the contract, which was essentially a collaborative testing effort, did not come within the purview of the CDA.) Hallmarks of a CDA contract are agreements that come about as a result of the competitive bidding process and require the appropriation of government funds. Ervin and Assoc. v. United States, 44 Fed. Cl. 646, 654 (1999). This simply did not occur in the instant case and as such, the CDA does not apply.

The Pasteur case has held that even where the CDA is clear on a purely linguistic level, interpretation may be necessary if that interpretation does not do justice to the realities of the situation. Accordingly, the plain meaning and construction of the word "procurement", as defined by the Federal Circuit and the analysis done by the Federal Circuit in the Pasteur case as set forth more fully in prior briefs, leads to the inescapable conclusion that the agreement between the parties in this case falls outside

the reach of the CDA. This is so since the agreement between the parties in this case did not come about as a result of the competitive bidding process or require the expenditure of appropriated government fund. As such, there was no procurement as contemplated by the CDA.

In Janowsky v. United States 133 F.3rd 888 (Fed. Cir. 1988) and in Bailey v. United States, 46 Fed. Cl. 187 (Fed. Cir. 2000) the Federal Circuit used a Pasteur analysis to reach this result. These Courts held the "realities of the situation" and the "procurement policies" underlying the CDA led to the conclusion, that the alleged agreement between the government and third parties fell outside the reach of the CDA, although within Tucker Act contract jurisdiction.

In Bailey, the Federal Circuit held the record did not reflect that Mr. Bailey held himself out as a normal government contractor in the repatriation business either before or after the isolated incident which formed the basis for Bailey's complaint. Mr. Bailey's involvement as counsel in the underlying criminal matter involving his client led to the alleged arrangement between Mr. Bailey and the government. This alleged oral agreement did not stem from competitive bidding and was not made subject to any dispute clause or any other federal acquisition regulations. The concepts surrounding government solicitation, bid response, contactor responsibility and the requirements for non-competitive procurements do not appear to have played any role in the alleged oral agreement between Bailey and the government. Nor were any appropriated funds to

be utilized in this effort. As such, the CDA was not applicable to the alleged agreement between Bailey and the government. Similarly, in the instant matter, no bid documents or procurement agreements were executed and no appropriated funds were used. Plaintiff's representatives merely responded to a formal government request to attend a meeting wherein an agreement was made. No services were procured or purchased as defined in the CDA. As such, the CDA is not applicable to the agreement between plaintiff and defendant.

## II. Plaintiff's Complaint states a claim upon which relief can be granted

31 U.S.C. §1501 and Federal Acquisition Regulations (FAR) do not apply to this case. 31 U.S.C. §1501 refers to the documentary evidence requirement for government obligations. It is the plaintiff's position that the word "obligation", as set forth in the statute, is in itself, a term of art. Section 1501 is meant to apply to obligations against governmental funds which require a bid, acceptance of the bid and a written contract which incorporates the terms of the bid. 35 Comp. Gen. 319 (1955). Such amounts are recorded as "obligations" of the United States government under federal procurement regulations. U.S. v. American Renaissance Lines, Inc., 494 F.2d 1059, cert. denied, 419 US 1020 (1974). For the same reasons that the CDA does not apply to this case, §1501 is also inapplicable since there was "no procurement of any

services" and as such no "obligation" was created involving appropriated government funds.

In the event that the contract between the parties is deemed to come within the ambit of §1501, the government admits, as it must, that in Narva Harris Corp. v United States, 216 Ct. Cl. 238, 574 F.2d 508 (1978) this Court held that if a contractor could prove facts from which a contract could be inferred, the statutory preclusion of recovery on an oral contract, pursuant to 31 U.S.C. §200(a)(1) (now §1501) would not bar a contractor's recovery. The Narva Harris Court went on to explain that a contrary result that requires a writing, would, in all practicality, have the effect of eliminating recovery against the government in all cases where claims were based on implied-in-fact contracts. The Court noted in almost all such cases, there is some sort of representation on the part of some Government agent. The Court stated that the party seeking to recover from the government in such a circumstance may rely on independent facts to establish the presence of an implied-in-fact contract. The Court concluded that the failure, for whatever reason of an attempt at an express contract, be it written or oral, is not enough, in itself, to deprive a party of a recovery for breach where sufficient additional facts exist for the Court to infer a meeting of the minds necessary to establish an implied-in-fact contract.

For the same reasons, the FAR does not apply to this case. If the agreement does not involve an acquisition with appropriated funds, the FAR does not apply. FAR 2.101. ASBCA-Appeal of Hernandez, 2000 WL 1844742 (2000).

The plaintiff acknowledges that an award under the FAR must be made in writing and that the FAR provides that the contracting officer is to award a contract to the successful offeror by furnishing the executed contract or other notice of award to that offeror. Of course, none of this occurred in this case since there was no intent by the government that the FAR be applied in this case. No standard forms were issued to the plaintiffs, nor were any optional forms issued. The reason no such forms or contracts were issued to plaintiff is that the agreement with the government did not involve any "acquisition" with "appropriated funds." 48 C.F.R. §201 defines "contracts as including all types of commitments that obligate the government to an expenditure of appropriated funds..." The agreement between the plaintiffs and the government did not involve the appropriation of any government funds. As such, the FAR does not apply to this contract. However, even if the FAR is deemed to apply to this contract, it is well settled law that implied-in-fact contracts with the government have been enforced despite statutory or regulatory requirements that contracts be in writing. See PacOrd, Inc. v. United States of America, 139 F.3d 1320 (C.A. 9th Cir. 1998). Although this Ninth Circuit opinion is not binding on this Court, it is instructive and the Ninth Circuit did rely heavily on this Court's analysis in Narva Harris in reaching its decision. In both of these cases the government made assurances to a service provider in order to secure the desired performance. In neither case did the parties execute written contracts. PacOrd, Inc., like Narva Harris, proceeded and completed its work in reliance on government assurances.

The PacOrd Court held that PacOrd, like Narva Harris, should be permitted to establish at trial the existence of an implied-in-fact contract. If PacOrd could do so, the Court held the recovery is not barred by the FAR requirement that the contract be in writing.

Absent a statute of regulation, there is no legal requirement that a government contract to be in writing. It is not essential for a binding contract that an instrument was executed; it is essential the acceptance of the offer be manifested by conduct that shows the sense of a proposed agreement. Marks v. United States, 15 Cl. Ct. 609 (1988). Under the doctrine of implied-in-fact contracts, Courts and Boards have recognized that neither a standard form nor any type of written or express agreement is necessary to bind the parties. There is no express statute of frauds applicable to government contracts requiring that the contracts be in writing and a clear majority of cases have held that a signed document need not exist for a binding contract to exist. United States v. Purcell Envelope Company, 249 U.S. 313 (1990), Narva Harris supra. Even when a party contracts with the Federal Government, it is not essential that the contract be in written form. ATL, Inc. v. United States, 4 Cl. Ct. 672 aff'd 735 F.2d 1343 (Fed. Cir. 1984). To require such a document would be contrary to concept of implied-in-fact contracts, which are usually formed not by documents, but by the conduct of parties. Harbridge House, Inc. PSBCA No. 264, 77-2 BCA ¶12,653 at 61,341. There seems to be little doubt from analyzing the statutes and the applicable case law, that the purpose of 31 U.S.C. §1501(a) was to insure budgetary control, rather than create a statute of frauds.

This is the reason that most Courts and Board have concluded that neither §1501 nor the FAR precludes the recovery by a plaintiff for an implied-in-fact contract. This issue was addressed head on by Judge Horn in the Bailey case, wherein he stated that Bailey's assertion that the government promised to forego the forfeiture of stock and to allow the proceeds of the stock to be used to pay his attorney fees established that the essence of the dispute involved the contract between the United States and Bailey. Such as case is properly adjudicated pursuant to 28 U.S.C. §1491 (The Tucker Act). The Court stated if Bailey believes he has a cause of action based in contract, he has the right to file a lawsuit in the Court of Claims.

Further, this issue was considered in the Wesleyan case wherein the Court stated, Wesleyan made a strategic decision to pursue its claim before the Board, and this forum choice has significantly limited the scope of its potential relief. Had Wesleyan desired to pursue all allegations contained in its complaint, it could have brought suit in the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. §1491(b)(1), which grants jurisdiction over disputes involving "any express or implied contract with the United States." Indeed, because, unlike the CDA, the Tucker Act does not require that the contract with the United States relate to the procurement, the Court of Federal Claims would have possessed subject matter jurisdiction here even if the Army had not purchased any Wesleyan systems, and had breached the confidentiality agreement solely by disclosing information contained in the unsolicited

proposals and/or bailment. By opting to pursue its claim before the Board, Wesleyan limited the scope of its dispute to the CDA, and thus to the prototypes obtained through the purchase orders.

Similarly, the plaintiffs in this case have alleged that authorized government officials have made promises to the plaintiffs and that the essence of the dispute between the parties involve a contract between the United States and the plaintiffs. This dispute should be adjudicated pursuant to the Tucker Act and, as such, this Court has subject matter jurisdiction.

In Perri v. United States, 53 Fed. Cl. 381 (2002) Perri filed suit to recover 1.3 million dollars from the United States Government. This amount represented one quarter of the proceeds resulting from the Government's auction of a farm. According to Perri, Special Agent Matthews of the FBI had promised that in exchange for his assistance in producing evidence necessary for criminal indictment, the Government would pay him an amount equal to one quarter of the property's auction price. In that case, the Court held that it had jurisdiction under the Tucker Act, 28 U.S.C. §1491. Similar to the instant case, plaintiff alleged that he had either an express oral contract or an implied-in-fact contract with the Government. The Perri Court performed an exhaustive review of the facts to determine whether a contract existed. Since this claim made by Perri was clearly decided on the merits, Perri's Complaint obviously stated a claim upon which relief could be granted.

The Edwards v. United States case, 22 Cl. Ct. 411 (1991) relied on by the Government, states that although 31 U.S.C. §200(a)(1) (now §1501) may not be enough to preclude recovery on a contract implied-in-fact, it may preclude recovery on an express oral contract. However, the Edwards Court correctly noted that this provision is rarely, if ever, the sole basis for invalidating an otherwise valid express oral agreement. The PacOrd decision, coming after Edwards has clearly eliminated any distinction between the express oral contract and an implied-in-fact contract for the purpose of determining whether recovery is precluded due to the fact that a writing does not exist. For the above reasons, this issue was never addressed in the Perri or Bailey case. Since the proofs for an express oral contract and an implied-in-fact contract are identical, it would be illogical to draw any distinction between the two contracts for the purposes referenced above. As such, plaintiff's Complaint, which sets forth claims analogous to those raised in the cases analyzed above, conclusively sets forth a claim upon which relief can be granted and, as such, plaintiff respectfully requests that the Government's Motion be denied and the Government be ordered to file an Answer to plaintiff's Complaint.

Respectfully submitted,

/s/ William F. Thomson, Jr., Esquire
WILLIAM F. THOMSON, JR., ESQUIRE

**CERTIFICATE OF FILING**

I hereby certify that, on this 3rd day of June, 2008, I caused to be filed electronically the foregoing Supplemental Brief with Authority Contra Defendant's Motion to Dismiss for Lack of Jurisdiction and or Failure to State a Claim with the United States Court of Federal Claims. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ William F. Thomson, Jr., Esquire
WILLIAM F. THOMSON, JR., ESQUIRE