# In the United States Court of Federal Claims

No. 07-206C

(Filed:  February 24, 2011)

_____

| | |
|---|---|
| LUBLIN CORPORATION, t/a<br>CENTURY 21, ADVANTAGE GOLD,<br><br>                     Plaintiff,<br><br>    v.<br><br>THE UNITED STATES,<br><br>                     Defendant. | Contract case; Motion for summary judgment; Implied actual authority – *H. Landau & Co.*; Individuals without actual contracting authority may, nonetheless, bind the United States; Genuine issues of material fact as to implied actual authority; Breach; Circumstantial evidence of breach; Anti-Deficiency Act; Genuine issues of material fact as to breach; Trial to be set. |

_____

**OPINION**

_____

*William F. Thomson, Jr.*, Gilbert & Thomson Law Offices, Fairless, PA, for plaintiff.

*Matthew H. Solomson*, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Tony West*, for defendant.

**ALLEGRA, Judge:**

      Lublin Corporation, t/a Century 21, Advantage Gold (Lublin or plaintiff), a real estate broker, was a subcontractor on a contract that the Department of Housing and Urban Development (HUD) had with another company.  Lublin alleges that, in the course of a programmatic review of that contract, HUD officials agreed that its answers to various questions would be kept confidential.  Lublin claims that, despite these assurances, HUD officials leaked its responses to the prime contractor causing the latter to terminate Lublin.  Defendant has moved for summary judgment, under RCFC 56, claiming that there was no confidentiality agreement.  It alternatively asserts that any such agreement that might have existed was not breached. Following briefing and oral argument, and for the reasons that follow, the court **DENIES** defendant's motion for summary judgment and will set this case down for trial.

**I.      BACKGROUND**

Lublin is a Pennsylvania corporation that sells real estate.  HUD entered into a contract with Hooks Van Holm, Inc. (HVH), which established HVH as the prime contractor to HUD for managing, marketing, and overseeing the sale of HUD-owned single family homes in Pennsylvania.  On September 13, 2004, HVH awarded a subcontract to plaintiff to provide brokerage listing services.  Under the contract, plaintiff was to place HUD-owned single family properties on a local listing service and field inquires regarding the properties.  The subcontract initially ran from September 18, 2004, through October 1, 2005, promising plaintiff a fee of $321 for each property that closed.

On or about March 9, 2005, representatives from HVH and Lublin met in Philadelphia to discuss the contract.   Lublin officials state that that the parties verbally agreed to reduce the fixed fee to $100 per property closed.  HVH officials state that, on March 21, 2005, HVH faxed Lublin a new subcontract that was dated March 19, 2005, and reflected the new provision for a $100 fee.  Lublin's owner states that he does not remember receiving a copy of the new contract.

On March 24, 2005, HVH's Chief Executive Officer (CEO) sent an email to the company's outside counsel and wrote, "I need to terminate a contract for a Listing Broker . . . How do you suggest we word the termination letter?"  That same day, HVH's program manager contacted a potential new subcontractor/realtor.  On March 25, 2005, in a follow-up email to its outside counsel, HVH's CEO stated that "we are terminating the agreement" with plaintiff because "we want to use another firm at a lower cost," and that it "offered the opportunity to [Lublin] to keep the agreement for the same lower price, but they have not responded."  On March 29, 2005, HVH's outside counsel emailed to HVH's CEO and Vice President a proposed letter to effectuate the subcontract termination.

At some point prior to March 30, 2005, HUD asked plaintiff to participate in a Quality Management Review (QMR) program.  The review was designed to measure the effectiveness of HVH's performance in implementing HUD's Property Disposition Program.

On March 30, 2005, as part of the QMR process, Lublin's representatives met with Dan Rogers, Deputy Director of HUD's Atlanta Home Ownership Program, and Engram Loyd, Director of HUD's Philadelphia Home Ownership Program.  Plaintiff's representatives state they were reluctant to provide candid answers during the QMR meeting without assurances of confidentiality because they feared their answers would reflect poorly on HVH and result in reprisals.  The parties dispute whether HUD officials made such assurances.  Plaintiff provided candid feedback regarding HVH to HUD officials.

Approximately two hours after the conclusion of the March 30, 2005, QMR, plaintiff received an email, followed by a certified mail letter, from HVH's CEO, unilaterally terminating the subcontract between it and HVH.  The parties dispute whether HUD disclosed information gathered during the QMR process to HVH and whether this disclosure played a role in HVH's decision to terminate the subcontract.

Plaintiff filed its original complaint on March 29, 2007, and its amended complaint on September 7, 2007.  Plaintiff's amended complaint includes two counts: (i) breach of an implied-in-fact contract; and (ii) breach of an express contract.  As a result of this breach, plaintiff claims to have suffered a financial loss of $1,666,085 per year since termination of the subcontract agreement.  On February 16, 2010, after the close of discovery, defendant filed its motion for summary judgment.  On March 17, 2010, plaintiff filed its response to defendant's motion.  On April 16, 2010, defendant filed its reply in support of its motion.  Oral argument was held on August 11, 2010.

## II.   DISCUSSION

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* RCFC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment.  *Id*. at 248.  However, summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id*.; *see also Matsushita Elec. Indus. Co.  v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Becho, Inc. v. United States*, 47 Fed. Cl. 595, 599 (2000).

When making a summary judgment determination, the court is not to weigh the evidence, but to "determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249; *see also Agosto v. Immigration & Naturalization Serv.*, 436 U.S. 748, 756 (1978) ("[A] [trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented."); *Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004).  The court must determine whether the evidence presents a disagreement sufficient to require fact finding, or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson*, 477 U.S. at 250-52; *see also Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009) ("'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" (quoting *Matsushita*, 475 U.S. at 587)).  Where there is a genuine dispute, all facts must be construed, and all inferences drawn from the evidence must be viewed, in the light most favorable to the party opposing the motion.  *Matsushita*, 475 U.S. at 587-88 (citing *United States v. Diebold*, 369 U.S. 654, 655 (1962)); *see also Stovall v. United States*, 94 Fed. Cl. 336, 344 (2010); *L.P. Consulting Group, Inc. v. United States*, 66 Fed. Cl. 238, 240 (2005).

Defendant seeks judgment as a matter of law.  First, it asserts that the HUD officials with whom plaintiff dealt lacked the authority to enter into any confidentiality agreement.  Second, it asseverates that even if such an agreement existed, it was not breached.  The court will consider these issues *seriatim*.

## A. Authority

As in any claim for breach of contract, in order to recover, plaintiff must establish, *inter alia*, that a valid contract existed between it and the government. *See San Carlos Irr. & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989); *Health Ins. Plan of Greater N.Y. v. United States*, 62 Fed. Cl. 33, 43 (2004); *Cornejo-Ortega v. United States*, 61 Fed. Cl. 371, 373 (2004). To establish the existence of such a contract, plaintiff must show "that the officer whose conduct is relied upon had actual authority to bind the government in contract." *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1575 (Fed. Cir. 1984), *cert. denied*, 474 U.S. 818 (1985); *see also Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997); *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989). Although apparent authority will not suffice to hold the government bound by the acts of its agents, *see Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947), implied actual authority, like expressed actual authority, will suffice. *See H. Landau & Co.*, 886 F.2d at 324; *cf. Branch Banking & Trust Co. v. United States*, 98 F. Supp. 757, 766 (Ct. Cl.), *cert. denied*, 342 U.S. 893 (1951) (explaining that "an officer authorized to make a contract for the United States has the implied authority thereafter to modify the provisions of that contract particularly where it is clearly in the interest of the United States to do so"). "'Authority to bind the [g]overnment is generally implied," the Federal Circuit has oft-stated, "when such authority is considered to be an integral part of the duties assigned to a [g]overnment employee." *H. Landau & Co.*, 886 F.2d at 324 (quoting John Cibinic & Ralph Nash, Formation of Government Contracts 43 (1982)); *see also Winter v. Cath-Dr/Balti Joint Venture*, 497 F.3d 1339, 1346 (Fed. Cir. 2007) ("Authority to bind the government may be implied when it is an integral part of the duties assigned to the particular government employee.").

Both parties agree that the HUD officials in question did not have the express authority to enter into a confidentiality agreement. Plaintiff, however, asserts that those officials had the implied actual authority to agree to hold plaintiff's responses in confidence because that authority was "integral" to their ability to conduct investigations. In arguing to the contrary, defendant asserts that an agency official may have "implied actual authority" only where that official has some explicit authority to enter into contracts. Defendant, however, cites only a single case for this weighty proposition – *Sam Gray Enterprises, Inc. v. United States*, 43 Fed. Cl. 596, 603 n.10 (1999), in which this court stated that the doctrine of implied actual authority "applies only when some contracting authority was actually delegated." But, in *Sam Gray*, various State Department regulations made clear that only certain individuals had the contracting authority in question – and it was primarily on this basis that the court concluded an embassy official lacked the authority to enter into a lease agreement with a Bahamian citizen. *Id*. at 603-04. It was in this limited context – where the authority to enter into a contract was given explicitly to another official – that the court uttered in a footnote the phrase upon which defendant so heavily relies. Here, however, defendant has provided no statute, regulation or rule indicating that only certain HUD officials had the authority to enter into a confidentiality agreement of the sort at issue here.

Any attempt to read *Sam Gray* more broadly – so as to limit the scope of the implied actual authority doctrine in the extreme fashion defendant urges – runs afoul of a host of cases in which the Federal Circuit and this court have held that government officials who otherwise lacked contracting authority could bind the United States.[1]  In each of these cases, individuals who did not have contracting authority were held to have (or potentially to have) the implied actual authority to bind the government.  Were defendant correct that only contracting officials can exercise implied actual authority, then these and dozens of other cases in this court involving contracts made by government officials without contracting authority are wrong.  *See*, *e.g.*, *Fifth Third Bank of Western*, 402 F.3d at 1229, 1235-36 (noting that similar authority arguments have been made and repeatedly rejected in *Winstar* cases).  These cases, in fact, are correct – the same cannot be said of defendant's well-worn (and oft-rejected) theory.

Defendant also asserts that the "thrust" of Lublin's complaint is that the HUD officials agreed to indemnify Lublin for any harm due to its participation in the QMR.  It cites cases like *Hercules, Inc. v. United States*, 516 U.S. 417 (1996) and *Rick's Mushroom Services, Inc. v. United States*, 521 F.3d 1338 (Fed. Cir. 2008), for the proposition that the HUD officials here could not have subjected the government to potentially liability in this fashion without violating the Anti-Deficiency Act (ADA), 31 U.S.C. § 1341(a)(1).  Under the ADA, "procurement agencies or employees are prohibited from 'entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation.'"  *Rick's Mushroom Serv.*, 521 F.3d at 1346 (quoting *Hercules*, 516 U.S. at 427).  Various cases hold that, under the ADA, contracting officials lack the authority to make open-ended warranty or indemnification agreements.  *Hercules*, 516 U.S. at 424-25 (warranty); *Rick's Mushroom Serv.*, 521 F.3d at 1346 (indemnity).  Logic suggests that this same limitation must apply to officials not ordinarily involved in contracting (the circumstances of this case).

---

[1] *See Fifth Third Bank of Western Ohio v. United States*, 402 F.3d 1221, 1236 (Fed. Cir. 2005) (finding that the regional federal home loan bank had at least implied actual authority to enter into contracts for treatment of goodwill); *Stevens Van Lines, Inc., v. United States*, 80 Fed. Cl. 276, 280 (2008) (finding that two Defense Department employees had implied actual authority to enter into contract to reimburse electronic processing fees even though both employees lacked contracting authority); *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 653 (2006) (declining to grant summary judgment in case where an assistant special agent in charge of the drug enforcement administration promised an undercover informant a commission because special agent may have implied actual authority to contract on behalf of government); *Adv. Team Concepts, Inc. v. United States*, 68 Fed. Cl. 147, 150 (2005) (finding that the director of a government training facility had the authority to bind the government even though director was not a contracting officer); *Leonardo v. United States*, 60 Fed. Cl. 126, 131-32 (2004) (finding that a cultural affairs officer had implied actual authority to bind the United States to alleged bailment contract for storage of artwork despite the fact that the cultural affairs officer was not a contracting officer); *see also United States v. Bissett-Berman Corp.*, 481 F.2d 764, 768-69 (9th Cir. 1973) (holding that the government's attorney had the implicit authority to bind the government although the contracting officer had the express authority).

That said, cases like *Hercules* and *Rick's Mushroom Services* are inapposite here for at least two reasons. First, this case does not involve an indemnification agreement, let alone the open-ended sort that was at issue in those cases.[2] Although there is some confusing language in one of plaintiff's briefs that might be read otherwise,[3] plaintiff's amended complaint alleges only that Mr. Rogers, the Deputy Director of HUD's Atlanta Home Ownership Center, "specifically assured the representatives of Advantage Gold that all information provided to HUD in the QMR process would be kept strictly confidential, and that nothing said by the Advantage Gold representatives to Mr. Rogers would be discussed or mentioned to HVH representatives." The amended complaint further avers that "Mr. Rogers stated that HUD would make certain that there were no repercussions or reprisals by HVH against Advantage Gold, should HVH become aware that Advantage Gold provided HUD with some information that did not reflect favorably on HVH." This pleading is buttressed by deposition testimony in which two witnesses describe the alleged agreement as having two, and only two, prongs: (i) a promise of confidentiality; and (ii) assurances that HUD would prevent HVH from retaliating against Lublin. At no point did any of these witnesses describe the alleged agreement as being one for indemnification, nor is there any documentary evidence in the record to that effect.

In short, it appears uncontroverted that the alleged agreement did not oblige defendant to pay plaintiff any funds, at least via performance – rather, the essence of the alleged contract is

---

[2] Various decisions have held that the ADA does not pose a problem if the maximum amount of liability under an indemnification clause is fixed or readily ascertainable. *See E.I. DuPont de Nemours & Co., Inc. v. United States*, 54 Fed. Cl. 361, 371-72 (2002), *rev'd on other grounds*, 365 F.3d 1367 (Fed. Cir. 2004) (discussing cases involving "open-ended" indemnifications); *Union Pac. R.R. Corp. v. United States*, 52 Fed. Cl. 730, 734 (2002) (discussing this distinction); *cf. Hercules*, 24 F.3d at 193 (rejecting an implied covenant that would have indemnified contractors for all tort damages associated with manufacture of the Agent Orange defoliant used in Vietnam) ; *Johns-Manville Corp. v. United States*, 12 Cl. Ct. 1, 22 (1987), *vacated on other grounds*, 855 F.2d 1571 (Fed. Cir. 1988) (rejecting an implied contract that would have indemnified contractors for damages paid to shipyard workers for exposure to asbestos).

[3] In its response to defendant's motion for summary judgment, plaintiff stated that "[t]he indemnification agreement made by the government's officer is not an open-ended indemnification described by defendant in its brief, but simply a promise that if confidential information was revealed, that the government would take steps to indemnify any damages sustained as a result of the revelation of confidential information." It is unclear from this language and its context whether plaintiff's counsel intended to use the word "indemnify" in its common usage or meant something else. At all events, to the extent that this statement is inconsistent with plaintiff's complaint and the other evidence in the record, the court cannot read it as modifying plaintiff's claims regarding the nature of the agreement in question. *See* RCFC 56(e); *see also*, *e.g.*, *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 511-12 (3d Cir. 1994) (statements on brief are no substitute for the proof required by Rule 56).

that HUD would protect plaintiff's confidentiality. [4]   This is an important distinction because the cases cited above all involve situations in which *performance* of a contract would commit the United States or agency thereof to pay funds; no case suggests that the ADA prevents an otherwise authorized official from entering into a contract because the *breach* of that contract would require the United States to pay damages.  Numerous cases, in fact, reject the latter contention.[5]  Accordingly, as with its other arguments, defendant's ADA defense is unpersuasive. [6]

The next question confronted is whether the court can decide, as a matter of law, that the HUD officials in question did not have implied actual authority to enter into a contract ensuring confidentiality.  As it turns out, this court is precluded from making this determination owing to the existence of numerous genuine issues of material fact.  The parties dispute the nature of the investigation in question and the program from which it sprang, and also disagree as to the nature of the commitments, if any, that were made.  A trial is required to resolve these issues.

---

[4]  Ronald Rudolph, one of plaintiff's representatives at the meeting at which the purported agreement was made, stated in his deposition that a HUD official assured Lublin that "everything that is said or discussed at the QMR meeting would be held in confidence."  Another Lublin representative at that meeting, William Lublin, likewise stated in his deposition that in the event of a breach of confidentiality, HUD officials gave him the impression "that should any action [against Lublin] be taken [by HVH] they would take steps to put it right."  When pressed by defendant's counsel as to whether anyone at HUD promised to "write a check to make [plaintiff] whole," Mr. Lublin essentially responded in the negative.

[5]  *See Mass. Bay Transp. Auth. v. United States*, 129 F.3d 1226, 1232 (Fed. Cir. 1997) ("No authority supports the theory that [under the ADA] the government is not liable for breach of its contractual undertakings.") (citing *United States v. Winstar*, 518 U.S. 839, 880 (1996)); *Ferris v. United States*, 27 Ct. Cl. 542, 546 (1892) (exhaustion of appropriation does not constitute a defense to a breach of contract claim); *Union Pac. R.R. Corp.*, 52 Fed. Cl. at 733; *Wetsel-Oviatt Lumber Co., Inc. v. United States*, 38 Fed. Cl. 563, 570 (1997) ("Despite defendant's protestations otherwise, neither the Appropriations Clause of the Constitution, nor the Anti-Deficiency Act, shield the government from liability where the government has lawfully entered into a contract with another party."); *Johns-Manville Corp. v. United States*, 12 Cl. Ct. at 19 (distinguishing, in this regard, between "claims based on contract formation and breach").

[6]  Defendant, moreover, has provided no proof that an award of the magnitude sought in this case would be in excess of any relevant appropriation.  Seemingly to the contrary, 31 U.S.C. § 1304(a) and 41 U.S.C. § 612(a), which together create and fund the so-called Judgment Fund, would appear to provide for the appropriation of funds to pay any judgment of damages rendered in this action.  *See Wetsel-Oviatt Lumber*, 38 Fed. Cl. at 571.

**B.     Breach**

Beyond demonstrating that there was a valid contract between the parties that gave rise to duty of confidentiality, plaintiff must show that the HUD officials in question breached that duty. *See San Carlos Irr. & Drainage Dist.*, 877 F.2d at 959; *Health Ins. Plan of Greater N.Y.*, 62 Fed. Cl. at 43; *Cornejo-Ortega*, 61 Fed. Cl. at 373.  Similar to the result reached above, on this question, the existence of numerous genuine issues of material fact precludes a finding, as a matter of law, that there was no breach.

Defendant points out that there is no direct evidence that HUD officials discussed any of the information relayed to them by plaintiff's representatives with HVH's officers.[7]  And, defendant cites evidence suggesting that HVH was contemplating terminating its relationship with plaintiff before the interview in question.  The latter evidence, though, is controverted, with plaintiff providing evidence that, when requested to do so by HVH, it agreed to reduce its compensation shortly before the termination.  Moreover, the timing of the termination – which occurred a scant two hours after the HUD interviews – raises obvious questions as to whether there was a causal relationship between some breach of confidentiality and the termination.  It is well-recognized that circumstantial evidence may create questions of fact that preclude the entry of summary judgment.  *See Hunt v. Cromartie*, 526 U.S. 541, 551-52 (1999); *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 822 (8th Cir. 2010); *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 486-87 (6th Cir. 2008); *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 458-59 (2d Cir. 2007); *T-Peg, Inc. v. Vt. Timber Works, Inc.*, 459 F.3d 97, 111 (1st Cir. 2006).  And it is equally established that a breach of contract may be proven by circumstantial evidence.[8]  Accordingly, in the court's view, the circumstantial evidence here – particularly

---

[7]  Plaintiff requested phone records from defendant to determine whether there were phone calls between HUD and HVH officials during the hours in question.  Defendant responded to this discovery request by indicating that the records in question no longer exist because the relevant HUD office had changed phone systems and the phone company's records only went back two years.

[8]  *See Braswell v. Conagra, Inc.*, 936 F.2d 1169, 1176 (11th Cir. 1991); *Williams v. Steuart Motor Co.*, 494 F.2d 1074, 1080 (D.C. Cir. 1974) (breach "may be established by direct or circumstantial evidence or by a combination of the two kinds of evidence"); *Menovcik v. BASF Corp.*, 2010 WL 3518008, at *12 (E.D. Mich. Sept. 8, 2010); *Platner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1994903, at *11 (N.D. Okla. May 18, 2010); *Rochester Midland Corp. v. Enerco Corp.*, 2009 WL 1561817, at *16 (W.D. Mich. Jun. 1, 2009); *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 2008 WL 2694750, at * 6 n.9 (S.D. Fla. July 8, 2008); *see also J.D. Edwards & Co. v. Podany*, 168 F.3d 1020, 1025 (7th Cir. 1999) (holding that circumstantial evidence could be used to establish defense to breach of contract action); *Piekarski v. Home Owners Sav. Bank, F.S.B.*, 956 F.2d 1484, 1491 n.7 (8th Cir. 1992); *Maitlan Bros. Co. v. United States*, 20 Cl. Ct. 53, 60 (1990) (holding that Board could rely on circumstantial evidence in finding that contractor did not satisfy contract requirements).

...

when viewed, as it must be, in the light most favorable to plaintiff – is adequate to create genuine questions of material fact suitable only for resolution at trial.[9]

### III.   CONCLUSION

Based on the foregoing, the court **DENIES** defendant's motion for summary judgment. On or before March 18, 2011, the parties shall file a joint status report proposing a trial date, a trial location and a schedule for pretrial filings. Prior to filing this status report, the parties shall have at least one serious discussion regarding settlement.

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge

---

[9] That plaintiff has offered enough evidence to survive defendant's motion, of course, is no predictor of the result of a trial.